UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN RE: THOMAS ALAN MINOR                    BKN:3:10-BK-30161-DOT

    and

RENEE SCOTT MINOR

ELOISE K. HAHN,  dba
BURKE FINANCIAL LLC

    and

MEMBER OF WIN PAR
HOSPITALITY LAREDO LLC                      Adversary Proceeding
                                            Counter Claim Complaint to::

       Plaintiff,                           APN: 3:13-AP-03152-DOT

       v.

THOMAS ALAN MINOR

    and

JASON M.KRUMBEIN, ESQ.

      Defendants


ADVERSARY PROCEEDING COUNTER CLAIM COMPLAINT

Comes now plaintiff, pro se, who files this adversary proceeding

counter claim complaint against the defendants and states as follows:


PRELIMINARY STATEMENT


1.     This is an action by a former partnership member

and creditor of Win Par Hospitality Laredo, LLC,

namely Burke Financial LLC (Hahn), who was swindled

out of $250,000 in a business skam organized by

the other two members, being Thomas A. Minor

(Minor) and William R. Parsons (Parsons). Hahn

seeks actual, statutory, and punitive damages,

attorney fees and costs and for declaratory

and injunctive relief from Parsons and Minor for fraud.

Further, Hahn seeks damages from Minor and

Krumbein for harrassment, including damages

from Minor for violations of the Bankruptcy Code,

11 U.S.C. Section 523, which precludes him from

the discharge protection under Section 524 of the

bankruptcy code.

JURISDICTION, VENUE and CORE PROCEEDINGS

2.    This court has Federal jurisdiction, for Minor

pursuant to 11 U.S.C. Sections 523 and 524 of

the bankruptcy code.

3.    This court is the proper venue for Minor's former

bankruptcy proceeding since he filed his chapter 7

petition in this court. The majority of the actions

claimed, however, occurred in Brevard County, Florida.

4.    The FL state court action has personal jurisdiction over

Parsons since he resides in Brevard County, FL and
he regularly transacts business in Florida.

5.    The FL state court action has personal jurisdiction over
the entity, Win Par Hospitality Laredo, LLC since the
entity was incorporated and dissolved in the State of FL.

6.    The State of Nevada has personal jurisidiction over
Burke Financial, LLC since the entity was incorporated
in the State of Nevada,

## PARTIES

7.    Hahn is the manager of Burke Financial, LLC.

8.    Burke Financial, LLC was a member of the entity,
Win Par Hospitality Laredo, LLC, a former Florida
limited liability company.

9.    Upon information and belief,  Minor is a person who
owes money to Hahn.

10.   Upon information and belief, Krumbein, is a lawyer
for Minor who represents Minor in a former bankruptcy
matter filed in the Commonwealth of Virginia and
an adversary proceeding he has filed against Hahn
and her attorney, Sverbilow (Sverbilow).

## FACTS

11.   Minor filed a Chapter 7 Bankruptcy proceeding on

January 11, 2010.  Minor did not disclose the debt due

and owing to Hahn and/or Burke Financial LLC in the

amount of $250,000, who were members of Win Par

Hospitality Laredo, LLC, nor did he disclose his

partnership interest to Win Par Hospitality

Laredo LLC , under question 18 of his chapter 7 petition.

12..   Minor purchased Lots 11 and 12 from Win Par

Hospitality Laredo,  LLC on May 31, 2007, copies of

the title records are hereto attached in Exhibit A and B.

13.    Minor and  Parsons used $149,000 of Hahn 's partnership

capital  to pay off the remaining note balance with Laredo

National Bank on September 30, 2007,  as shown on

Exhibit C..  Parsons and Minor failed to notify Hahn of

the transfer or write Hahn a check for the

transfer in violation of Section 9.1, 9.3, and 9.4 of the

operating  agreement, a copy of which is hereto attached in

Exhibit D.  Specifically, Minor and Parson did not place

cash equal to the purchase price for $149,000 in

escrow for the seller, Hahn.  Instead Minor and Parson

advised Hahn that they were reducing her LLC

membership units from 18.2 to 9.9 so that Hahn

would not need to be on the land loan with them

for purchasing another lot for the LLC.  Minor and

Parson did not advise Hahn that they were purchasing

outright the LLC property, being lots 11 and 12 nor
did they disclose to her that they had planned to use
her capital to pay off a mortgage note with Laredo
National Bank for $149,0000. Essentially, Minor
and Parson failed to pay Hahn $149,000 for their
purchase of the LLC lots. Instead they reduced her
membership interests in the LLC and used her money
as collaterol to purchase the third lot. Accordingly,
Hahn's money was part of the land loan and her
membership interest should not have been reduced
from 18.2 to 9.9, particularly since Minor and Parson
were given mortgage proceeds from the LLC bank
account in 2007. Additionally, Minor and Parsons
failed to inform Hahn that the transfer of her
membership units of 18.2 - 9.9 = 8.3 units would
result in termination of the LLC for federal income tax
purposes.

14.   Minor  purchased another lot, namely lot 13 on
May 31, 2007, for $988,000, from another party
as documented in Exhibit E, a copy of which is hereto
attached.

15..   Minor failed to disclose his partnership interests in
the entity, Win Par Hospitality Laredo, LLC,  on
question 18 of his chapter 7 petition for the

period of 2005 through 2009, including other partner-
ship interests he may have disclosed on his financial
statement to Laredo National Bank in 2005 and 2007.
Accordingly, Minor has violated Section 523 of the
bankruptcy code and is precluded from chapter 7
protection pursuant to Section 524 of the bankruptcy
code.  Lists of members for the entity, Win Par
Hospitality Laredo, LLC is hereto attached in
Exhibit F.

16.  Hahn was not notified of Minor's chapter 7
bankruptcy proceeding in 2010 by this court.
Had Hahn been notified she would have objected
to the discharge of debt in the amount of $250,000
due to fraud.

17.  A Chapter 7 discharge was entered on June 12, 2010,
and Minor's bankruptcy was closed shortly thereafter.

18.  In January of 2011, Hahn sent Minor a demand letter
for payment of $250,000 as outlined in a promissary
note he had jointly executed with William Parsons on
September 17, 2009, a copy of which is hereto
attached in Exhibit G.

19.  In 2012, Hahn contacted Minor with respect to the
payment of the $250,000. Minor advised Hahn
that he was not on speaking terms with Parsons and

that he filed a personal bankruptcy. Minor also advised

Hahn that the LLC folded.  Further, Minor advised Hahn

to report her loss for $250,000 without providing any

financial documentation to support his bankruptcy claim,

or any record documentation of what had transpired

with Hahn's capital contribution to the LLC from 2006

to 2012.  Essentially, Minor and Parsons had willfully

violated the rules and regulations contained in the

operating agreement for Win Par Hospitality Laredo,

 LLC, under Section 8 , a copy of which is

  hereto attached in Exhibit  H.  Specifically, Parsons

and Minor failed to disclose to Hahn that they had

dissolved the LLC entity on September 25, 2009,

after they had provided her a promissary note for

$250,000 on September 17, 2009.  Minor and Parson

dissolved the LLC entity even though there was no

involuntary petition in bankruptcy against the LLC

nor was their a filing against the LLC for reorganization.

Minor and Parson also violated Section 6.2 of the

operating agreement in that they failed to pay Hahn

her capital contribution of $250,000 in first order of

priority.  Instead Hahn was second or third order of

priority since Parsons and Minor used her remaining

capital contribution of $71,000 to pay off notes from

other creditors of the LLC in 2008. They did so

willfully to conceal the equity they received from the

lots in any mortgage agreement executed by them

for the period May 2007 through February 3, 2009,

specifically mortgage agreements on May 31, 2007,

and August 1, 2008, copies of which are hereto

attached in Exhibits A, B, and E. Parsons and

Minor have also failed in providing Hahn any alleged

foreclosure documentation of the lots to date, including

short sales they may have negotiated. Apparently,

Parsons and Minor have denied Hahn these documents to

conceal the equity lines of cash they received from

financing and refinancing the three lots for the period

May of 2007 through February 3, 2009, specifically

they refinanced the three lots to a total mortgage amount

of $2,229,000 on August 1, 2008, which attributed to

a short sales transaction of the lots on February 3, 2009,

exceeding $2,400,000. It is Hahn's impression that

Parsons and Minor have concealed this information

since they had agreed to pay her $250,000 at the time

the lots were sold, so $(0.099)(\$2,400,000) = \$237,600$

plus interest or $(.182)(\$2,400,000) = \$436,800$ plus

interest. They have done so willfully.

20.     That Hahn had no recourse but to file a complaint in

Brevard County, FL requesting the financial records

of the LLC and demanding payment of the $250,000.

In May of 2012 Parsons provided Hahn the financial

documentation for the LLC.  Unfortunately, Hahn

was no longer able to report the partnership losses on

her tax returns since she would have had to report

the losses for 2007 and 2008 within three years

from the date the loss occurred or April 15 of 2011

and 2012, respectively.  Hahn has documented a

total partnership loss of $250,000 on her amended

2009 tax return dated  April 15, 2013, however, she

has not exercised the loss to offset any income to date

due to negative cash flow and because  she holds

a promissary note for $250,000, and the U. S. Treasury

has advised her that the parties, Parson and Minor,

promised to pay her back the $250,000.  Parsons

failed in disclosing  to the U.S. Treasury Hahn's

*membership interests to the entity, Win Par*

 Hospitality Laredo, LLC , however, Hahn was

advised by her accountant that she did hold an

equitable partnership interest to the LLC and that the

partnership interest was not worthless   In other

words the LLC did not file bankruptcy, only Minor

filed a chapter 7 personal bankruptcy with his

spouse. Parsons and Minor also failed to disclose to Hahn the lot sale transaction for over $2,400,000 on February 3, 2009, including their failure to write Hahn a check for $250,000 as agreed. They have done so willfully.

21.. That Hahn had filed a prior complaint against both Minor and Parsons. In April of 2008 Parson and Minor agreed to sell the LLC business property in Texas and return $250,000 to Hahn.

22.. That Parsons and Minors' joint counsel in Brevard County failed to respond to the complaint Hahn had filed. Accordingly, Hahn filed a Motion for Default.

23. That Florida counsel for Parsons and Minor filed a Motion to Dismiss Hahn's Complaint.

24. That Hahn had no recourse but to retain counsel in Florida for representation of the matter in a hearing conducted in January of 2013.

25. That the case in Florida was subsequently scheduled for trial in September of 2013.

26.. That Attorney Sverbilow (Sverbilow) was notified of Minor's chapter 7 proceeding on July 17, 2013. After review of the bankruptcy petition, Sverbilow, notified Hahn that Minor did not disclose his debt

to Hahn for $250,000 on his chapter 7 petition.

27.   That on August 2, 2013, Minor retained

Krumbein to enjoin Hahn from proceeding

with the trial in Brevard County, Florida. Hahn's

counsel, Sverbilow, was also served an

injunction notice.

28.   That Krumbein also served Hahn and

Sverbilow an adversary proceeding on the matter.

29.   That Krumbein telephonically contacted

Sverbilow threatening to sue Hahn and him

for substantial sums of money, particulary he

told Sverbilow, "She is a wealthy lady. I plan

to sue you both for $25,0000 or more".

That Hahn was notified of Krumbein's threat

on October 23, 2013. For the record, Hahn

may have been wealthy prior to being skammed

out of her $250,000 life savings. That is no

longer the case and Hahn requests this court to

enjoin Krumbein from contacting Sverbilow and/or

herself with anymore threatening remarks since

Sverbilow dismissed Minor from the FL state court

action, however, Hahn pursues this matter in VA

due to fraud.

30.   That Hahn commenced action in seeking counsel in

Virginia.   Hahn was advised by counsel that Minor

had failed to disclose the debt to Hahn for $250,000,

including his failure to disclose his former partnership

interest in the entity, Win Par Hospitality Laredo, LLC.

Accordingly, Minor was in violation of Section 523

of the bankruptcy code and was precluded from

chapter 7 protection pursuant to Section 524 of the

bankruptcy code.

31.   That Hahn's was advised that Minor's debt to

Hahn for $250,000 may not be dischargeable based

on fraud, specifically he concealed the debt to

Hahn in the amount of $250,000 since he wanted

to conceal his partnership interests in Win Par

Hospitality Laredo, LLC to extinguish any tax liabilities

which may have been incurred by listing the debt

on his chapter 7 petition and/or the equity distribution

he received when he refinanced the lots in Laredo, TX

on August 1, 2008, which were subsequently sold

in February of 2009 for over $2,400,000.

32.   That  Krumbein has argued Minor is entitled

to the discharge since the debt was a pre-debt

which was incurred prior to the bankruptcy

proceeding.  Hahn argues that the debt is not

related to Minor's bankruptcy since the lots were

sold for over $2,400,000, which exceeded the

mortgage note amounts of $743,000 per lot.

Accordingly, there was no outstanding debt

due to the lenders and the debt to Hahn should

have been paid at the time Minor and Parson

purchased two of the lots from Win Par Hospitality

Laredo LLC in 2007 and used her capital of

$149,000 to purchase the lots without writing

her a check, including when they refinanced all the

LLC lots on August 1, 2008 for over $2,100,000

or when the lots were sold on February 3, 2009,

*for over $2,400,000. Apparently the equity of the*

LLC lots exceeded $1,400,000 and there was plenty

of money to pay Hahn the $250,000, as agreed.

33.   That Hahn has not been provided with the list of

creditors on Minor's chapter 7 proceeding,

except he reported a debt to his mortgage company,

Diversified Commercial Mortgage, in the amount

of $783,000. That mortgage debt is not related

to the LLC sales transaction since all notes were

paid off when Compass Bank purchased the LLC

lots on February 3, 2009. Further, Minor and Krumbein

have alleged Hahn is a  creditor and not a member

to the entity, Win ParHospitality Laredo, LLC. They

have done so willfully since Krumbein and Minor know Burke Financial, LLC is on the brink of a chapter 7 bankruptcy due to Minor and Parsons' failure to pay back Burke the $250,000 as outlined in the settlement agreement.  Apparently, Minor and Krumbein feel they get a better deal to sue Hahn personally instead of Burke Financial LLC which was the member of the LLC so that they can collect money from Hahn's social security disability check.

34.   That Sverbilow advised Hahn that the debt could not be discharged if fraud had occurred.

35.   That Hahn has *begun investigation of the matter.* The title reports of the LLC document Minor purchasing the LLC property in May of 2007, however, Minor failed to write Hahn a check for the sales transaction, nor did he inform her that he had used her capital in the amount $149,000 to buy the LLC property, namely lots 11 and 12.

36..   That Hahn was further informed from her title search that Minor had purchased a third lot for $988,000 and that he had financed the property for $743,000.

37.   That Hahn was also informed  that Minor and Parson had refinanced the LLC property for $1,486,000 on August 1, 2008, being Lots 11 and 12.

38.   That Minor and Parson purchased the LLC property
      a year earlier for $328,000, almost a million dollars
      less than the refinanced amount, and failed to
      provide Hahn a check for the sales transaction.

39.   That Hahn's title searches further document
      all three lots being sold on February 3, 2009,
      for $802,000 a lot or a total sales transaction of
      over $2,400,000

## CLAIM FOR RELIEF

1.   Hahn restates and realleges paragraphs 1-39.

2.   Minor has willfully violated 11 U.S.C. Section 523 in
     that he concelaed his debt to Hahn for $250,000 and
     his former partnership interests with the entity,
     Win Par Hospitality Laredo, LLC., in efforts to
     conceal any equity he received from refinancing
     the lots on August 1, 2008, and/or the equity received
     from the LLC lot sales for over $2,400,000 on
     February 3, 2009.

3.   That  Minor has caused injury in fact, by causing among
     other effects, attorney and litigation fees in connection with
     litigating the FL state court lawsuit and the Virginia
     bankruptcy matter, mental and emotional distress,
     damage to Hahn and Burke's credit reputation,
     and damage to Hahn's physical well-being, specifically:

making Hahn a victim of a business scam where she

was robbed of her life savings of $250,000 and

victimizing Hahn with relentless threats and harassment

in efforts to be dismissed from his financial obligations

to her, including Minor and Krumbeins' intentions to

rob Hahn again alleging Hahn and Sverbilow violated

Section 524 of the bankruptcy code. Minor violated

Section 523 of the bankruptcy code on his chapter 7

petition and is precluded from chapter 7 protection

pursuant to Section 524 of the bankruptcy code.

Hahn and Sverbilow were not informed of Minor's

bankruptcy until July 17, 2013. Hahn has not been

provided the list of creditors on Minor's chapter 7

petition and requests this court to reopen

the bankruptcy proceeding at this time to determine

if the debt to Hahn and/or Burke Financial, LLC in

the amount of $250,000 can be discharged. In other

words Minor can be excused for violating Section 523

of the bankruptcy code and whether or not his former

actions were fraudulent while acting as a managing

member to Win Par Hospitality Laredo, LLC. The title

reports document no debt due and owing to the lenders

of the lots since they were sold for more money than the

borrowed note amounts and there was plenty of

equity to pay Hahn the debt due and owing for $250,000, specifically since the lots had appreciated considerably fromn the time of purchase in 2005.  Apparently, Minor's bankruptcy proceedings are related to another business venture which occurred after the LLC lot sales on February 3, 2009.  Hahn cannot be responsible for Minor's misfortune in other business ventures that failed after business was transacted with Win Par Hospitality Laredo LLC.   Minor and Parson both knew they were responsible to pay Hahn the $250,000 debt at the time the LLC lots sold.  They did so willfully. Hahn should not be denied payment of the debt if Parsons and Minor used her capital in another business venture  that tanked.  Minor and Parson were not authorized to use Hahn's money for any other transactions other than the entity, Win Par Hospitality Laredo, LLC.   Hahn and Sverbilow cannot be responsible for Minor's violations of Section 523 of the bankruptcy code, nor his violations of the terms and conditions set forth in the operating agreement for Win Par Hospitality Laredo, LLC.

It is much the same that a criminal party not be charged with fraud for skamming the victim out of their life savings

and be allowed to continue harassing the victim with threats

to rob her again for rightfully seeking justice in the collection

of a debt rightfully hers. The damage is done and the

melicous conduct of the greedy defendants continue with

relentless illegal tactics to rob her again and again with

their adversary proceeding claims for an alleged violation

of Section 524 of the bankruptcy code. On the contrary,

the con artist's profit taking practices in acquiring over a

million dollars from the victim's capital contributions of

$250,000 must be carefully considered before any

sanctions are imposed to Hahn and Sverbilow.

Minor's actions will set a precedence for all debtors to

follow suit in seeking unjust enrichment from robbing

victims out of their life savings and then discharging the

debt owed to the victims in a bankruptcy  proceeding

that fails to disclose the debts owed to the victims and

their former partnership interests which enabled the

debtor the unjust enrichment.  Hahn continues

to suffer from Minor's malicious conduct in that he has

opposed her right to happiness since his actions have

been deliberate locking Hahn's life in misfortune.  Minor

continues to put the weight of his misfortune onto Hahn

in hopes to extinguish his financial obligations to

Hahn for $250,000.  Minor's malicious conduct has

continued in efforts to extract more money from Hahn ,

which Hahn does not have, attributing to painful failures to

Hahn's life.  Minor's malicious efforts have attributed to

so much negativity that Hahn has stopped believing in

herself which has inverted her destiny for a better life

free from pain and agony from harrassment and threats.

Minor's conduct has attributed to day to day unhappiness

where Hahn needs to pay attention to every expense

while Minor can afford to treat himself and his family

whatever way they like at Hahn's expense.  Minor

continues to live off the luck Hahn has been deprived of.

Minor's actions have attributed to extreme anxiety,

loss of wages, and endless litigation expenditures

in his efforts to conceal the refinancing of the lots for

over $2,000,000 dollars.  The defendants, Minor and

Krumbein, have done so willfully.  They continue to

point a gun to Hahn's head in efforts to sanction any

and all property fromHahn to pacify their greed.  It is

much the same that a robber be allowed to continue

robbing the victim of any and everything they can seize

from their skams.

Hahn enters her Adversary Pleading to this matter at

this time and requests this court to reopen Minor's

bankruptcy to determine if the debt  to Hahn is

dischargeable in the amount of $250,000, i.e,

that Minor did not commit fraud when he purchased

the lots from the LLC and failed to write Hahn a

check for her capital contribution, including whether

or not Minor committed fraud when he refinanced

the lots for over two million dollars on August 1, 2008,

and/or sold them for over $2,400,000 on

February 3, 2009, and failed to reimburse Hahn

her capital contribution of $250,000.  Hahn further

requests relief from this court to enjoin Krumbein

from harrasment and threats in efforts to rob her

for more money which Burke Financial LLC

does not have.

*Eloise Hahn*

ELOISE K. HAHN
Manager of Burke Financial LLC
Member of Winpar Hospitality Laredo LLC
313 East 1300 North
Chesterton, IN   46304


I HEREBY CERTIFY that a true and correct copy of the foregoing

has been sent via U.S. Mail to Howard Sverbilow, Esquire, 190

Fortenberry Road, Suite 107, Merritt Island, Florida  32952-3401, Jason

M. Krumbein, Esquire, 5310 Market Road, Suite 102, Richmond, VA

23230, and Clerk of the Court, U.S. Bankruptcy Court, 701 E. Broad St.,

Suite 4000, Richmond, VA  23219 on November 6, 2013.

**EXHIBIT A**

## Property Detail Report

- For Property Located At :
**6427 POLARIS DR, LAREDO, TX 78041**



**U.S. TITLE RECORDS**
PROPERTY & TITLE INFORMATION

### Owner Information

| | |
|---|---|
| Owner Name: | NORTHPOINT PARK LTD |
| Mailing Address: | 517 SHILOH DR #1, LAREDO TX 78045-6722 C076 |
| Vesting Codes: | / / CO |

### Location Information

| | | | |
|---|---|---|---|
| Legal Description: | JACAMAN RANCH, BLOCK 2, LOT 11, UNIT 8 | | |
| County: | WEBB, TX | APN: | 947-46002-110 |
| Census Tract / Block: | 16.02 / 2 | Alternate APN: | 319083 |
| Township-Range-Sect: | | Subdivision: | JACAMAN RANCH |
| Legal Book/Page: | | Map Reference: | / |
| Legal Lot: | 11 | Tract #: | |
| Legal Block: | 2 | School District: | S7 |
| Market Area: | | School District Name: | UNITED ISD |
| Neighbor Code: | CD94 | Munic/Township: | LAREDO |

### Owner Transfer Information

| | | | |
|---|---|---|---|
| Recording/Sale Date: | / | Deed Type: | |
| Sale Price: | | 1st Mtg Document #: | |
| Document #: | | | |

### Last Market Sale Information

| | | | |
|---|---|---|---|
| Recording/Sale Date: | 03/14/2011 / 03/10/2011 | 1st Mtg Amount/Type: | $479,750 / CONV |
| Sale Price: | $599,687 | 1st Mtg Int. Rate/Type: | / |
| Sale Type: | ESTIMATED | 1st Mtg Document #: | 3061-681 |
| Document #: | 3061-676 | 2nd Mtg Amount/Type: | / |
| Deed Type: | SPECIAL WARRANTY DEED | 2nd Mtg Int. Rate/Type: | / |
| Transfer Document #: | | Price Per SqFt: | |
| New Construction: | | Multi/Split Sale: | MULTI |
| Title Company: | NEEL TITLE CORP | | |
| Lender: | FALCON INT'L BK | | |
| Seller Name: | COMPASS BK | | |

### Prior Sale Information

| | | | |
|---|---|---|---|
| Prior Rec/Sale Date: | 06/04/2007 / 05/29/2007 | Prior Lender: | |
| Prior Sale Price: | | Prior 1st Mtg Amt/Type: | / |
| Prior Doc Number: | 2370-115 | Prior 1st Mtg Rate/Type: | / |
| Prior Deed Type: | WARRANTY DEED | | |

### Property Characteristics

| | | | | | |
|---|---|---|---|---|---|
| Year Built / Eff: | / | Total Rooms/Offices | | Garage Area: | |
| Gross Area: | | Total Restrooms: | | Garage Capacity: | |
| Building Area: | | Roof Type: | | Parking Spaces: | |
| Tot Adj Area: | | Roof Material: | | Heat Type: | |
| Above Grade: | | Construction: | | Air Cond: | |
| # of Stories: | | Foundation: | | Pool: | |
| Other Improvements: | | Exterior wall: | | Quality: | |
| | | Basement Area: | | Condition: | |

### Site Information

| Zoning: | B-4 | Acres: | 0.67 | County Use: | |
|---|---|---|---|---|---|
| Lot Area: | 29,185 | Lot Width/Depth: | x | State Use: | VACNT-PLATTED-LOT-COMM (C2) |
| ·Land Use: | COMMERCIAL LOT | Commercial Units: | | Water Type: | |
| Site Influence: | | Sewer Type: | | Building Class: | |

Tax Information

| Total Value: | $131,330 | Assessed Year: | 2013 | Property Tax: | $3,277.27 |
|---|---|---|---|---|---|
| Land Value: | $131,330 | Improved %: | | Tax Area: | G3 |
| Improvement Value: | | Tax Year: | 2013 | Tax Exemption: | |
| Total Taxable Value: | | | | | |

**Street Map
Plus Report**
For Property
Located At



**U.S. TITLE RECORDS**
PROPERTY & TITLE INFORMATION

**6427 POLARIS DR, LAREDO, TX 78041**

View Interactive Map

**Transaction
History Report**
For Property
Located At

**U.S. TITLE RECORDS**
PROPERTY & TITLE INFORMATION

**6427 POLARIS DR, LAREDO, TX 78041**

**TRANSACTION HISTORY**

History Record #: **1**
*Sale:*

| Sale Recording Date: | **03/14/2011** | Sale Price: | **$599,688** |
|---|---|---|---|
| Sale Date: | **03/10/2011** | Sale Price Type: | **ESTIMATED** |
| Rec. Document #: | **3061-676** | Multi/Split Sale: | **MULTI** |
| Document Type: | **SPECIAL WARRANTY DEED** | Other Document #: | |
| Title Company: | **NEEL TITLE CORP** | | |
| Buyer: | **NORTHPOINT PARK LTD** | | |
| Seller: | **COMPASS BK** | | |

*Finance:*

| Mtg Recording Date: | **03/14/2011** | Mtg Loan Type: | **CONV** |
|---|---|---|---|
| Mtg Document #: | **3061-681** | Mtg Rate Type: | |
| Document Type: | **DEED OF TRUST** | Mtg Term: | **15 YEARS** |
| Lender: | **FALCON INT'L BK** | Mtg Rate: | |
| Loan Amount: | **$479,750** | Borrower Vesting: | **/ / CO** |
| Borrower 1: | **NORTHPOINT PARK LTD** | | |
| Borrower 2: | | | |
| Borrower 3: | | | |
| Borrower 4: | | | |

History Record #: **2**

*Sale:*

| | | | |
|---|---|---|---|
| Sale Recording Date: | **03/09/2009** | Sale Price: | **$802,156** |
| Sale Date: | **02/03/2009** | Sale Price Type: | |
| Rec. Document #: | **2723-659** | Multi/Split Sale: | **MULTI** |
| Document Type: | **TRUSTEE'S DEED** | Other Document #: | |
| Title Company: | **ATTORNEY ONLY** | | |
| Buyer: | **COMPASS BK** | | |
| Seller: | **GARCIA CLAUDIA L** | | |

History Record #:  **3**

*Finance:*

| | | | |
|---|---|---|---|
| Mtg Recording Date: | **08/01/2008** | Mtg Loan Type: | |
| Mtg Document #: | **2626-32** | Mtg Rate Type: | |
| Document Type: | **MORTGAGE MODIFICATION AGREEMNT** | Mtg Term: | **1 YEARS** |
| Lender: | **\* OTHER INSTITUTIONAL LENDERS** | Mtg Rate: | |
| Loan Amount: | **$743,000** | Borrower Vesting: | **//** |
| Borrower 1: | **MINOR THOMAS A** | Orig. Recording Date: | |
| Borrower 2: | **PARSONS WILLIAM R** | Orig. Document #: | |
| Borrower 3: | | | |
| Borrower 4: | | | |

History Record #:  **4**

*Sale:*

| | | | |
|---|---|---|---|
| Sale Recording Date: | **06/04/2007** | Sale Price: | |
| Sale Date: | **05/29/2007** | Sale Price Type: | |
| Rec. Document #: | **2370-115** | Multi/Split Sale: | **MULTIPLE** |
| Document Type: | **WARRANTY DEED** | Other Document #: | |
| Title Company: | | | |
| Buyer: | **MINOR THOMAS A** | | |
| Seller: | **WINPAR HOSPITALITY LAREDO LLC** | | |

**EXHIBIT B**

# Property Detail Report

**For Property Located At :**
**2311 SATURN DR, LAREDO, TX 78041**



**U.S. TITLE RECORDS**
PROPERTY & TITLE INFORMATION

Owner Information

| | |
|---|---|
| Owner Name: | NORTHPOINT PARK LTD |
| Mailing Address: | 517 SHILOH DR #1, LAREDO TX 78045-6722 C076 |
| Vesting Codes: | // CO |

Location Information

| | | | |
|---|---|---|---|
| Legal Description: | JACAMAN RANCH, BLOCK 2, LOT 12, UNIT 8 | | |
| County: | WEBB, TX | APN: | 947-46002-120 |
| Census Tract / Block: | 16.02 / 2 | Alternate APN: | 319084 |
| Township-Range-Sect: | | Subdivision: | JACAMAN RANCH |
| Legal Book/Page: | | Map Reference: | / |
| Legal Lot: | 12 | Tract #: | |
| Legal Block: | 2 | School District: | S7 |
| Market Area: | | School District Name: | UNITED ISD |
| Neighbor Code: | CD94 | Munic/Township: | LAREDO |

Owner Transfer Information

| | | | |
|---|---|---|---|
| Recording/Sale Date: | / | Deed Type: | |
| Sale Price: | | 1st Mtg Document #: | |
| Document #: | | | |

Last Market Sale Information

| | | | |
|---|---|---|---|
| Recording/Sale Date: | 03/14/2011 / 03/10/2011 | 1st Mtg Amount/Type: | $479,750 / CONV |
| Sale Price: | $599,687 | 1st Mtg Int. Rate/Type: | / |
| Sale Type: | ESTIMATED | 1st Mtg Document #: | 3061-681 |
| Document #: | 3061-676 | 2nd Mtg Amount/Type: | / |
| Deed Type: | SPECIAL WARRANTY DEED | 2nd Mtg Int. Rate/Type: | / |
| Transfer Document #: | | Price Per SqFt: | |
| New Construction: | | Multi/Split Sale: | MULTI |
| Title Company: | NEEL TITLE CORP | | |
| Lender: | FALCON INTL BK | | |
| Seller Name: | COMPASS BK | | |

Prior Sale Information

| | | | |
|---|---|---|---|
| Prior Rec/Sale Date: | 06/04/2007 / 05/29/2007 | Prior Lender: | |
| Prior Sale Price: | | Prior 1st Mtg Amt/Type: | / |
| Prior Doc Number: | 2370-115 | Prior 1st Mtg Rate/Type: | / |
| Prior Deed Type: | WARRANTY DEED | | |

Property Characteristics

| | | | | | |
|---|---|---|---|---|---|
| Year Built / Eff: | / | Total Rooms/Offices | | Garage Area: | |
| Gross Area: | | Total Restrooms: | | Garage Capacity: | |
| Building Area: | | Roof Type: | | Parking Spaces: | |
| Tot Adj Area: | | Roof Material: | | Heat Type: | |
| Above Grade: | | Construction: | | Air Cond: | |
| # of Stories: | | Foundation: | | Pool: | |
| Other Improvements: | | Exterior wall: | | Quality: | |
| | | Basement Area: | | Condition: | |

Site Information

| Zoning: | B-4 | Acres: | 0.78 | County Use: | |
| Lot Area: | 33,977 | Lot Width/Depth: | x | State Use: | VACNT-PLATTED-LOT-COMM (C2) |
| Land Use: | COMMERCIAL LOT | Commercial Units: | | Water Type: | |
| Site Influence: | | Sewer Type: | | Building Class: | |

Tax Information

| Total Value: | $152,900 | Assessed Year: | 2013 | Property Tax: | $3,815.53 |
| Land Value: | $152,900 | Improved %: | | Tax Area: | G3 |
| Improvement Value: | | Tax Year: | 2013 | Tax Exemption: | |
| Total Taxable Value: | | | | | |



**Transaction History Report**
For Property
Located At

# U.S. TITLE RECORDS
PROPERTY & TITLE INFORMATION

## 2311 SATURN DR, LAREDO, TX 78041
### TRANSACTION HISTORY

History Record #: **1**
*Sale:*

| Sale Recording Date: | **03/14/2011** | Sale Price: | **$599,688** |
| Sale Date: | **03/10/2011** | Sale Price Type: | **ESTIMATED** |
| Rec. Document #: | **3061-676** | Multi/Split Sale: | **MULTI** |
| Document Type: | **SPECIAL WARRANTY DEED** | Other Document #: | |
| Title Company: | **NEEL TITLE CORP** | | |
| Buyer: | **NORTHPOINT PARK LTD** | | |
| Seller: | **COMPASS BK** | | |

*Finance:*

| Mtg Recording Date: | **03/14/2011** | Mtg Loan Type: | **CONV** |
| Mtg Document #: | **3061-681** | Mtg Rate Type: | |
| Document Type: | **DEED OF TRUST** | Mtg Term: | **15 YEARS** |
| Lender: | **FALCON INT'L BK** | Mtg Rate: | |
| Loan Amount: | **$479,750** | Borrower Vesting: | **/ / CO** |
| Borrower 1: | **NORTHPOINT PARK LTD** | | |
| Borrower 2: | | | |
| Borrower 3: | | | |
| Borrower 4: | | | |

History Record #: **2**
*Sale:*

| Sale Recording Date: | **03/09/2009** | Sale Price: | **$802,156** |
| Sale Date: | **02/03/2009** | Sale Price Type: | |
| Rec. Document #: | **2723-659** | Multi/Split Sale: | **MULTI** |
| Document Type: | **TRUSTEE'S DEED** | Other Document #: | |
| Title Company: | **ATTORNEY ONLY** | | |
| Buyer: | **COMPASS BK** | | |

| Seller: | **GARCIA CLAUDIA L** | | |
|---|---|---|---|

**History Record #:  3**
*Finance:*

| | | | |
|---|---|---|---|
| Mtg Recording Date: | **08/01/2008** | Mtg Loan Type: | |
| Mtg Document #: | **2626-32** | Mtg Rate Type: | |
| Document Type: | **MORTGAGE MODIFICATION AGREEMNT** | Mtg Term: | **1 YEARS** |
| Lender: | **\* OTHER INSTITUTIONAL LENDERS** | Mtg Rate: | |
| Loan Amount: | **$743,000** | Borrower Vesting: | **/ /** |
| Borrower 1: | **MINOR THOMAS A** | Orig. Recording Date: | |
| Borrower 2: | **PARSONS WILLIAM R** | Orig. Document #: | |
| Borrower 3: | | | |
| Borrower 4: | | | |

**History Record #:  4**
*Sale:*

| | | | |
|---|---|---|---|
| Sale Recording Date: | **06/04/2007** | Sale Price: | |
| Sale Date: | **05/29/2007** | Sale Price Type: | |
| Rec. Document #: | **2370-115** | Multi/Split Sale: | **MULTI** |
| Document Type: | **WARRANTY DEED** | Other Document #: | |
| Title Company: | | | |
| Buyer: | **MINOR THOMAS A** | | |
| Seller: | **WINPAR HOSPITALITY LAREDO LLC** | | |

**EXHIBIT C**

## General Ledger Report
### Period End Range: 1/31/2007 Through 12/31/2007

| Account / Jrnl Batch No. | Type | Document No. | Description | Jrnl | Apl Date | Sys | IntCo | Subsid | Debit Amount | Credit Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Account Total: | NET | | | <<No Activity>> | 0.00 | 26,000.00 |
| **00-2650 - Notes Payable-IBC LAND LOAN** | | | | | | | | | | |
| Open Balance: | A | | | 4/30/2006 | | | | | | 328,000.00 |
| | | | | Posted Starting Balance: | NET | | | | 0.00 | 328,000.00 |
| ...ed BB-0000000000022 | A | 0930 | SOLD LAND TO BP/AT | BB | 9/30/2007 | 4 | | | -328,000.00 | 328,000.00 |
| | | | | Account Total: | NET | | | | 0.00 | 328,000.00 |
| **00-2675 - NOTES PAYABLE-ATM** | | | | | | | | | | |
| Open Balance: | | | | Posted Starting Balance: | NET | | | | 0.00 | 0.00 |
| Posted | | | | | | | | | | |
| BB-0000000000019 | A | 010107 | WPLAR OWES ATM | BB | 1/1/2007 | 4 | | | | 16,000.00 |
| BB-0000000000020 | A | 0227 | WPLAR OWES ATM | BB | 2/27/2007 | 4 | | | | 7,500.00 |
| BB-0000000000020 | A | 0316 | WPLAR PAID ATM | BB | 3/16/2007 | 4 | | | 10,000.00 | |
| | | | | Account Total: | NET | | | -13,500.00 | 10,000.00 | 23,500.00 |
| **00-2690 - Notes Payable-ADG** | | | | | | | | | | |
| Open Balance: | | | | Posted Starting Balance: | NET | | | | 0.00 | 0.00 |
| Posted | | | | | | | | | | |
| BB-0000000000020 | A | 0222 | WP LAR OWES ADG | BB | 2/22/2007 | 4 | | | | 10,000.00 |
| BB-0000000000020 | A | 0419 | WIRE TRANSFER TO ADG | BB | 4/19/2007 | 4 | | | 10,000.00 | 20,000.00 |

Created : 3/21/2008   4:37:02PM

## General Ledger Report
Period End Range: 1/31/2007  Through 12/31/2007

| Account Jrnl Batch No. | Type | Document No. | Description | Jrnl Apl Date | Sys | IntCo | Subsid | Debit Amount | Credit Amount |
|---|---|---|---|---|---|---|---|---|---|
| 00-2700 - Minor-Capital Bal Sheet | | | | | | | | | |
| Open Balance: | A | | | 11/30/2006 | | | -16,000.00 | | 16,000.00 |
| BB-000000000018 | A | 010107 | WPLAR OWES ATM | BB 1/1/2007 | 4 | | | | 16,000.00 |
| BB-000000000018 | A | 010107 | WPLAR OWES ATM | BB 1/1/2007 | 4 | | | 16,000.00 | |
| BB-000000000019 | A | 010107 | WPLAR OWES ATM | BB 1/1/2007 | 4 | | | 16,000.00 | |
| | | | | Account Total: | NET | | 0.00 | 32,000.00 | 32,000.00 |
| 00-2701 - Hahn-Capital Bal Sheet | | | | | | | | | |
| Open Balance: | A | | | 3/31/2006 | | | -220,700.00 | | 220,700.00 |
| | | | | Posted Starting Balance: | NET | | | 0.00 | 220,700.00 |
| Posted BB-000000000022 | A | 0930 | SOLD LAND TO BP/AT | BB 9/30/2007 | 4 | | -71,696.78 | 149,003.22 | |
| | | | | Account Total: | NET | | | 149,003.22 | 220,700.00 |
| 00-3300 - Retained Earnings | | | | | | | | | |
| Open Balance: | A | | | 1/1/2007 | | | 58,813.51 | 58,813.51 | |
| | | | | Posted Starting Balance: | NET | | | 58,813.51 | 0.00 |

Created : 3/21/2008   4:37:02PM

## General Ledger Report
### Period End Range: 1/31/2007 Through 12/31/2007

| Account / Jrnl Batch No. | Type | Document No. | Description | Jrnl Apl Date | Sys | IntCo | Subsid | Debit Amount | Credit Amount |
|---|---|---|---|---|---|---|---|---|---|
| **00-3350 - Income Summary** | | | | | | | | | |
| Open Balance: | | | | NET | | | | 0.00 | |
| Account Total: | | | | NET | | | <<No Activity>> | 58,813.51 | 0.00 |
| | | | | | | | | | 0.00 |
| **00-3400 - Current Earnings** | | | | | | | | | |
| Open Balance: | | | | | | | | | |
| GJ-0000000000056 | A | NL CE/IS | Current Earn / Income Summa GJ | 10/31/200 | E | | | | 12.20 |
| GJ-0000000000055 | A | NL CE/IS | Current Earn / Income Summa GJ | 9/30/2007 | E | | | | 12.20 |
| GJ-0000000000054 | A | NL CE/IS | Current Earn / Income Summa GJ | 8/31/2007 | E | | | | 12.12 |
| GJ-0000000000053 | A | NL CE/IS | Current Earn / Income Summa GJ | 7/31/2007 | E | | | | 12.07 |
| GJ-0000000000051 | A | NL CE/IS | Current Earn / Income Summa GJ | 6/30/2007 | E | | | | 12.07 |
| GJ-0000000000052 | A | NL CE/IS | Current Earn / Income Summa GJ | 5/31/2007 | E | | | | 12.05 |
| GJ-0000000000062 | A | NL CE/IS | Current Earn / Income Summa GJ | 4/30/2007 | E | | | | 1,512.03 |
| GJ-0000000000061 | A | NL CE/IS | Current Earn / Income Summa GJ | 3/31/2007 | E | | | | 13.81 |
| GJ-0000000000060 | A | NL CE/IS | Current Earn / Income Summa GJ | 3/31/2007 | E | | | 280.86 | 326.62 |
| GJ-0000000000062 | A | NL CE/IS | Current Earn / Income Summa GJ | 3/31/2007 | E | | | 280.86 | |
| GJ-0000000000049 | A | NL CE/IS | Current Earn / Income Summa GJ | 3/31/2007 | E | | | | 280.86 |
| GJ-0000000000048 | A | NL CE/IS | Current Earn / Income Summa GJ | 3/31/2007 | E | | | | 400.00 |
| GJ-0000000000046 | A | NL CE/IS | Current Earn / Income Summa GJ | 3/31/2007 | E | | | | 300.86 |
| GJ-0000000000046 | A | NL CE/IS | Current Earn / Income Summa GJ | 3/31/2007 | E | | | | 241.98 |
| GJ-0000000000045 | A | NL CE/IS | Current Earn / Income Summa GJ | 2/28/2007 | E | | | | 12.96 |
| GJ-0000000000044 | A | NL CE/IS | Current Earn / Income Summa GJ | 2/28/2007 | E | | | | 2,781.16 |
| GJ-0000000000047 | A | NL CE/IS | Current Earn / Income Summa GJ | 1/31/2007 | E | | | | 9.92 |
| GJ-0000000000044 | A | NL CE/IS | Current Earn / Income Summa GJ | 1/31/2007 | E | | | | 150.00 |
| GJ-0000000000043 | A | NL CE/IS | Current Earn / Income Summa GJ | 1/31/2007 | E | | | | 2,880.46 |
| Account Total: | | | | NET | | | | 280.86 | 8,959.10 |
| | | | | | | | | -8,678.24 | |
| **Posted** | | | | | | | | | |
| GJ-000000000043 | A | NL CE/IS | Current Earn / Income Summa GJ | 1/31/2007 | E | | | | 2,880.46 |
| GJ-000000000044 | A | NL CE/IS | Current Earn / Income Summa GJ | 1/31/2007 | E | | | | 150.00 |
| GJ-000000000047 | A | NL CE/IS | Current Earn / Income Summa GJ | 1/31/2007 | E | | | | 9.92 |
| Posted Starting Balance: | | | | NET | | | | 0.00 | 0.00 |
| | | | | | | | | 0.00 | 0.00 |

## General Ledger Report
### Period End Range: 1/31/2007 Through 12/31/2007

| Account Jrnl Batch No. | Type | Document No. | Description | Jrnl Apl Date | Sys | IntCo | Subsid | Debit Amount | Credit Amount |
|---|---|---|---|---|---|---|---|---|---|
| GJ-00000000000045 | A | NL CE/IS | Current Earn / Income Summa GJ | 2/28/2007 | E | | | 2,781.16 | |
| GJ-00000000000048 | A | NL CE/IS | Current Earn / Income Summa GJ | 2/28/2007 | E | | | 12.96 | |
| GJ-00000000000046 | A | NL CE/IS | Current Earn / Income Summa GJ | 2/28/2007 | E | | | 241.98 | |
| GJ-00000000000049 | A | NL CE/IS | Current Earn / Income Summa GJ | 3/31/2007 | E | | | 300.86 | |
| GJ-00000000000060 | A | NL CE/IS | Current Earn / Income Summa GJ | 3/31/2007 | E | | | 400.00 | |
| GJ-00000000000061 | A | NL CE/IS | Current Earn / Income Summa GJ | 3/31/2007 | E | | | 280.86 | |
| GJ-00000000000062 | A | NL CE/IS | Current Earn / Income Summa GJ | 3/31/2007 | E | | | | 280.86 |
| GJ-00000000000060 | A | NL CE/IS | Current Earn / Income Summa GJ | 3/31/2007 | E | | | 326.62 | |
| GJ-00000000000051 | A | NL CE/IS | Current Earn / Income Summa GJ | 4/30/2007 | E | | | 13.81 | |
| GJ-00000000000050 | A | NL CE/IS | Current Earn / Income Summa GJ | 5/31/2007 | E | | | 1,512.03 | |
| GJ-00000000000052 | A | NL CE/IS | Current Earn / Income Summa GJ | 6/30/2007 | E | | | 12.05 | |
| -00000000000053 | A | NL CE/IS | Current Earn / Income Summa GJ | 7/31/2007 | E | | | 12.07 | |
| GJ-00000000000053 | A | NL CE/IS | Current Earn / Income Summa GJ | 8/31/2007 | E | | | 12.12 | |
| GJ-00000000000055 | A | NL CE/IS | Current Earn / Income Summa GJ | 9/30/2007 | E | | | 12.12 | |
| GJ-00000000000056 | A | NL CE/IS | Current Earn / Income Summa GJ | 10/31/200 | E | | | 12.20 | |

**Account Total:** 8,678.24    8,959.10    280.86

**60-6080 - Office Supplies Admin**

Open Balance:

Posted Starting Balance:   NET   0.00   0.00

Posted
| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| AP-00000000000023 | A | 000081 | Vend-PION Inv No-1280 | AP 1/1/2007 | 2 | NET | | 78.93 | |
| B8-00000000000022 | A | 0306 | WPLLLP PD ART ENG-BLUE | BB 3/6/2007 | 4 | | | 280.86 | |
| R8-00000000000023 | A | 0306 | DUP ON AP | BB 3/6/2007 | 4 | | | | 280.86 |
| -0000000000068 | A | 000068 | Vend-WPLLLP Inv No-AR | AP 3/21/2007 | 2 | | | 280.86 | |
| AP-00000000000025 | A | 000069 | Vend-SAFE Inv No- | AP 4/19/2007 | 2 | | | 106.62 | |

**Account Total:** 466.41    747.27    280.86

**60-6090 - Misc Supplies Admin**

Open Balance:

Posted Starting Balance:   NET   0.00   0.00

Posted
| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| AP-00000000000027 | A | 000075 | Vend-BPARS Inv No-SMI | AP 3/15/2007 | 2 | | | 400.00 | |

**Account Total:** 400.00    0.00    0.00

Created : 3/21/2008  4:37:02PM

**General Ledger Report**

Period End Range: 1/31/2007 Through 12/31/2007

| Account Jrnl Batch No. | Type | Document No. | Description | Jrnl Apl Date | Sys | IntCo | Subsid | Debit Amount | Credit Amount |
|---|---|---|---|---|---|---|---|---|---|
| **60-6530 - Bank Fees Admin** | | | | | | | | | |
| Open Balance: | | | Posted Starting Balance: | NET | | | | 0.00 | 0.00 |
| BB-0000000000017 | A | 0111 | WIRE TRANSFER FEE | BB | 1/11/2007 | 4 | | 6.00 | |
| BB-0000000000020 | A | 0131 | ANALYSIS CHARGE | BB | 1/31/2007 | 4 | | 9.92 | |
| BB-0000000000020 | A | 0227 | WIRE TRANSFER FEE | BB | 2/27/2007 | 4 | | 6.00 | |
| BB-0000000000020 | A | 0227 | BANK FEES | BB | 2/27/2007 | 4 | | 0.96 | |
| BB-0000000000020 | A | 0227 | WIRE TRANSFER | BB | 2/27/2007 | 4 | | 6.00 | |
| BB-0000000000020 | A | 0316 | WIRE TRANSFER FEE | BB | 3/16/2007 | 4 | | 20.00 | |
| BB-0000000000020 | A | 0424 | WIRE TRANSFER FEE | BB | 4/24/2007 | 4 | | 20.00 | |
| BB-0000000000020 | A | 0515 | WIRE FEE | BB | 5/15/2007 | 4 | | 6.00 | |
| BB-0000000000020 | A | 0531 | BANK FEES | BB | 5/31/2007 | 4 | | 7.81 | |
| BB-0000000000020 | A | 0630 | BANK FEES | BB | 6/30/2007 | 4 | | 12.03 | |
| BB-0000000000020 | A | 731 | BANK FEES | BB | 7/31/2007 | 4 | | 12.05 | |
| BB-0000000000020 | A | 0831 | BANK FEES | BB | 8/31/2007 | 4 | | 12.07 | |
| BB-0000000000020 | A | 0930 | BANK FEES | BB | 9/30/2007 | 4 | | 12.12 | |
| BB-0000000000020 | A | 1031 | BANK FEES | BB | 10/31/200 | 4 | | 12.20 | |
| | | | | | Account Total: | NET | | 143.16 | 0.00 |

Account Total:  NET  400.00  0.00

**60-6551 - Legal Fees Admin**

Open Balance:

| | | | Posted Starting Balance: | NET | | | | 0.00 | 0.00 |
|---|---|---|---|---|---|---|---|---|---|
| Posted | | | | | | | | | |
| AP-0000000000024 | A | 000063 | Vend-BURKE | Inv No-O3/ | AP | 1/1/2007 | 2 | 150.00 | |
| AP-0000000000025 | A | 000072 | Vend-HMT | Inv No-JUN | AP | 6/7/2007 | 2 | 1,500.00 | |

Created : 3/21/2008   4:37:02PM

**General Ledger Report**
Period End Range: 1/31/2007  Through 12/31/2007

| Account Jrnl Batch No. | Type | Document No. | Description | Jrnl Apl Date | Sys | IntCo | Subsid | Debit Amount | Credit Amount |
|---|---|---|---|---|---|---|---|---|---|
| 60-6590 - Travel Admin | | | | | | | | | |
| Open Balance: | | | | | | | | | |
| | | | | Account Total: | NET | | 1,650.00 | 1,650.00 | 0.00 |
| | | | | | | | | | |
| ...ed | | | | | | | | | |
| AP-0000000000023 | A | 000055 | Vend-BPARS | Inv No-INV | AP | 1/16/2007 | 2 | 182.92 | 0.00 |
| AP-0000000000024 | A | 000067 | Vend-WAK | Inv No-LUT | AP | 3/21/2007 | 2 | 241.98 | 0.00 |
| | | | | Account Total: | NET | | 424.90 | 424.90 | 0.00 |
| | | | | | | | | | |
| 61-6250 - Licenses, LLC, Fast Kit | | | | | | | | | |
| Open Balance: | | | | Posted Starting Balance: | NET | | 0.00 | 0.00 | 0.00 |
| Posted | | | | | | | | | |
| AP-0000000000025 | A | 000070 | Vend-DIVCO | Inv No-LAR | AP | 4/19/2007 | 2 | 50.00 | 0.00 |
| | | | | Account Total: | NET | | 50.00 | 50.00 | 0.00 |
| | | | | | | | | | |
| 61-6552 - Outside Accounting Acc. | | | | | | | | | |
| Open Balance: | | | | Posted Starting Balance: | NET | | 0.00 | 0.00 | 0.00 |
| Posted | | | | | | | | | |
| AP-0000000000025 | A | 000071 | Vend-BURKE | Inv No-LAR | AP | 4/19/2007 | 2 | 150.00 | 0.00 |
| | | | | Account Total: | NET | | 150.00 | 150.00 | 0.00 |

Created : 3/21/2008    4:37:02PM

## General Ledger Report
### Period End Range: 1/31/2007 Through 12/31/2007

**Account**

**95-7420 - Notes Payable - Interest**

Open Balance:

| Jrnl Batch No. | Type | Document No. | Description | Jrnl Apl Date | Sys | IntCo | Subsid | Debit Amount | Credit Amount |
|---|---|---|---|---|---|---|---|---|---|
| | | | Posted Starting Balance: | NET | | | | 0.00 | 0.00 |
| Posted | | | | | | | | | |
| AP-0000000000023 | A | 000053 | Vend-IBC | Inv No-JAN07 AP | 1/20/2007 | 2 | | | |
| AP-0000000000024 | A | 000064 | Vend-IBC | Inv No-FEB0 AP | 2/27/2007 | 2 | | 2,612.61 | |
| AP-0000000000024 | A | 000064 | Vend-IBC | Inv No-FEB0 AP | 2/27/2007 | 2 | | 2,865.43 | 84.27 |
| | | | Account Total: | NET | | | | 5,478.04 | 84.27 |
| | | | | | | | | 5,393.77 | |
| | | | Defined Account Total: | NET | | | | 0.00 | 0.00 |
| | | | | | | | | 1,319,673.90 | 1,319,673.90 |
| | | | Report Grand Total: | NET | | | | 0.00 | 0.00 |
| | | | | | | | | 1,319,673.90 | 1,319,673.90 |

**Total Transactions Processed:**
Defined/Posted:         138
Defined/Unposted:        0
Undefined/Unpost        0

**Selections**
CURRENT

·mitted By: TRACIE

## General Ledger Report

Period End Range: 1/31/2007 Through 12/31/2007

**Account'**

| Jrnl Batch No. | Type  Document No. | Description | Jrnl Apl Date  Sys  IntCo | Subsid | Debit Amount | Credit Amount |
|---|---|---|---|---|---|---|

**Account'**

| | |
|---|---|
| Account Range: | [First] [Last] |
| Tran Type Range: | [First] [Last] |
| Currency Range: | [First] [Last] |
| Journal Range: | [First] [Last] |
| Period End Range: | 1/31/2007    12/31/2007 |
| Source Company: | [All] |
| Inter-Co ID: | [All] |
| Account Type: | [All] |
| System ID: | [All] |
| P   ~t Mode: | Posted |
| L   ay Natural Crncy: | No |
| Page Break on Acct: | No |
| Subtotal on Period: | No |
| Activity Mode: | Suppress Zero Balance Accounts with No Activity |
| Include Ending Adj Per: | No |
| Include Undefined Acct: | No |

**EXHIBIT D**

## Section 8
## Termination and Dissolution of the LLC

8.1.    *Events of Dissolution.* The LLC shall be dissolved upon the occurrence of any of the following events:

    (a)    The unanimous written consent of the Members;

    (b)    The sale, transfer, or assignment of substantially all of the assets of the LLC;

    (c)    (i) The adjudication of the LLC as insolvent within the meaning of insolvency in either bankruptcy or equity proceedings; (ii) the filing of an involuntary petition in bankruptcy against the LLC (which is not dismissed within 90 days); (iii) the filing against the LLC of a petition for reorganization under the Federal Bankruptcy Code or any state statute (which is not dismissed within 90 days); (iv) a general assignment by the LLC for the benefit of creditors; (v) the voluntary claim (by the LLC) that it is insolvent under any provisions of the Bankruptcy Code (or any state insolvency statutes); or (vi) the appointment for the LLC of a temporary or permanent receiver, trustee, custodian, or sequestrator and such receiver, trustee, custodian, or sequestrator is not dismissed within 90 days; and

    (d)    As otherwise required by law.

8.2.    *Conclusion of Affairs.* In the event of the dissolution of the LLC for any reason, the Members shall deliver articles of dissolution to the Department of State for filing, and shall proceed promptly to wind up the affairs of and liquidate the assets of the LLC. Except as otherwise provided in these Regulations, the Members shall continue to share distributions and tax allocations during the period of liquidation in the same manner as before the dissolution.

8.3.    *Liquidating Distributions.* After paying or providing for the payment of all claims, debts or liabilities and obligations of the LLC and all expenses of liquidation, the proceeds of the liquidation and any other assets of the LLC shall be distributed to or for the benefit of the Members in accordance with Section 6.1 of these Regulations.

8.4.    *Termination.* Upon completion of the liquidation of the LLC and the distribution of all LLC assets, the LLC shall terminate and the Members shall have the authority to execute and record Articles of Dissolution of the LLC, as well as any and all other documents required to effectuate the dissolution and termination of the LLC.

## Section 9
## Transfers of Membership Units

9.1.    *Restrictions on Transfers.* Membership Units may be Transferred, as defined below, in whole or in part only in accordance with other specific provisions of these Regulations and the following provisions:

G:\MATT MONAGHAN\Clients\Parsons\WinPar Hospitality Laredo, LLC\Docs\Member Managed Regs and Op Agrmnt.10.27.05.doc

14

(a) For purposes of these Regulations, the term "Transfer" or "Transferred" shall mean the sale, assignment, transfer, pledge, encumbrance, or other disposition, by operation of law or otherwise, of Membership Units.

(b) Membership Units shall not be Transferred without the following:

(1) The full compliance with the terms of this Section 9;

(2) The consent of the Member(s) owning the remaining Membership Units; and

(3) An opinion of counsel, satisfactory to the Member(s) owning the remaining Membership Units, that the Transfer of the Membership Units does not violate the Securities Act of 200433 or any applicable state securities laws.

(c) Any Transfer of Membership Units shall be effective only to give the person to whom Transferred (the "Transferee") the right to receive the share of tax allocations and distributions to which the person transferring (the "Transferor") would otherwise be entitled. Except as otherwise provided herein, no Transferee of a Membership Units shall have the right to become a substituted Member unless the Member(s) owning the remaining Membership Units, in the exercise of its or their sole and absolute discretion, expressly consents thereto in writing and the Transferee agrees to be bound by all the terms and conditions of these Regulations as then in effect. Unless and until a Transferee is admitted as a substituted Member, the Transferee shall have no right to exercise any of the powers, rights, and privileges of a Member hereunder.

(d) No Member shall cause or permit to be created a lien or security interest in its Membership Units, except in favor of a lender to the LLC and upon Approval of the Members.

(e) Each Member agrees not to Transfer all or any part of its Membership Units (or take or omit any action, filing election, or other action which could result in a deemed transfer) if such Transfer (either considered alone or in the aggregate with prior transfers by other Members) would result in the termination of the LLC for federal income tax purposes. In order to enable the Members to identify Transfers which could result in such a termination, each Member covenants and agrees to immediately inform the other Members of any Transfers (or deemed Transfers for purposes of the Code).

(f) Any Transfer not in accord with this Section 9 shall be void *ab initio*.

(g) The LLC, each Member, and any other person or persons having business with the LLC need deal only with Members who are admitted as Members or as substituted Members of the LLC, and they shall not be required to deal with any other person by reason of Transfer or assignment of a Membership Unit by a Member or by reason of the death of a Member, except as otherwise provided in these Regulations. In the absence of the substitution (as provided herein) of a Member for an assigning or transferring Member, any payment to a Member or any trustee in bankruptcy in accordance with the terms of these Regulations shall

G:\MATT MONAGHAN\Clients\Parsons\WinPar Hospitality Laredo, LLC\Docs\Member Managed Regs and Op Agrmnt.10.27.05.doc

15

acquit the LLC and any other Member of all liability to any other persons or entities who may be interested in such payment by reason of assignment or transfer of such Member.

      (h)    Notwithstanding anything to the contrary, a Member may, t any time, transfer

his or her Membership Units to a revocable living trust wherein the transferor retains the power, acting alone, to re-vest title back into the Member's individual name.

    9.2.    *Right of First Refusal.* In the event that a Member (the "Selling Member") desires to transfer to any third person all or a portion of its Membership Units, the Selling Member may do so only in full and complete compliance with the procedures set forth in Section 9.1 and the procedures set forth below for each instance of transfer:

      (a)    The Selling Member shall give written notice (the "Notice") to each other Member ("Offeree(s)") setting forth, in substance, the following:

      (1)    That the Selling Member has given to, or received from, a third party (the "Offeror") a good faith written offer (the "Offer") to transfer all or a part of its Membership Units (the "Offered Interest"); and

      (2)    That the Selling Member thereby offers to transfer all Offered Interest to the Offeree(s), *pro rata* according to its or their respective Ownership Interests, at a price and upon such terms and conditions as are set forth in the Offer, a true copy of which shall be attached to the Notice.

      (b)    Within thirty (30) days after receipt of the Notice (the "Transfer Offering Period"), the Offeree(s) may, at its or their option, elect to purchase all (but not less than all) of the Offered Interests by giving written notice of the intention to do so to the Selling Member. Any Offeree may assign its purchase rights hereunder to any Member owning Membership Units. Closing of the purchase of the Offered Interests shall occur as set forth in Section 9.3.

      (c)    In the event that no Offeree(s) agree to purchase all of the Offered Interests in accordance with subparagraph (2) of this Section 9.2, the Selling Member shall provide Notice of such event to the President of the LLC. The LLC shall then have the amount of time set forth in the Transfer Offering Period to determine, based on the Approval of the Members other than the Selling Member, whether it shall elect to purchase all (but not less than all) of the Offered Interests, by giving written notice of its intention to do so to the Selling Member. The LLC may assign its purchase rights hereunder to any Member or other Person. Closing of the purchase of the Offered Interests shall occur as set forth in Section 9.3. Failure of the LLC or its assignee to notify the Selling Member of its acceptance within the relevant Transfer Offering Period shall be deemed to be its refusal to acquire the Offered Interests.

      (d)    In the event that an offer to Transfer made pursuant to Section 9.2(a), (b), or (c) is rejected, whether by expiration of the Transfer Offering Period or otherwise, and the Selling Member has complied with the requirements of Section 9.1 and Section 9.2, the Selling Member shall be permitted to Transfer the Offered Interests to the Offeror upon the terms and

G:\MATT MONAGHAN\Clients\Parsons\WinPar Hospitality Laredo, LLC\Docs\Member Managed Regs and Op Agrmnt.10.27.05.doc

conditions as stated in the Offer; provided, however, that such Transfer may not be effected until the Offeror has executed and adopted these Regulations or a counterpart thereof. Closing of the purchase of the Offered Interest shall occur as set forth in Section 9.3. Transfer pursuant to the Offer must made within sixty (60) days following the expiration of the relevant Transfer Offering Period and, if the Transfer is not made within such time period, the Offered Interests shall again become subject to the restrictions of these Regulations.

9.3.    *Closing of a Transfer.* Closing for the Transfer of Membership Units pursuant to Section 9.2 shall occur within sixty (60) days following expiration of any relevant Transfer Offering Period and shall take place at the office of the LLC at 10:00 a.m. on the date so specified in the written notice, or at such other time and place as shall be mutually agreeable. At such closing, the seller must transfer and deliver the Membership Units to the buyer and the buyer shall pay the agreed consideration to the seller. The seller shall also deliver to the buyer an instrument executed by the seller, warranting that the Membership Units are free and clear of all liens, claims, and encumbrances of every kind. The seller shall also agree therein to indemnify the buyer against and to hold it harmless from any loss, cost, or damage which it may incur by reason of the breach of such warranty. Further, in the event that the seller shall fail to appear at the closing or shall fail to deliver the certificate or certificates representing the Membership Units when required to do so, or shall otherwise fail to comply with its obligations under these Regulations, the buyer may thereupon place cash or immediately and available funds equal to the purchase price in escrow for the seller, whereupon the LLC shall be privileged to cancel the seller's Membership Units and to treat the Membership Units as having been purchased by the buyer. Such purchase price shall be released from escrow only upon surrender by the seller of such certificate or certificates, properly endorsed for transfer, or proof of destruction or loss thereof satisfactory to the LLC.

9.4.    *Repayment of Outstanding Loans of Members.* Notwithstanding any other provision of this Section 9, no Member may Transfer its Membership Units to a third party, and neither the LLC nor any Member may elect to purchase the Membership Units of another Member, unless such Member or the LLC agrees to pay, in cash at the time of closing of such transaction, any and all outstanding loans, debts, and obligations owed by the LLC to every other Member.

**Section 10**
**Administrative Provisions**

10.1.    *Principal Office.*

(a)    The initial principal place of business and principal office of the LLC shall be in Brevard County, Florida. The LLC may relocate the principal office and principal place of business and have such additional offices as the Members may deem advisable.

(b)    The President shall have the power, on behalf of the LLC, to designate, where required, a registered agent (or other agent for receipt of service of process) in each state or other jurisdiction in which the LLC transacts business and to designate, to the extent required, an office, place of business, or mailing address within or without that state of other jurisdiction.

G:\MATT MONAGHAN\Clients\Parsons\WinPar Hospitality Laredo, LLC\Docs\Member Managed Regs and Op Agrmnt.10.27.05.doc

17

**EXHIBIT E**

10/21/13   https://mail-attachment.googleusercontent.com/attachment/u/0/?ui=2&ik=6b7184e650&view=att&th=141dc7bf71a7a6a1&attid=0.1&disp=inline&realattid=39...

## Property Detail Report

·For Property Located At :
**6428 SINATRA PKWY, LAREDO, TX 78041**



**U.S. TITLE RECORDS**
PROPERTY & TITLE INFORMATION

Owner Information

| | | | |
|---|---|---|---|
| Owner Name: | NORTHPOINT PARK LTD | | |
| Mailing Address: | 517 SHILOH DR #1, LAREDO TX 78045-6722 C076 | | |
| Vesting Codes: | / / CO | | |

Location Information

| | | | |
|---|---|---|---|
| Legal Description: | JACAMAN RANCH, BLOCK 2, LOT 13, UNIT 8 | | |
| County: | WEBB, TX | APN: | 947-46002-130 |
| Census Tract / Block: | 16.02 / 2 | Alternate APN: | 319085 |
| Township-Range-Sect: | | Subdivision: | JACAMAN RANCH |
| Legal Book/Page: | | Map Reference: | / |
| Legal Lot: | 13 | Tract #: | |
| Legal Block: | 2 | School District: | S7 |
| Market Area: | | School District Name: | UNITED ISD |
| Neighbor Code: | CD94 | Munic/Township: | LAREDO |

Owner Transfer Information

| | | | |
|---|---|---|---|
| Recording/Sale Date: | / | Deed Type: | |
| Sale Price: | | 1st Mtg Document #: | |
| Document #: | | | |

Last Market Sale Information

| | | | |
|---|---|---|---|
| Recording/Sale Date: | 03/14/2011 / 03/10/2011 | 1st Mtg Amount/Type: | $479,750 / CONV |
| Sale Price: | $599,687 | 1st Mtg Int. Rate/Type: | / |
| Sale Type: | ESTIMATED | 1st Mtg Document #: | 3061-681 |
| Document #: | 3061-676 | 2nd Mtg Amount/Type: | / |
| Deed Type: | SPECIAL WARRANTY DEED | 2nd Mtg Int. Rate/Type: | / |
| Transfer Document #: | | Price Per SqFt: | |
| New Construction: | | Multi/Split Sale: | MULTIPLE |
| Title Company: | NEEL TITLE CORP | | |
| Lender: | FALCON INT'L BK | | |
| Seller Name: | COMPASS BK | | |

Prior Sale Information

| | | | |
|---|---|---|---|
| Prior Rec/Sale Date: | 06/04/2007 / 05/31/2007 | Prior Lender: | LAREDO NAT'L BK |
| Prior Sale Price: | $988,190 | Prior 1st Mtg Amt/Type: | $743,000 / |
| Prior Doc Number: | 2370-118 | Prior 1st Mtg Rate/Type: | / |
| Prior Deed Type: | WARRANTY DEED | | |

Property Characteristics

| | | | | | |
|---|---|---|---|---|---|
| Year Built / Eff: | / | Total Rooms/Offices | | Garage Area: | |
| Gross Area: | | Total Restrooms: | | Garage Capacity: | |
| Building Area: | | Roof Type: | | Parking Spaces: | |
| Tot Adj Area: | | Roof Material: | | Heat Type: | |
| Above Grade: | | Construction: | | Air Cond: | |
| # of Stories: | | Foundation: | | Pool: | |
| Other Improvements: | | Exterior wall: | | Quality: | |
| | | Basement Area: | | Condition: | |

Site Information

10/21/13   https://mail-attachment.googleusercontent.com/attachment/u/0?ui=2&ik=6b7184e650&view=att&th=141dc7bf71a7a6a1&attid=0.1&disp=inline&realattid=39...

| Zoning: | B-4 | Acres: | 0.79 | County Use: | |
|---|---|---|---|---|---|
| Lot Area: | 34,412 | Lot Width/Depth: | x | State Use: | VACNT-PLATTED-LOT-COMM (C2) |
| Land Use: | COMMERCIAL LOT | Commercial Units: | | Water Type: | |
| Site Influence: | | Sewer Type: | | Building Class: | |

Tax Information

| Total Value: | $184,110 | Assessed Year: | 2013 | Property Tax: | $4,594.37 |
|---|---|---|---|---|---|
| Land Value: | $184,110 | Improved %: | | Tax Area: | G3 |
| Improvement Value: | | Tax Year: | 2013 | Tax Exemption: | |
| Total Taxable Value: | | | | | |

**Street Map
Plus Report**
For Property
Located At



# U.S. TITLE RECORDS
PROPERTY & TITLE INFORMATION

**6428 SINATRA PKWY, LAREDO, TX 78041**

View Interactive Map

**Transaction
History Report**
For Property
Located At

# U.S. TITLE RECORDS
PROPERTY & TITLE INFORMATION

**6428 SINATRA PKWY, LAREDO, TX 78041**

**TRANSACTION HISTORY**

History Record #:  **1**
*Sale:*

| Sale Recording Date: | **03/14/2011** | Sale Price: | **$599,688** |
|---|---|---|---|
| Sale Date: | **03/10/2011** | Sale Price Type: | **ESTIMATED** |
| Rec. Document #: | **3061-676** | Multi/Split Sale: | **MULTIPLE** |
| Document Type: | **SPECIAL WARRANTY DEED** | Other Document #: | |

| Title Company: | **NEEL TITLE CORP** |
|---|---|
| Buyer: | **NORTHPOINT PARK LTD** |
| Seller: | **COMPASS BK** |

*Finance:*

| Mtg Recording Date: | **03/14/2011** | Mtg Loan Type: | **CONV** |
|---|---|---|---|
| Mtg Document #: | **3061-681** | Mtg Rate Type: | |
| Document Type: | **DEED OF TRUST** | Mtg Term: | **15 YEARS** |
| Lender: | **FALCON INT'L BK** | Mtg Rate: | |
| Loan Amount: | **$479,750** | Borrower Vesting: | **// CO** |
| Borrower 1: | **NORTHPOINT PARK LTD** | | |
| Borrower 2: | | | |
| Borrower 3: | | | |
| Borrower 4: | | | |

History Record #:  **2**

https://mail-attachment.googleusercontent.com/attachment/u/0/?ui=2&ik=6b7184e650&view=att&th=141dc7bf71a7a6a1&attid=0.1&disp=inline&realattid=39d0382...   2/3

### Sale:

| | | | |
|---|---|---|---|
| Sale Recording Date: | 03/09/2009 | Sale Price: | $802,156 |
| Sale Date: | 02/03/2009 | Sale Price Type: | |
| Rec. Document #: | 2723-659 | Multi/Split Sale: < /TD> | MULTIPLE |
| Document Type: | TRUSTEE'S DEED | Other Document #: | |
| Title Company: | ATTORNEY ONLY | | |
| Buyer: | COMPASS BK | | |
| Seller: | GARCIA CLAUDIA L | | |

History Record #: 3

### Finance:

| | | | |
|---|---|---|---|
| Mtg Recording Date: | 08/01/2008 | Mtg Loan Type: | |
| Mtg Document #: | 2626-32 | Mtg Rate Type: | |
| Document Type: | MORTGAGE MODIFICATION AGREEMNT * OTHER | Mtg Term: | 1 YEARS |
| Lender: | INSTITUTIONAL LENDERS | Mtg Rate: | |
| Loan Amount: | $743,000 | Borrower Vesting: | / / |
| Borrower 1: | MINOR THOMAS A | Orig. Recording Date: | |
| Borrower 2: | PARSONS WILLIAM R | Orig. Document #: | |
| Borrower 3: | | | |
| Borrower 4: | | | |

History Record #: 4

### Sale:

| | | | |
|---|---|---|---|
| Sale Recording Date: | 06/04/2007 | Sale Price: | $988,190 |
| Sale Date: | 05/31/2007 | Sale Price Type: | ESTIMATED |
| Rec. Document #: | 2370-118 | Multi/Split Sale: | |
| Document Type: | WARRANTY DEED | Other Document #: | |
| Title Company: | | | |
| Buyer: | MINOR TOMAS A | | |
| Seller: | PRUNEDA FRANCISCO JR & LAURA | | |

### Finance:

| | | | |
|---|---|---|---|
| Mtg Recording Date: | 06/04/2007 | Mtg Loan Type: | |
| Mtg Document #: | 2370-122 | Mtg Rate Type: | |
| Document Type: | DEED OF TRUST | Mtg Term: | 1 YEARS |
| Lender: | LAREDO NAT'L BK | Mtg Rate: | |
| Loan Amount: | $743,000 | Borrower Vesting: | / / |
| Borrower 1: | MINOR TOMAS A | | |
| Borrower 2: | PARSONS WILLIAM R | | |
| Borrower 3: | | | |
| Borrower 4: | | | |

**EXHIBIT F**



Dcmmtg@cs.com                    To
03/08/2006 01:45 PM             Subject  Fwd: Revised - Exhibit A page


T. Alan Minor
President
Commercial Services
*Diversified Commercial Mortgage*
(P) 804-423-6412
(P) 866-562-2147
(F) 866-331-3568
----- Message from Bill Parsons <bparsons@schms.com> on Wed, 8 Mar 2006 11:42:12 -0800 (PST) -----
          **To:** "T. Alan Minor" <dcmmtg@cs.com>
          **Subject:** Revised - Exhibit A page
Alan,

Please replace this corrected percentage's page with the one that is incorrect.

Thanks,
Bill


Bill Parsons
President
Space Coast Hospitality Management Services
P.O. Box 321534
Cocoa Beach, FL 32931
Phone: 321-868-4304

Fax: 321-868-3938  EXHIBIT A - Subscription Agreement %'s.doc

# EXHIBIT "A"

## WINPAR HOSPITALITY LAREDO, LLC

### List of Members and Percentages

| Member | Percentage |
|--------|------------|
| WinPar Hospitality, LLLP | 40.9% |
| T. Alan Minor | 40.9% |
| Eloise Hahn | 18.2% |

**CERTIFICATE № 01**

Issued to BURKE FINANCIAL, LLC

Dated APRIL 10 _____, 2006.

For 18.2 Units

Received Certificate No. _____
For _____, _____ Units
on _____

From whom transferred

| No. of Original Certificate | No. of Original Units | No. of Units Transferred |
|---|---|---|
| | | |

Dated _____, _____

---

Membership Certificate

# WinPar Hospitality Laredo, LLC

ORGANIZED UNDER THE LAWS OF
THE STATE OF FLORIDA.

UNITS
18.2

A LIMITED LIABILITY COMPANY

This Certifies That    BURKE FINANCIAL, LLC    is the owner

of    18.2 of 100 Authorized    Units of the above Limited Liability Company transferable only on the books of the Limited Liability Company by the holder hereof in person or by duly authorized attorney upon surrender of this Certificate properly endorsed and is entitled to the full benefits and privileges of such membership subject to the duties and obligations, as more fully set forth in the Company's Articles of Organization/Operating Agreement/Regulations for this Limited Liability Company. Transfer of these Units is subject to restrictions in the books of the Limited Liability Company.

In Witness Whereof, The said Limited Liability Company has caused this Certificate to be executed by its duly authorized Member(s) Manager(s) and its Limited Liability Company Seal to be hereunto affixed this    10TH    day of    APRIL    A.D. 2006.

WILLIAM R. PARSONS, MANAGER
MEMBER

_____ MEMBER

_____
MEMBER

This Document Contains Security Features See back For Details

# Confirmation Report — Memory Send

```
Page      : 001
Date & Time: Mar-30-06  12:02pm
Line 1    : +13128864235
Machine ID : US EPA
```

| | | |
|---|---|---|
| Job number | : | 896 |
| Date | : | Mar-30 12:01pm |
| To | : | ☎913124543856 |
| Number of pages | : | 001 |
| Start time | : | Mar-30 12:01pm |
| End time | : | Mar-30 12:02pm |
| Pages sent | : | 001 |
| Status | : | OK |

Job number    : 896                **\*\*\* SEND SUCCESSFUL \*\*\***

March 30, 2006

## MEMORANDUM

**TO:**        James Abraham via facsimile (312) 454-3856
              Vice President of Investments
              Stifel Nicolaus

**FROM:**      Eloise Hahn

**RE:**        Accnt No. 31348898

Please wire $220,700 of monetary funds to:

International Bank of Commerce
1200 San Bernado Ave
Laredo, TX 78042
Ph. 956-722-7611

The money should be credited to Winpar Hospitality Laredo LLC

Routing #1140902528
Account # 6001323623

Please email me receipt that this was done today. My email address is: hahn.eloise@epa.gov

I would also appreciate if you email my business partner Alan Minor a copy of receipt as well.

His email address is: Dcmmtg@cs.com. Thank you very kindly.

**EXHIBIT G**

**Eloise K. Hahn**
**313 East 1300 North**
**Chesterton, IN   46304**
**(708) 408-8266**
**eloisehahn349@gmail.com**

January 18, 2011

Alan Minor
11603 Hardwood Drive
Midlothian, VA   23114

Re:      Promissary note date September 17, 2009

Dear Alan:

I am writing to you to demand the $250,000 in its entirety effective today,

January 18, 2011.  In accordance with the Promissary Note you agreed to

pay back the $250,000 on a best efforts basis.  Further, you agreed to

assist me with any and all business statements requested.  To date,

I have not received any receipts, checks, etc., which document the

disbursement of my $250,000.  The Internal Revenue Service has

also gotton involved and is demanding proof of the disposition of my

$250,000.  The listing agreement with Lula Morales terminated in year

2008.  The listing agent further indicated to me that the property was

foreclosed upon.  Please get back with me ASAP.  Thank you very kindly.

Sincerely yours,


Eloise K. Hahn

**Eloise K. Hahn**
**313 East 1300 North**
**Chesterton, IN   46304**
**(708) 408-8266**
**eloisehahn349@gmail.com**

January 18, 2011

William (Bill) Parsons
152 Martesia Way
Indian Harbor Beach, Florida   32937

Re:      Promissary note date September 17, 2009

Dear Bill:

I am writing to you to demand the $250,000 in its entirety effective today,

January 18, 2011.  In accordance with the Promissary Note you agreed to

pay back the $250,000 on a best efforts basis.  Further, you agreed to

assist me with any and all business statements requested.  To date,

I have not received any receipts, checks, etc., which document the

disbursement of my $250,000.  The Internal Revenue Service has

also gotton involved and is demanding proof of the disposition of my

$250,000.  The listing agreement with Lula Morales terminated in year

2008.  The listing agent further indicated to me that the property was

foreclosed upon.  Please get back with me ASAP.  Thank you very kindly.

Sincerely yours,


Eloise K. Hahn

**EXHIBIT H**

ɹll make such offsetting special allocations of LLC income, gain, loss, or deduction
ɛr manner they determine appropriate so that, after such offsetting allocations are
ɹch Member's Capital Account balance is, to the extent possible, equal to the Capital
ɹnt balance such Member would have had if the Regulatory Allocations were not part of
ɹe Regulations and all items were allocated pursuant to Section 7.2(c).

7.3.    *Tax Year and Accounting Matters.* The Fiscal Year of the LLC shall be the
calendar year. The LLC shall adopt such methods of accounting and file its tax returns on the
methods of accounting determined by the Members. The Members shall be responsible for all
accounting matters of the LLC.

7.4.    *Tax Elections.* The Members agree that the LLC shall be taxed as a Partnership
for tax purposes, and the Members shall take any and all action necessary to effectuate
Partnership tax treatment. The Members, in their reasonable discretion, may cause the LLC to
make or revoke all tax elections provided for under the Internal Revenue Code.

7.5.    *Tax Matters Member.*    **WILLIAM R. PARSONS** shall be the "Tax Matters
Member" of the LLC, as that term is used in Subchapter C of Chapter 63 of the Code, and the
Members will take such actions as may be necessary, appropriate, or convenient to effect the
designation of **WILLIAM R. PARSONS** as such Tax Matters Member. The Tax Matters
Member shall have full and unlimited discretion to perform or to fail to perform any actions or to
make any decisions which under the Code may be made by a Tax Matters Member. All costs of
**WILLIAM R. PARSONS** in connection with its duties as "Tax Matters Member," including
reasonable attorneys' fees, shall be the obligation of and shall be paid or reimbursed by the LLC.

## Section 8
## Termination and Dissolution of the LLC

8.1.    *Events of Dissolution.* The LLC shall be dissolved upon the occurrence of any of
the following events:

(a)    The unanimous written consent of the Members;

(b)    The sale, transfer, or assignment of substantially all of the assets of the
LLC;

(c)    (i)    The adjudication of the LLC as insolvent within the meaning of
insolvency in either bankruptcy or equity proceedings; (ii) the filing of an involuntary petition in
bankruptcy against the LLC (which is not dismissed within 90 days); (iii) the filing against the
LLC of a petition for reorganization under the Federal Bankruptcy Code or any state statute
(which is not dismissed within 90 days); (iv) a general assignment by the LLC for the benefit of

15

regs51707

creditors; (v) the voluntary claim (by the LLC) that it is insolvent under any provisions of the Bankruptcy Code (or any state insolvency statutes); or (vi) the appointment for the LLC of a temporary or permanent receiver, trustee, custodian, or sequestrator and such receiver, trustee, custodian, or sequestrator is not dismissed within 90 days; and

      (d)     As otherwise required by law.

     8.2.    *Conclusion of Affairs.* In the event of the dissolution of the LLC for any reason, the Members shall deliver articles of dissolution to the Department of State for filing, and shall proceed promptly to wind up the affairs of and liquidate the assets of the LLC. Except as otherwise provided in these Regulations, the Members shall continue to share distributions and tax allocations during the period of liquidation in the same manner as before the dissolution.

     8.3.    *Liquidating Distributions.* After paying or providing for the payment of all claims, debts or liabilities and obligations of the LLC and all expenses of liquidation, the proceeds of the liquidation and any other assets of the LLC shall be distributed to or for the benefit of the Members in accordance with Section 6.1 of these Regulations.

     8.4.    *Termination.* Upon completion of the liquidation of the LLC and the distribution of all LLC assets, the LLC shall terminate and the Members shall have the authority to execute and record Articles of Dissolution of the LLC, as well as any and all other documents required to effectuate the dissolution and termination of the LLC.

## Section 9
## Transfers of Membership Units

     9.1.    *Restrictions on Transfers.* Membership Units may be Transferred, as defined below, in whole or in part only in accordance with other specific provisions of these Regulations and the following provisions:

      (a)     For purposes of these Regulations, the term "Transfer" or "Transferred" shall mean the sale, assignment, transfer, pledge, encumbrance, or other disposition, by operation of law or otherwise, of Membership Units.

      (b)     Membership Units shall not be Transferred without the following:

         (1)     The full compliance with the terms of this Section 9;

         (2)     The consent of the Member(s) owning the remaining Membership Units; and

16

regs51707

**ADDENDUM**

# Kevin L. Willis
## Attorney at Law
### 2137 S. Euclid Ave., Ste. #3
### Berwyn, Illinois  60402
### (708)484-1000/484-1140 fax

February 6, 2006

Fax: 866-331-3568

Mr. T. Alan Minor

Re: Eloise Hahn – Laredo, TX Quality Inn

Dear Mr. Minor:

As you are aware, I am the attorney for Ms. Hahn. I have discussed the above investment with Ms. Hahn at great length. Ms. Hahn has instructed me to inform you that she is no longer interested in the Laredo, TX property.

Thank you for you consideration.

Yours truly,

Kevin L. Willis
KLW/dkd

| | | | |
|---|---|---|---|
| Eloise Hahn/R5/USEPA/US | To | Dcmmtg@cs.com | |
| 07/25/2007 05:06 PM | cc | | |
| | bcc | | |
| | Subject | Re: Laredo Project | |

Yes, proceed and advise me when I will get the $250,000.  I will send you wiring instructions for UBS not Stifel.
Dcmmtg@cs.com



| | | |
|---|---|---|
| Dcmmtg@cs.com | To | |
| 07/19/2007 07:31 AM | | |
| | Subject | Re: Laredo Project |

Traveling for work, not vacation.  Call me on my cell phone -- 804-677-5923.  We have been offered $1,100,000.00 for the 3 lots in Laredo.  That would pay you $250,000.00 after the land loan is paid.  Do you think we should pursue this option?

Thanks

T. Alan Minor
President
Commercial Services
Diversified Commercial Mortgage
(P) 804-423-6412
(P) 866-562-2147
(F) 866-331-3568

Gmail  Calendar  Documents  Photos  Reader  Web  more ▼    eloisehahn149@gmail.com | Settings | Older version | Help | Sign out

# GMail

Search Mail   Search the Web   Show search options
Create a filter

Compose Mail

Our Clients Need Lawyers - www.LegalMatch.com/Attorneys - Get Legal Cases Emailed Regularly  Fill in a Form. See it Sponsored Link  < | >

Inbox (43)

« Back to Inbox   Archive   Report spam   Delete   Move to ▼   Labels ▼   More actions ▼    « Newer 3 of 77 Older »

Starred ✰

Chats ⚲

Sent Mail

Drafts (1)

All Mail

Spam

Trash

Contacts

– Chat
Search, add, or invite
● Eloise Hahn
Set status here          ▼
● Gustave Hahn-Powell
blpearson
dcmmtg
Eleni Makris
James Lydon
lf1415
nummer99
Southwest Airlines
Southwest Airlines
Tim McNally

Options ▼   Add Contact

– Labels
Edit labels

– Invite a friend
Give Gmail to:

Send Invite  50 left

Preview Invite

## FW Title   Inbox | x

🗔 New window
🖨 Print all
▣ Collapse all
▣ Forward all

Dcmmtg@cs.com to me          show details Mar 24 (2 days ago)   ↩ Reply | ▾

Ellie,

Please handle with discretion as Eric knows nothing about our arrangement or Laredo, he is
the Title Attorney for the lender on Paducah....Thanks

Subj: RE: How are you doing on the Title?
Date: 3/19/2009 5:33:23 PM Eastern Daylight Time
From: eclayman@rbclawyers.com
To: Dcmmtg@cs.com
CC: sweitz43@aol.com
Received from Internet: click here for more information

Mr. Minor,

The title commitment for Paducah will be in by Wednesday of next week  It won't take us but a
day or two to clear this commitment. If you have any questions, please feel free to contact me.
I just got off the phone with our underwriters VP of underwriting and that is a valid timeline

Regards,

Eric Clayman, Esq.

The Law Office of Eric H. Clayman, P.A.

RBC Title & Escrow Services, L.L.P.

8184 Wiles Road

Coral Springs, FL , 33067

Office: (954) 332-2050

Fax: (954) 332-2051

Email: eclayman@rbclawyers.com

↩ Reply   → Forward

Your message has been sent.  Invite Dcmmtg to Gmail

● Eloise Hahn to Dcmmtg          show details 5:05 PM (-1 minutes ago)   ↩ Reply | ▾

Thanks for the update.  Looks like things will begin to gel.  Keep me posted.  Thanks.
- Show quoted text -

↩ Reply   → Forward

Sponsored Links

Closing & Title Software
The Closer's Choice; HUD & Doc
Prep, Escrow Accting,Title, Reports
www.ClosersChoice.com

Lowest Closing Costs
Lowest Costs, Highest Quality
Fastest Closing Times, Nationwide
www.besstitle.com

Title Chicago
Chicago Land Title surveyors
Land Surveyors
plcssurvey.net

Wolpoff Law
I Fixed my Credit Score by Deleting
Wolpoff Abramson Collection Agency.
www.chargeoff.net

SoftPro - Title Software
Closing, Title & Escrow Software
starting at $1295 for ProForm
www.SoftProCorp.com

Law office
Experienced general practice
attorney. Located in Palatine.
www.jameskellydex.com

Hitchcock Evert LLP
Intellectual Property & Technology
Licensing, Litigation, Transactions
www.hitchcockevert.com

Real Estate Attorneys
Real Estate Closings
Representing Sellers and Purchasers
www.randallsegrest.com

More about...
Closing Fees »
Movies Title »
Song Title »
New Jersey LLC »
About these links





**SPACE COAST HOSPITALITY MANAGEMENT SERVICES**

## Property Listing

The following is a list of Properties that are currently being managed by Space Coast Hospitality Management, Services.

### FLORIDA
**Carrie Lee's Coffee & Tea Company**
3550 N. Atlantic Ave.
Cocoa Beach, FL 32931
Phone: 321-323-5000
Fax: 321-783-0980

**La Quinta Inn-Cocoa Beach**
128 rooms
1275 N. Atlantic Ave.
Cocoa Beach, FL 32931
Phone: 321-783-2252
Fax: 321-323-5045

**Wakulla Suites**
121 rooms
3550 N. Atlantic Ave.
Cocoa Beach, FL 32931
Phone: 321-783-2230
Fax: 321-783-0980

### INDIANA
61 rooms
**Sleep Inn-Ft. Wayne**
2881 E. Dupont Rd
Ft Wayne, IN 46825-1668
Phone: 260-490-8989
Fax: 260-490-8848

### MICHIGAN
**Carrie Lee's Coffee & Tea Company**
407 N. State Street
Big Rapids, MI
Phone: 231-796-3411
Fax: 231-796-3446

### NORTH CAROLINA
167 rooms
**Quality Inn & Suites/Best Value Inn**
(currently being renovated)
7067 Albert Pick Rd.
Greensboro, NC 27409
Phone: 336-668-3900
Fax: 336-668-7012

### OHIO
**Holiday Inn Express**
**55 rooms**
**13300 Reynoldsburg-Baltimore Rd.**
Pickerington, OH 43147
Phone: 614-575-9900
Fax: 614-575-9909

**Ramada Plaza**
255 rooms
13,000 sq. foot banquet space
Restaurant & bar
11911 Sheraton Lane
Cincinnati, OH 45246
Phone: 513-671-6600
Fax: 513-671-0507

### NEW YORK
**Best Western/Norstar**
77 rooms
4630 Genesee St.
Buffalo, NY 14225
Phone: 716-631-8966

**Best Western/Crown Inn & Suites**
71 rooms
8210 Park Rd.
Batavia, NY 14020
Phone: 585-344-8882
Fax: 585-344-7187

### PENNSYLVANIA
**Best Western**
58 rooms
79 Old Valley School Rd.
Danville, PA 17821
Phone: 570-275-5750
Fax: 570-275-9310

**TEXAS**
**La Quinta Inn and Suites-New Braunfels**
74 rooms
365 S. Hwy 46
New Braunfels, TX  78130
Phone:  830-627-3333
Fax:  830-627-3336

**Microtel Inn and Suites**
85 rooms
1025 S. Frio St.
San Antonio, TX  78207
Phone:  210-226-8666
Fax:  210-226-4440

**O'Brien Historic Hotel**
39 rooms
116 Navarro St.
San Antonio, TX  78205
Phone:  210-527-1111
Fax:  210-527-1112

# Under construction

**San Antonio, TX**
**La Quinta Inn & Suites**
**91 Rooms**
**Utex rd**

**San Antonio, TX**
**Comfort Suites**
**59 Rooms**
**I-35 North**

**Burnie, TX**
**La Quinta**
**74 rooms**
**281 North**

*800 - 230 - 4134 , Embassy*

# Under Development*

**Chattanooga, TN**
**Cameron Square**
**Riverfront Development**
**Condominium and Embassy Suites**

*NC*

**Laredo, TX**
**Quality Suites**
**85 Rooms** *Apo*
**Airport**

*— Note*

**Lexington, NC**
**La Quinta Inn & Suites**
**80 rooms**
**Childress Vineyards**

*NC*            *Winston Salem*

**Richmond VA** *?*
**La Quinta Inn & Suites**
**84 Rooms**
**Airport**

*Built 2006  68*     *N-pool*
*9040 Pams Av.*
*Completed*

**Evansville, IN**
**The Atrium**
**22 Condominiums**
**7th street**

*NC.*

*1-800 - 753 - 3757, La Quinta..*
*109.  92 rooms*
*—completed*

*completed*
*877 - 424 - 6423 , comfort suites*

*Not Completed.*

*Cracker Barrel*
*I-35    6350 I-35 North*
*210 - 646 - 6600   Not 2*
*210 - 656 - 4600*

***WinPar LLC is the development company
for Bill Parsons**

*Final Analysis*
*San Antonio, TX*
*La Quinta Inn) Suites*
*92 rooms —completed*
*1-800 - 753 - 3757*

*San Antonio, TX*
*Comfort Suites.*
*11526 I-35 North.*
*I-35 North.*
*210 - 656 - 4600*
*Completed*

QUESTIONS? CALL 1-800-TRIBUNE

# Chicago Tribune

THURSDAY, OCTOBER 24, 2013

BREAKING NEWS AT CHICAGOTRIBUNE.COM



## SOUTHERN SURPRISES
10 south suburban restaurants that satisfy

**Dining**



## After 7 years, fraud victims await justice

Bilked investors see little relief, but con man free after seven years

BY JASON MEISNER
Tribune reporter

learned it was a scam, her money was gone. Now, more than seven years after federal authorities charged the con artist who ripped off her and thousands of others across the country, Fraley survives on Social Security and her late husband's modest pension. She feels she's still waiting for justice to be

Myra Jo Fraley was looking for a little cushion for retirement when she invested in what seemed like a



# Frustrated fraud victims not repaid

Continued from *Page 1*

an estimated $340 million.

After Kelly's arrest, authorities embarked on an extraordinary effort to repay the mostly elderly victims as much money as possible by selling off tens of millions of dollars worth of real estate, a corporate plane, luxury cars, nightclubs and other holdings in his vast portfolio that stretched from the trendiest sections of Mexico to the beaches of Panama City.

But what investigators found was a tangle of properties in various stages of completion, often encumbered by foreign laws and devalued by the worldwide recession that devastated the luxury travel and real estate markets. Many have wound up being unloaded for far less than initially expected — at a painstakingly slow pace.

Earlier this month, with attorney and consulting fees stemming from the sales continuing to mount, victims were notified the process could last well into next year and that they will likely get less than one-fifth of their investments back.

Adding to investors' frustration is what some view as lenient treatment doled out to Kelly, 64, who is sick with



**AVANTI PHOTO**

... and CEO of Avanti Motor Corp. He was later convicted of scamming thousands of victims in a vast real estate Ponzi sche...

... terminal colon

DEAL OF THE DAY
**39.99**
12-PC. SET
Reg. 119.99

KEURIG ELITE
Our lowest price of the season.
Reg. 174.99. Single-serve brewer.

**99.99**

60% + 10% OFF
CHARTER CLUB

11999-12999

...milar truck hauling

'Unconventional fraud'

ing already spent six years in federal custody awaiting trial. U.S. District Judge Ronald Guzman allowed him to post bond on the remaining counts and live temporarily in his wife's Indiana home while he undergoes chemotherapy.

Prosecutors say the effort to recoup the victims' money has been unprecedented and that even 20 percent would be far beyond the typical amount recovered in a fraud case. And the plea deal was the only way to ensure restitution for victims given Kelly's ill health.

Still, while all this has unfolded, the patience of many of Kelly's victims has worn thin. A number of investors have died waiting for a resolution, leaving heirs to take up their cause. Others have written to the court alleging that those in charge of selling Kelly's assets and cutting checks to victims have dragged their feet to allow huge fees to pile up. Some believe Kelly should remain behind bars in spite of his illness.

"I for one just wish they would sell all his holdings for the best price and send us as much as they can before we all die," Fraley said in a handwritten letter to the court earlier this year. "This has gone on long enough and I do not believe that he deserves one iota of consideration."

a few months, the bond was extended indefinitely over the summer. At a hearing this month, prosecutors told the judge they were close to resolving the case, indicating another guilty plea to additional charges could be in the works.

Initially scheduled to last

winning the approval of the local governor and working with well-known developers and architects. To facilitate construction, Kelly even bought his own nearby quarry to supply the massive amounts of landfill needed to fill in swampland.

But like so many of Kelly's properties, Puerto Cancun was poorly managed and marred by sloppy record keeping, making it difficult for authorities to market once they gained control. It operated in a country where real estate deals are the purview of

downtown Panama City.

Despite its prime location, the luxury hotel is beset with massive liens and tax issues that are a huge red flag to investors.

Recently, an offer for the Panama hotel came in for $4 million, but after all the encumbrances are resolved and legal fees are paid, costs are paid, less than $400,000 is expected to be left to put into the fund for Kelly's victims.

"We are extricating ourselves as best we can from it," Douglas Doetsch, the lawyer in charge, of the

tims who had to be vetted first to make sure they were legitimately owed money and how much.

Doetsch told the Tribune he sympathizes with the victims' frustrations and is committed to finishing the sell-off of assets as quickly as possible.

"I want to put myself out of business," he said.

Meanwhile, Guzman has agreed to raise attorneys fees for Doetsch's law firm, Mayer Brown, to $538 an hour from $465 an hour for its work. Another law firm has a team of attorneys and

> ## "This has gone on long enough and I do not believe that he deserves one iota of consideration."
>
> — Myra Jo Fraley, about restitution for money scammed by Michael Kelly, who got out of prison early because he is ill



CHRIS TODD/PHOTO FOR THE TRIBUNE

Wayne and Winky Touchstone, who live near Laurel, Miss., say they lost $460,000, most of their retirement savings, in an investment fraud scheme involving Michael Kelly. Efforts to sell Kelly's property and repay victims have been difficult.

from Laurel, Miss., who invested in a time share in the late 1990s at the recommendation of his financial planner and lost more than $460,000 of his retirement savings to Kelly's scheme. He said he and his wife had planned to travel and enjoy a hard-earned early retirement. Now he keeps tabs on Kelly's case via the website set up for victims as well as mailings from the court. Every time he sees more cash going to lawyers, his blood boils.

"They show you there is money pending, then it dis-

Since his release from the Metropolitan Correctional Center in December, Kelly has been staying in a modest, ranch-style house off a rural road near Potato Creek State Park in northern Indiana, not far from his hometown of Lakeville, where he began building his investment empire two decades ago.

On a recent afternoon, a frail-looking Kelly answered the door for a Tribune reporter but declined to comment. Half-depleted balloons from his grandson's birthday party still hung in the dining room.

As a younger man, Kelly had a passion for the auto industry and made a name for himself in the 1980s by rescuing from bankruptcy the famed Avanti Motor Corp., the heir of the Studebaker line.

He updated the company's iconic sedan and opened a new assembly line in Ohio, but the operation never fully got off the ground. Later he moved Avanti to Mexico, funding it in part with ill-gotten gains from its real estate scheme, prosecutors allege.

But it was as a salesman that Kelly made his mark. To finance his developments, he created a scheme of "universal leases," paying exorbitant commissions to a nationwide network of brokers who conned investors into buying 25-year leases on a hotel room for one week each year. Investors could use the room for themselves, lease it to someone else or use another company — secretly controlled by Kelly — to lease the rooms at guaranteed annual returns as high as 11 percent. Virtually every investor chose the third option.

For most of the scheme, payouts were fueled by

leave nothing to salvage after their inevitable collapse. But after Kelly's scam imploded, authorities found — with Kelly's cooperation — a horde of real estate and other assets, from hotels and massive residential developments in the midst of construction.

"In nearly four decades of practicing (law), I have never seen a scheme to defraud where the defendant actually invested hundreds of millions into valuable property," said Kelly's attorney, Jeffrey Steinback.

"In his mind, there was an exit strategy where he could possibly settle with everyone and get out. ... It was a very unconventional fraud."

The crown jewel of Kelly's portfolio was Puerto Cancun, a sumptuous, 800-acre development on the ocean featuring luxury homes set on private canals, a golf resort, a hotel, a marina and condominiums. After others had failed, Kelly took over the project more than a decade ago, greased with bribes, Kelly's arrest had also made news in Mexico, scaring many potential buyers away. Even weather played a factor. Last month, the judge approved orders to sell two of Kelly's other assets.

Investors were still skittish over the possibility of another hurricane after Wilma devastated Cancun in 2005.

When a buyer finally came forward in 2011, victims were notified that a sale was imminent and given a chance to voice their approval or not. One victim, Charles Thompson, sent an email imploring authorities to "get this show on the road."

"My GOD how long is this gonna take????" he wrote.

Puerto Cancun was finally sold last year for about $50 million after expenses, but other properties have been even more difficult to unload. On a recent morning at the Dirksen U.S. Courthouse in Chicago, attorneys updated the judge on the latest Kelly asset to hit the blocks — a 137-room hotel just off the beach in

### Lawyer fees rise, his blood boils

Four years have passed since Guzman appointed Doetsch — known in legal circles as a guru of Latin American corporate deals — as "special master" of the Kelly sales. Last year, $50 million was disbursed to thousands of eligible victims.

the sale.

One by one, agreements are being reached for consultants, financial advisers and contractors paid for work done in Mexico and Panama.

For just the first eight months of 2012, Doetsch listed more than $2.7 million in a court filing for legal fees and administrative expenses.

When he signed the order to raise the legal fees in August, Guzman said he was aware the costs were high but that the government does not have the resources or the know-how to investigate and conduct intricate financial dealings in foreign countries.

"Those who do, charge accordingly," the judge noted.

That has infuriated some victims who believe the delays are intentional to keep the cash rolling in to attorneys and their cronies while victims sit and wait for their money," said Wayne Touchstone, a retired oil company laborer

cutting checks to victims. And there have been myriad victims are often similar Christmas 2006 while being treated for heart trouble at a clinic in Jacksonville, Fla.

that" Touchstone said.

The stories told by [FBI] agents shortly before Christmas 2006 while being treated for heart trouble at a clinic in Jacksonville, Fla.

Many came from modest backgrounds. They were sewer installers, factory workers, teachers and state employees. They lost money they had worked all their lives to save and have been forced to give up long-laid plans for retirement.

The next year, more than a dozen brokers used by Kelly to sell his leases were sued for fraud for allegedly collecting huge, undisclosed commissions totaling more than $72 million.

Others, like Alice Kopacek of tiny Olivia, Minn., have been left in even more dire straits. "We have a two-month (overdue) gas bill, a two-month telephone bill, a two-month television bill, and everything is going to get shut off here," Kopacek, 75, wrote to the court in 2011. "Is there any way we can find out when we'll be getting some money?"

The victims who spoke to the Tribune said they still have a hard time believing they were duped. Fraley, the Tennessee great-grandmother, said she was particularly embarrassed given her long career in finance. She was well aware of schemes targeting the elderly, but when her relative came to her with the pitch from a Kelly associate, it sounded plausible.

Her husband, Ken, told the Tribune that debt collectors have been hounding him after a recent surgery left him with a mountain of debt.

"I went through all of it, and it seemed like a good deal," Fraley said. "I wouldn't have done it if it didn't look right."

"We were really relying on that money to pay bills," he said.

jmeisner@tribune.com