UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN RE: THOMAS ALAN MINOR          BKN:3:10-BK-30161-DOT

and

RENEE SCOTT MINOR

ELOISE K. HAHN,  MANAGER
dba BURKE FINANCIAL LLC

and

MEMBER OF WIN PAR
HOSPITALITY LAREDO LLC          Adversary Proceeding
                                Counter Claim Complaint to::

        Plaintiff,                  APN: 3:13-AP-03152-DOT

            v.

THOMAS ALAN MINOR

and

JASON M.KRUMBEIN, ESQ.

        Defendants


ADVERSARY PROCEEDING COUNTER CLAIM COMPLAINT

Comes now plaintiff, pro se, who files this adversary proceeding

counter claim complaint against the defendants and states as follows:


PRELIMINARY STATEMENT


1.      This is an action by a former partnership member

and creditor of Win Par Hospitality Laredo, LLC,

namely Burke Financial LLC (Hahn), who was swindled

out of $250,000 in a  business skam organized by

*the other two members, being Thomas A. Minor*

(Minor) and William R. Parsons (Parsons).  Hahn

seeks actual, statutory, and punitive damages,

attorney fees and costs and for declaratory

and injunctive relief from Parsons and Minor for fraud.

Further, Hahn seeks damages from Minor and

Krumbein for harrassment, including damages

from Minor for violations of the Bankruptcy Code,

11 U.S.C. Section 523, which precludes him from

the discharge protection under Section 524 of the

bankruptcy code.

JURISDICTION, VENUE and CORE PROCEEDINGS

2.    This court has Federal  jurisdiction, for Minor

pursuant to 11 U.S.C. Sections 523 and 524 of

the bankruptcy code.

3.    This court is the proper venue for Minor's former

bankruptcy proceeding since he filed his chapter 7

petition in  this court.  The majority of the actions

claimed, however, occurred in Brevard County, Florida.

4.    The FL state court action has personal jurisdiction over

Parsons since he resides in Brevard County, FL and
he regularly transacts business in Florida.

5. The FL state court action has personal jurisdiction over
the entity, Win Par Hospitality Laredo, LLC since the
entity was incorporated and dissolved in the State of FL.

6. The State of Nevada has personal jurisidiction over
Burke Financial, LLC since the entity was incorporated
in the State of Nevada,

## PARTIES

7. Hahn is the manager of Burke Financial, LLC.

8. Burke Financial, LLC was a member of the entity,
Win Par Hospitality Laredo, LLC, a former Florida
limited liability company.

9. Upon information and belief, Minor is a person who
owes money to Hahn.

10. Upon information and belief, Krumbein, is a lawyer
for Minor who represents Minor in a former bankruptcy
matter filed in the Commonwealth of Virginia and
an adversary proceeding he has filed against Hahn
and her attorney, Sverbilow (Sverbilow).

## FACTS

11. Minor filed a Chapter 7 Bankruptcy proceeding on

January 11, 2010.  Minor did not disclose the debt due

and owing to Hahn and/or Burke Financial LLC in the

amount of $250,000, who were members of Win Par

Hospitality Laredo, LLC, nor did he disclose his

partnership interest to Win Par Hospitality

Laredo LLC , under question 18 of his chapter 7 petition.

12..   Minor purchased Lots 11 and 12 from Win Par

Hospitality Laredo,  LLC on May 31, 2007, copies of

the title records are hereto attached in Exhibit A and B.

13.   Minor and  Parsons used $149,000 of Hahn 's partnership

capital  to pay off the remaining note balance with Laredo

National Bank on September 30, 2007,  as shown on

Exhibit C..  Parsons and Minor failed to notify Hahn of

the transfer or write Hahn a check for the

transfer in violation of Section 9.1, 9.3, and 9.4 of the

operating  agreement, a copy of which is hereto attached in

Exhibit D.  Specifically, Minor and Parson did not place

cash equal to the purchase price for $149,000 in

escrow for the seller, Hahn.  Instead Minor and Parson

advised Hahn that they were reducing her LLC

membership units from 18.2 to 9.9 so that Hahn

would not need to be on the land loan with them

for purchasing another lot for the LLC.  Minor and

Parson did not advise Hahn that they were purchasing

outright the LLC property, being lots 11 and 12 nor
did they disclose to her that  they had planned to use
her capital to pay off a mortgage note with Laredo
National Bank for $149,0000.  They did so willfully
since they knew thetwo lots had appreciated
considerably enabling them to finance and refinance
the lots with considerable lines of credit for their
benefit only.  Essentially, Minor and Parson failed to
pay Hahn $149,000 for their purchase of the LLC lots.
Instead they reduced her membership interests in the
LLC and used her money as collaterol to purchase the
third lot  so that they could refinance the two paid
lots and receive considerable cash distributions
from the lots' equity line of credit.  Accordingly,
Hahn's money was part of the land loan and her
membership interest should not have been reduced
from 18.2 to 9.9, particularly since Minor and Parson
were given mortgage proceeds from the LLC bank
account in 2007.  Further, Minor and Parsons
had received considerable lines of credit from the
refinancing.  There should have been no reason to
default on the mortgage notes after they took all
the equity out of the LLC property.  Additionally,
Minor and Parsons failed to inform Hahn that the

transfer of her membership units of 18.2 - 9.9 = 8.3 units would result in termination of the LLC for federal income tax purposes.

14. Minor purchased another lot, namely lot 13 on May 31, 2007, for $988,000, from another party as documented in Exhibit E, a copy of which is hereto attached.

15.. Minor failed to disclose his partnership interests in the entity, Win Par Hospitality Laredo, LLC, on question 18 of his chapter 7 petition for the period of 2005 through 2009, including other partner-ship interests he may have disclosed on his financial statement to Laredo National Bank in 2005 and 2007. Accordingly, Minor has violated Section 523 of the bankruptcy code and is precluded from chapter 7 protection pursuant to Section 524 of the bankruptcy code. Lists of members for the entity, Win Par Hospitality Laredo, LLC is hereto attached in Exhibit F.

16. Hahn was not notified of Minor's chapter 7 bankruptcy proceeding in 2010 by this court. Had Hahn been notified she would have objected to the discharge of debt in the amount of $250,000 due to fraud.

17.    A Chapter 7 discharge was entered on June 12, 2010,

and Minor's bankruptcy was closed shortly thereafter.

18.    In January of 2011, Hahn sent Minor a demand letter

for payment of $250,000 as outlined in a promissary

note he had jointly executed with William Parsons on

September 17, 2009, a copy of which is hereto

attached in Exhibit G.

19.    In 2012, Hahn contacted Minor with respect to the

payment of the $250,000. Minor advised Hahn

that he was not on speaking terms with Parsons and

that he filed a personal bankruptcy. Minor also advised

Hahn that the LLC folded.  Further, Minor advised Hahn

to report her loss for $250,000 without providing any

financial documentation to support his bankruptcy claim,

or any record documentation of what had transpired

with Hahn's capital contribution to the LLC from 2006

to 2012.  Essentially, Minor and Parsons had willfully

violated the rules and regulations contained in the

operating agreement for Win Par Hospitality Laredo,

LLC, under Section 8 , a copy of which is

hereto attached in Exhibit  H.  Specifically, Parsons

and Minor failed to disclose to Hahn that they had

dissolved the LLC entity on September 25, 2009,

after they had provided her a promissary note for

$250,000 on September 17, 2009.  Minor and Parson

*dissolved the LLC entity even though there was no*

involuntary petition in bankruptcy against the LLC

nor was their a filing against the LLC for reorganization.

Minor and Parson also violated Section 6.2 of the

operating agreement in that they failed to pay Hahn

her capital contribution of $250,000 in first order of

priority.  Instead Hahn was second or third order of

priority since Parsons and Minor used her remaining

capital contribution of $71,000 to pay off notes from

other creditors of the LLC in 2008. They did so

willfully to conceal the equity they received from the

lots in any mortgage agreement executed by them

for the period May 2007 through February 3, 2009,

specifically mortgage agreements on May 31, 2007,

and August 1, 2008, copies of which are hereto

attached in  Exhibits A, B, and E.  Parsons and

Minor have also failed in providing Hahn any alleged

foreclosure documentation of the lots to date, including

short sales they may have negotiated.  Apparently,

Parsons and Minor have denied Hahn these documents to

conceal the equity lines of cash they received from

 financing and refinancing the three lots for the period

May of 2007 through February 3, 2009, specifically

they refinanced the three lots to a total mortgage amount

of $2,229,000 on August 1, 2008, which attributed to

a short sales transaction of the lots on February 3, 2009,

exceeding $2,400,000. It is Hahn's impression that

Parsons and Minor have concealed this information

since they had agreed to pay her $250,000 at the time

the lots were sold, so $(0.099)(\$2,400,000) = \$237,600$

plus interest or $(.182)(\$2,400,000) = \$436,800$ plus

interest. They have done so willfully.

20. That Hahn had no recourse but to file a complaint in

Brevard County, FL requesting the financial records

of the LLC and demanding payment of the $250,000.

In May of 2012 Parsons provided Hahn the financial

documentation for the LLC. Unfortunately, Hahn

was no longer able to report the partnership losses on

her tax returns since she would have had to report

the losses for 2007 and 2008 within three years

from the date the loss occurred or April 15 of 2011

and 2012, respectively. Hahn has documented a

total partnership loss of $250,000 on her amended

2009 tax return dated April 15, 2013, however, she

has not exercised the loss to offset any income to date

due to negative cash flow and because she holds

a promissary note for $250,000, and the U. S. Treasury

has advised her that the parties, Parson and Minor, promised to pay her back the $250,000. Parsons failed in disclosing to the U.S. Treasury Hahn's membership interests to the entity, Win Par Hospitality Laredo, LLC , however, Hahn was advised by her accountant that she did hold an equitable partnership interest to the LLC and that the partnership interest was not worthless In other words the LLC did not file bankruptcy, only Minor filed a chapter 7 personal bankruptcy with his spouse. Parsons and Minor also failed to disclose to Hahn the lot sale transaction for over $2,400,000 on February 3, 2009, including their failure to write Hahn a check for $250,000 as agreed. They have done so willfully.

21.. That Hahn had filed a prior complaint against both Minor and Parsons. In April of 2008 Parson and Minor agreed to sell the LLC business property in Texas and return $250,000 to Hahn.

22.. That Parsons and Minors' joint counsel in Brevard County failed to respond to the complaint Hahn had filed. Accordingly, Hahn filed a Motion for Default.

23. That Florida counsel for Parsons and Minor filed

a *Motion to Dismiss Hahn's Complaint.*

24.    That Hahn had no recourse but to retain counsel in

Florida for representation of the matter in a hearing

conducted in January of 2013.

25.    That the case in Florida was subsequently scheduled

for trial in September of 2013.

26..    That Attorney Sverbilow (Sverbilow)  was notified of

Minor's chapter 7 proceeding on July 17, 2013.  After

review of the bankruptcy petition, Sverbilow,

notified Hahn that Minor did not disclose his debt

to Hahn for $250,000 on his chapter 7 petition.

27.    That on August 2, 2013, Minor retained

Krumbein to enjoin Hahn from proceeding

with the trial in Brevard County, Florida.  Hahn's

counsel, Sverbilow, was also served an

injunction notice.

28.    That  Krumbein also served Hahn and

Sverbilow an adversary proceeding on the matter.

29.    That Krumbein telephonically contacted

Sverbilow threatening to sue Hahn and him

for substantial sums of money, particulary he

told Sverbilow, "She is a wealthy lady.  I plan

to sue you both for $25,0000 or more".

That Hahn was notified of Krumbein's threat

on October 23, 2013. For the record, Hahn

may have been wealthy prior to being skammed

out of her $250,000 life savings. That is no

longer the case and Hahn requests this court to

enjoin Krumbein from contacting Sverbilow and/or

herself with anymore threatening remarks since

Sverbilow dismissed Minor from the FL state court

action, however, Hahn pursues this matter in VA

due to fraud.

30.    That  Hahn commenced action in seeking counsel in

Virginia.  Hahn was advised by counsel that Minor

had failed to disclose the debt to Hahn for $250,000,

including his failure to disclose his former partnership

interest in the entity, Win Par Hospitality Laredo, LLC.

Accordingly, Minor was in violation of Section 523

of the bankruptcy code and was precluded from

chapter 7 protection pursuant to Section 524 of the

bankruptcy code.

31.    That Hahn's was advised that Minor's debt to

Hahn for $250,000 may not be dischargeable based

on fraud, specifically he concealed the debt to

Hahn in the amount of $250,000 since he wanted

to conceal his partnership interests in Win Par

Hospitality Laredo, LLC to extinguish any tax liabilities

which may have been incurred by listing the debt

on his chapter 7 petition and/or the equity distribution

he received when he refinanced the lots in Laredo, TX

on August 1, 2008, which were subsequently sold

in February of 2009 for over $2,400,000.

32.    That  Krumbein has argued Minor is entitled

to the discharge since the debt was a pre-debt

which was incurred prior to the bankruptcy

proceeding.  Hahn argues that the debt is not

related to Minor's bankruptcy since the lots were

sold for over $2,400,000, which exceeded the

mortgage note amounts of $743,000 per lot.

Accordingly, there was no outstanding debt

due to the lenders and the debt to Hahn should

have been paid at the time Minor and Parson

purchased two of the lots from Win Par Hospitality

Laredo LLC in 2007 and used her capital of

$149,000 to purchase the lots without writing

her a check, including when they refinanced all the

LLC lots on August 1, 2008 for over $2,100,000

or when the lots were sold on February 3, 2009,

for over $2,400,000.  Apparently the equity of the

LLC lots exceeded $1,400,000 and there was plenty

of money to pay Hahn the $250,000, as agreed.

33.   That Hahn has not been provided with the list of

creditors on Minor's chapter 7 proceeding,

except he reported a debt to his mortgage company,

*Diversified Commercial Mortgage, in the amount*

of $783,000.  That mortgage debt is not related

to the LLC sales transaction since all notes were

paid off when Compass Bank purchased the LLC

lots on February 3, 2009.  Further, *Minor and Krumbein*

*have alleged Hahn is a  creditor and not a member*

to the entity, Win ParHospitality Laredo, LLC.  They

have done so willfully since Krumbein and Minor

know Burke Financial, LLC is on the brink of a

chapter 7 bankruptcy due to Minor and Parsons'

failure to pay back Burke the $250,000 as outlined

in the settlement agreement.   Apparently, Minor and

Krumbein feel they get a better deal to sue Hahn

personally instead of Burke Financial LLC which was

the member of the LLC so that they can collect

*money from Hahn's social security disability check.*

34.   That Sverbilow advised Hahn that the debt could

not be discharged if fraud had occurred.

35.   That Hahn has begun investigation of the matter.

The title reports of the LLC document Minor

purchasing the LLC property in May of 2007,

however, Minor failed to write Hahn a check for

the sales transaction, nor did he inform her that he

had used her capital in the amount $149,000 to buy

the LLC property, namely lots 11 and 12.

36..   That Hahn was further informed from her title search

that Minor had purchased a third lot for $988,000

and that he had financed the property for $743,000.

37.   That Hahn was also informed  that Minor and Parson

had refinanced the LLC property for $1,486,000 on

August 1, 2008, being Lots 11 and 12.

38.   That Minor and Parson purchased the LLC property

a year earlier for $328,000, almost a million dollars

less than the refinanced amount, and failed to

provide Hahn a check for the sales transaction.

39.   That Hahn's title searches further document

all three lots being sold on February 3, 2009,

for $802,000 a lot or a total sales transaction of

over $2,400,000

## CLAIM FOR RELIEF

1.   Hahn restates and realleges paragraphs 1-39.

2.   Minor has willfully violated 11 U.S.C. Section 523 in

that he concelaed his debt to Hahn for $250,000 and

his former partnership interests with the entity,

Win Par Hospitality Laredo, LLC., in efforts to

conceal any equity he received from refinancing

the lots on August 1, 2008, and/or the equity received

from the LLC lot sales for over $2,400,000 on

February 3, 2009.

3.    That Minor has caused injury in fact, by causing among

other effects, attorney and litigation fees in connection with

litigating the FL state court lawsuit and the Virginia

bankruptcy matter, mental and emotional distress,

*damage to Hahn and Burke's credit reputation,*

and damage to Hahn's physical well-being, specifically:

making Hahn a victim of a business scam where she

was robbed of her life savings of $250,000 and

victimizing Hahn with relentless threats and harassment

in efforts to be dismissed from his financial obligations

to her, including Minor and Krumbeins' intentions to

rob Hahn again alleging Hahn and Sverbilow violated

Section 524 of the bankruptcy code.  Minor violated

Section 523 of the bankruptcy code on his chapter 7

petition and is precluded from chapter 7 protection

pursuant to Section 524 of the bankruptcy code.

Hahn and Sverbilow were not informed of Minor's

bankruptcy until July 17, 2013.  Hahn has not been

provided the list of creditors on Minor's chapter 7

petition and requests this court to reopen

the bankruptcy proceeding at this time to determine
if the debt to Hahn and/or Burke Financial, LLC in
the amount of $250,000 can be discharged. In other
words Minor can be excused for violating Section 523
of the bankruptcy code and whether or not his former
actions were fraudulent while acting as a managing
member to Win Par Hospitality Laredo, LLC. The title
reports document no debt due and owing to the lenders
of the lots since they were sold for more money than the
borrowed note amounts and there was plenty of
equity to pay Hahn the debt due and owing for $250,000,
specifically since the lots had appreciated considerably
fromn the time of purchase in 2005. Apparently, Minor's
bankruptcy proceedings are related to another business
venture which occurred after the LLC lot sales on
February 3, 2009. Hahn cannot be responsible for
Minor's misfortune in other business ventures that
failed after business was transacted with Win Par
Hospitality Laredo LLC.  Minor and Parson both knew
they were responsible to pay Hahn the $250,000 debt
at the time the LLC lots sold. They did so willfully.
Hahn should not be denied payment of the debt if
Parsons and Minor used her capital in another business
venture  that tanked.  Minor and Parson were not

authorized to use Hahn's money for any other

transactions other than the entity, Win Par Hospitality

Laredo, LLC.   Hahn and Sverbilow cannot be

responsible for Minor's violations of Section 523 of the

bankruptcy code, nor his violations of the terms and

conditions set forth in the operating agreement for

Win Par Hospitality Laredo, LLC.

It is much the same that a criminal party not be charged

with fraud for skamming the victim out of their life savings

and be allowed to continue harassing the victim with threats

to rob her again for rightfully seeking justice in the collection

of a debt rightfully hers.  The damage is done and the

melicous conduct of the greedy defendants continue with

relentless illegal tactics to rob her again and again with

their adversary proceeding claims for an alleged violation

of Section 524 of the bankruptcy code.  On the contrary,

the con artist's profit taking practices in acquiring over a

million dollars from the victim's capital contributions of

$250,000 must be carefully considered before any

sanctions are imposed to Hahn and Sverbilow.

Minor's actions will set a precedence for all debtors to

follow suit in seeking unjust enrichment from robbing

victims out of their life savings and then discharging the

debt owed to the victims in a bankruptcy proceeding

that fails to disclose the debts owed to the victims and

their former partnership interests which enabled the

debtor the unjust enrichment. Hahn continues

to suffer from Minor's malicious conduct in that he has

opposed her right to happiness since his actions have

been deliberate locking Hahn's life in misfortune. Minor

continues to put the weight of his misfortune onto Hahn

in hopes to extinguish his financial obligations to

Hahn for $250,000. Minor's malicious conduct has

continued in efforts to extract more money from Hahn ,

which Hahn does not have, attributing to painful failures to

Hahn's life. Minor's malicious efforts have attributed to

so much negativity that Hahn has stopped believing in

herself which has inverted her destiny for a better life

free from pain and agony from harrassment and threats.

Minor's conduct has attributed to day to day unhappiness

where Hahn needs to pay attention to every expense

while Minor can afford to treat himself and his family

whatever way they like at Hahn's expense. Minor

continues to live off the luck Hahn has been deprived of.

Minor's actions have attributed to extreme anxiety,

loss of wages, and endless litigation expenditures

in his efforts to conceal the refinancing of the lots for

over $2,000,000 dollars.  The defendants, Minor and

Krumbein, have done so willfully.  They continue to

point a gun to Hahn's head in efforts to sanction any

and all property fromHahn to pacify their greed.  It is

much the same that a robber be allowed to continue

robbing the victim of any and everything they can seize

from their skams.

Hahn enters her Adversary Pleading to this matter at

this time and requests this court to reopen Minor's

bankruptcy to determine if the debt  to Hahn is

dischargeable in the amount of $250,000, i.e,

that Minor did not commit fraud when he purchased

the lots from the LLC and failed to write Hahn a

check for her capital contribution, including whether

or not Minor committed fraud when he refinanced

the lots for over two million dollars on August 1, 2008,

and/or sold them for over $2,400,000 on

 February 3, 2009, and failed to reimburse Hahn

her capital contribution of $250,000.  Hahn further

requests relief from this court to enjoin Krumbein

from harrasment and threats in efforts to rob her

for more money which Burke Financial LLC

does not have.

*Eloise K Hahn*

ELOISE K. HAHN
Manager of Burke Financial LLC
Member of Winpar Hospitality Laredo LLC
313 East 1300 North
Chesterton, IN  46304


I HEREBY CERTIFY that a true and correct copy of the foregoing

has been sent via ~~priority U.S.~~ *UPS* Mail to Howard Sverbilow, Esquire, 190

Fortenberry Road, Suite 107, Merritt Island, Florida  32952-3401, Jason

M. Krumbein, Esquire, 5310 Market Road, Suite 102, Richmond, VA

23230,  Cindy Baumgartner, Deputy Clerk of the Court, U.S.

Bankruptcy Court, 701 E. Broad St., Suite 4000, Richmond, VA  23219,

Roy Terry, Esquire, Sands Anderson, P.O. Box 1998, Richmond, VA

23218-1998,  and Thomas A. Minor, 11603 Hardwood Drive, Richmond,

VA23114 on November 16, 2013.

*Eloise K Hahn*

**EXHIBIT A**

10/21/13     https://mail-attachment.googleusercontent.com/attachment/u/0/?ui=2&ik=6b7184e650&view=att&th=141cd08818e14dc9&attid=0..1&disp=inline&safe=1&zw...

## Property Detail Report

**For Property Located At :**
**6427 POLARIS DR, LAREDO, TX 78041**



**U.S. TITLE RECORDS**
PROPERTY & TITLE INFORMATION

### Owner Information

| | |
|---|---|
| Owner Name: | NORTHPOINT PARK LTD |
| Mailing Address: | 517 SHILOH DR #1, LAREDO TX 78045-6722 C076 |
| Vesting Codes: | // CO |

### Location Information

| | | | |
|---|---|---|---|
| Legal Description: | JACAMAN RANCH, BLOCK 2, LOT 11, UNIT 8 | | |
| County: | WEBB, TX | APN: | 947-46002-110 |
| Census Tract / Block: | 16.02 / 2 | Alternate APN: | 319083 |
| Township-Range-Sect: | | Subdivision: | JACAMAN RANCH |
| Legal Book/Page: | | Map Reference: | / |
| Legal Lot: | 11 | Tract #: | |
| Legal Block: | 2 | School District: | S7 |
| Market Area: | | School District Name: | UNITED ISD |
| Neighbor Code: | CD94 | Munic/Township: | LAREDO |

### Owner Transfer Information

| | | | |
|---|---|---|---|
| Recording/Sale Date: | / | Deed Type: | |
| Sale Price: | | 1st Mtg Document #: | |
| Document #: | | | |

### Last Market Sale Information

| | | | |
|---|---|---|---|
| Recording/Sale Date: | 03/14/2011 / 03/10/2011 | 1st Mtg Amount/Type: | $479,750 / CONV |
| Sale Price: | $599,687 | 1st Mtg Int. Rate/Type: | / |
| Sale Type: | ESTIMATED | 1st Mtg Document #: | 3061-681 |
| Document #: | 3061-676 | 2nd Mtg Amount/Type: | / |
| Deed Type: | SPECIAL WARRANTY DEED | 2nd Mtg Int. Rate/Type: | / |
| Transfer Document #: | | Price Per SqFt: | |
| New Construction: | | Multi/Split Sale: | MULTI |
| Title Company: | NEEL TITLE CORP | | |
| Lender: | FALCON INTL BK | | |
| Seller Name: | COMPASS BK | | |

### Prior Sale Information

| | | | |
|---|---|---|---|
| Prior Rec/Sale Date: | 06/04/2007 / 05/29/2007 | Prior Lender: | |
| Prior Sale Price: | | Prior 1st Mtg Amt/Type: | / |
| Prior Doc Number: | 2370-115 | Prior 1st Mtg Rate/Type: | / |
| Prior Deed Type: | WARRANTY DEED | | |

### Property Characteristics

| | | | | | |
|---|---|---|---|---|---|
| Year Built / Eff: | / | Total Rooms/Offices | | Garage Area: | |
| Gross Area: | | Total Restrooms: | | Garage Capacity: | |
| Building Area: | | Roof Type: | | Parking Spaces: | |
| Tot Adj Area: | | Roof Material: | | Heat Type: | |
| Above Grade: | | Construction: | | Air Cond: | |
| # of Stories: | | Foundation: | | Pool: | |
| Other Improvements: | | Exterior wall: | | Quality: | |
| | | Basement Area: | | Condition: | |

### Site Information

https://mail-attachment.googleusercontent.com/attachment/u/0/?ui=2&ik=6b7184e650&view=att&th=141cd08818e14dc9&attid=0..1&disp=inline&safe=1&zw&sadu...     1/3

10/21/13    https://mail-attachment.googleusercontent.com/attachment/u/0/?ui=2&ik=6b7184e650&view=att&th=141cd08818e14dc9&attid=0.1&disp=inline&safe=1&zw...

| Zoning: | B-4 | Acres: | 0.67 | County Use: | |
| Lot Area: | 29,185 | Lot Width/Depth: | x | State Use: | VACNT-PLATTED-LOT-COMM (C2) |
| Land Use: | COMMERCIAL LOT | Commercial Units: | | Water Type: | |
| Site Influence: | | Sewer Type: | | Building Class: | |

**Tax Information**

| Total Value: | $131,330 | Assessed Year: | 2013 | Property Tax: | $3,277.27 |
| Land Value: | $131,330 | Improved %: | | Tax Area: | G3 |
| Improvement Value: | | Tax Year: | 2013 | Tax Exemption: | |
| Total Taxable Value: | | | | | |

**Street Map Plus Report**
For Property
Located At



# U.S. TITLE RECORDS
## PROPERTY & TITLE INFORMATION

### 6427 POLARIS DR, LAREDO, TX 78041

View Interactive Map

**Transaction History Report**
For Property
Located At

# U.S. TITLE RECORDS
## PROPERTY & TITLE INFORMATION

### 6427 POLARIS DR, LAREDO, TX 78041

**TRANSACTION HISTORY**

History Record #:  1
*Sale:*

| Sale Recording Date: | 03/14/2011 | Sale Price: | $599,688 |
| Sale Date: | 03/10/2011 | Sale Price Type: | **ESTIMATED** |
| Rec. Document #: | 3061-676 | Multi/Split Sale: | **MULTI** |
| Document Type: | **SPECIAL WARRANTY DEED** | Other Document #: | |

| Title Company: | **NEEL TITLE CORP** |
| Buyer: | **NORTHPOINT PARK LTD** |
| Seller: | **COMPASS BK** |

*Finance:*

| Mtg Recording Date: | 03/14/2011 | Mtg Loan Type: | **CONV** |
| Mtg Document #: | 3061-681 | Mtg Rate Type: | |
| Document Type: | **DEED OF TRUST** | Mtg Term: | **15 YEARS** |
| Lender: | **FALCON INT'L BK** | Mtg Rate: | |
| Loan Amount: | $479,750 | Borrower Vesting: | // CO |
| Borrower 1: | **NORTHPOINT PARK LTD** | | |
| Borrower 2: | | | |
| Borrower 3: | | | |
| Borrower 4: | | | |

History Record #:  2

https://mail-attachment.googleusercontent.com/attachment/u/0/?ui=2&ik=6b7184e650&view=att&th=141cd08818e14dc9&attid=0.1&disp=inline&safe=1&zw&sadu...

*Sale:*

| | | | |
|---|---|---|---|
| Sale Recording Date: | 03/09/2009 | Sale Price: | **$802,156** |
| Sale Date: | **02/03/2009** | Sale Price Type: | |
| Rec. Document #: | **2723-659** | Multi/Split Sale: | **MULTI** |
| Document Type: | **TRUSTEE'S DEED** | Other Document #: | |
| Title Company: | **ATTORNEY ONLY** | | |
| Buyer: | **COMPASS BK** | | |
| Seller: | **GARCIA CLAUDIA L** | | |

History Record #: **3**

*Finance:*

| | | | |
|---|---|---|---|
| Mtg Recording Date: | **08/01/2008** | Mtg Loan Type: | |
| Mtg Document #: | **2626-32** | Mtg Rate Type: | |
| Document Type: | **MORTGAGE MODIFICATION AGREEMNT * OTHER** | Mtg Term: | **1 YEARS** |
| Lender: | **INSTITUTIONAL LENDERS** | Mtg Rate: | |
| Loan Amount: | **$743,000** | Borrower Vesting: | **//** |
| Borrower 1: | **MINOR THOMAS A** | Orig. Recording Date: | |
| Borrower 2: | **PARSONS WILLIAM R** | Orig. Document #: | |
| Borrower 3: | | | |
| Borrower 4: | | | |

History Record #: **4**

*Sale:*

| | | | |
|---|---|---|---|
| Sale Recording Date: | **06/04/2007** | Sale Price: | |
| Sale Date: | **05/29/2007** | Sale Price Type: | |
| Rec. Document #: | **2370-115** | Multi/Split Sale: | **MULTIPLE** |
| Document Type: | **WARRANTY DEED** | Other Document #: | |
| Title Company: | | | |
| Buyer: | **MINOR THOMAS A** | | |
| Seller: | **WINPAR HOSPITALITY LAREDO LLC** | | |

**EXHIBIT B**

10/22/13    https://mail-attachment.googleusercontent.com/attachment/u/0/?ui=2&ik=b7184e650&view=att&th=141e1d593e4f8942&attid=0.1&disp=inline&realattid=bbf...
Document    Page 28 of 69

## Property Detail Report

For Property Located At :
**2311 SATURN DR, LAREDO, TX 78041**



**U.S. TITLE RECORDS**
PROPERTY & TITLE INFORMATION

#### Owner Information

| | |
|---|---|
| Owner Name: | NORTHPOINT PARK LTD |
| Mailing Address: | 517 SHILOH DR #1, LAREDO TX 78045-6722 C076 |
| Vesting Codes: | // CO |

#### Location Information

| | | | |
|---|---|---|---|
| Legal Description: | JACAMAN RANCH, BLOCK 2, LOT 12, UNIT 8 | | |
| County: | WEBB, TX | APN: | 947-46002-120 |
| Census Tract / Block: | 16.02 / 2 | Alternate APN: | 319084 |
| Township-Range-Sect: | | Subdivision: | JACAMAN RANCH |
| Legal Book/Page: | | Map Reference: | / |
| Legal Lot: | 12 | Tract #: | |
| Legal Block: | 2 | School District: | S7 |
| Market Area: | | School District Name: | UNITED ISD |
| Neighbor Code: | CD94 | Munic/Township: | LAREDO |

#### Owner Transfer Information

| | | | |
|---|---|---|---|
| Recording/Sale Date: | / | Deed Type: | |
| Sale Price: | | 1st Mtg Document #: | |
| Document #: | | | |

#### Last Market Sale Information

| | | | |
|---|---|---|---|
| Recording/Sale Date: | 03/14/2011 / 03/10/2011 | 1st Mtg Amount/Type: | $479,750 / CONV |
| Sale Price: | $599,687 | 1st Mtg Int. Rate/Type: | / |
| Sale Type: | ESTIMATED | 1st Mtg Document #: | 3061-681 |
| Document #: | 3061-676 | 2nd Mtg Amount/Type: | / |
| Deed Type: | SPECIAL WARRANTY DEED | 2nd Mtg Int. Rate/Type: | / |
| Transfer Document #: | | Price Per SqFt: | |
| New Construction: | | Multi/Split Sale: | MULTI |
| Title Company: | NEEL TITLE CORP | | |
| Lender: | FALCON INT'L BK | | |
| Seller Name: | COMPASS BK | | |

#### Prior Sale Information

| | | | |
|---|---|---|---|
| Prior Rec/Sale Date: | 06/04/2007 / 05/29/2007 | Prior Lender: | |
| Prior Sale Price: | | Prior 1st Mtg Amt/Type: | / |
| Prior Doc Number: | 2370-115 | Prior 1st Mtg Rate/Type: | / |
| Prior Deed Type: | WARRANTY DEED | | |

#### Property Characteristics

| | | | | | |
|---|---|---|---|---|---|
| Year Built / Eff | / | Total Rooms/Offices | | Garage Area: | |
| Gross Area: | | Total Restrooms: | | Garage Capacity: | |
| | | | | | |
| Building Area: | | Roof Type: | | Parking Spaces: | |
| Tot Adj Area: | | Roof Material: | | Heat Type: | |
| Above Grade: | | Construction: | | Air Cond: | |
| # of Stories: | | Foundation: | | Pool: | |
| Other Improvements: | | Exterior wall: | | Quality: | |
| | | Basement Area: | | Condition: | |

#### Site Information

| Zoning: | B-4 | Acres: | 0.78 | County Use: | |
| Lot Area: | 33,977 | Lot Width/Depth: | x | State Use: | VACNT-PLATTED-LOT-COMM (C2) |
| Land Use: | COMMERCIAL LOT | Commercial Units: | | Water Type: | |
| Site Influence: | | Sewer Type: | | Building Class: | |

**Tax Information**

| Total Value: | $152,900 | Assessed Year: | 2013 | Property Tax: | $3,815.53 |
| Land Value: | $152,900 | Improved %: | | Tax Area: | G3 |
| Improvement Value: | | Tax Year: | 2013 | Tax Exemption: | |
| Total Taxable Value: | | | | | |



**Transaction History Report**
For Property
Located At

## U.S. TITLE RECORDS
PROPERTY & TITLE INFORMATION

### 2311 SATURN DR, LAREDO, TX 78041
### TRANSACTION HISTORY

History Record #:  1
*Sale:*

| Sale Recording Date: | 03/14/2011 | Sale Price: | $599,688 |
| Sale Date: | 03/10/2011 | Sale Price Type: | ESTIMATED |
| Rec. Document #: | 3061-676 | Multi/Split Sale: | MULTI |
| Document Type: | SPECIAL WARRANTY DEED | Other Document #: | |
| Title Company: | NEEL TITLE CORP | | |
| Buyer: | NORTHPOINT PARK LTD | | |
| Seller: | COMPASS BK | | |

*Finance:*

| Mtg Recording Date: | 03/14/2011 | Mtg Loan Type: | CONV |
| Mtg Document #: | 3061-681 | Mtg Rate Type: | |
| Document Type: | DEED OF TRUST | Mtg Term: | 15 YEARS |
| Lender: | FALCON INT'L BK | Mtg Rate: | |
| Loan Amount: | $479,750 | Borrower Vesting: | / / CO |
| Borrower 1: | NORTHPOINT PARK LTD | | |
| Borrower 2: | | | |
| Borrower 3: | | | |
| Borrower 4: | | | |

History Record #:  2
*Sale:*

| Sale Recording Date: | 03/09/2009 | Sale Price: | $802,156 |
| Sale Date: | 02/03/2009 | Sale Price Type: | |
| Rec. Document #: | 2723-659 | Multi/Split Sale: | MULTI |
| Document Type: | TRUSTEE'S DEED | Other Document #: | |
| Title Company: | ATTORNEY ONLY | | |
| Buyer: | COMPASS BK | | |

10/22/13    https://mail-attachment.googleusercontent.com/attachment/u/0/?ui=2&ik=6b7184e650&view=att&th=141e1d593e4f8942&attid=0.1&disp=inline&realattid=bbf...

Seller:    **GARCIA CLAUDIA L**

History Record #:  **3**
*Finance:*

| | | | |
|---|---|---|---|
| Mtg Recording Date: | **08/01/2008** | Mtg Loan Type: | |
| Mtg Document #: | **2626-32** | Mtg Rate Type: | |
| Document Type: | **MORTGAGE MODIFICATION AGREEMNT * OTHER** | Mtg Term: | **1 YEARS** |
| Lender: | **INSTITUTIONAL LENDERS** | Mtg Rate: | |
| Loan Amount: | **$743,000** | Borrower Vesting: | **/ /** |
| Borrower 1: | **MINOR THOMAS A** | Orig. Recording Date: | |
| Borrower 2: | **PARSONS WILLIAM R** | Orig. Document #: | |
| Borrower 3: | | | |
| Borrower 4: | | | |

History Record #:  **4**
*Sale:*

| | | | |
|---|---|---|---|
| Sale Recording Date: | **06/04/2007** | Sale Price: | |
| Sale Date: | **05/29/2007** | Sale Price Type: | |
| Rec. Document #: | **2370-115** | Multi/Split Sale: | **MULTI** |
| Document Type: | **WARRANTY DEED** | Other Document #: | |
| Title Company: | | | |
| Buyer: | **MINOR THOMAS A** | | |
| Seller: | **WINPAR HOSPITALITY LAREDO LLC** | | |

**EXHIBIT C**

*General Ledger Report*
Period End Range: 1/31/2007 Through 12/31/2007

| Account Jrnl Batch No. | Type | Document No. | Description | Jnl Apl Date | Sys | IntCo | Subsid | Debit Amount | Credit Amount |
|---|---|---|---|---|---|---|---|---|---|
| 00-2650 - Notes Payable-IBC LAND LOAN | | | | | | | | | |
| Open Balance: | A | | | 4/30/2006 | | | | | 328,000.00 |
| | | | | Account Total: | NET | | <<No Activity>> | 0.00 | 26,000.00 |
| ed BB-00000000000022 | A | 0930 | SOLD LAND TO BP/AT | BB 9/30/2007 | 4 | | | 328,000.00 | |
| | | | | Posted Starting Balance: | NET | | -328,000.00 | 0.00 | 328,000.00 |
| | | | | Account Total: | NET | | 0.00 | 328,000.00 | 328,000.00 |
| 00-2675 - NOTES PAYABLE-ATM | | | | | | | | | |
| Open Balance: | | | | Posted Starting Balance: | NET | | 0.00 | 0.00 | 0.00 |
| Posted BB-00000000000019 | A | 010107 | W/PLAR OWES ATM | BB 1/1/2007 | 4 | | | | 16,000.00 |
| BB-00000000000020 | A | 0227 | W/PLAR OWES ATM | BB 2/27/2007 | 4 | | | | 7,500.00 |
| BB-00000000000020 | A | 0316 | W/PLAR PAID ATM | BB 3/16/2007 | 4 | | | 10,000.00 | |
| | | | | Account Total: | NET | | -13,500.00 | 10,000.00 | 23,500.00 |
| 00-2690 - Notes Payable-ADG | | | | | | | | | |
| Open Balance: | | | | Posted Starting Balance: | NET | | 0.00 | 0.00 | 0.00 |
| Posted BB-00000000000020 | A | 0222 | W/P LAR OWES ADG | BB 2/22/2007 | 4 | | | | 20,000.00 |
| BB-X0000000000020 | A | 0419 | WIRE TRANSFER TO ADG | BB 4/19/2007 | 4 | | | 10,000.00 | |

# General Ledger Report

Period End Range: 1/31/2007 Through 12/31/2007

| Account Jrnl Batch No. | Type | Document No. | Description | Jrnl Apl Date | Sys | IntCo | Subsid | Debit Amount | Credit Amount |
|---|---|---|---|---|---|---|---|---|---|
| 00-2700 - Minor-Capital Bal Sheet | | | | | | | | | |
| Open Balance: | A | | | 11/30/2006 | NET | | -10,000.00 | 10,000.00 | 20,000.00 |
| | | | | Account Total: | NET | | -10,000.00 | 10,000.00 | 20,000.00 |
| ad | | | | | | | | | |
| BB-00000000000018 | A | 010107 | WPLAR OWES ATM | BB 1/1/2007 | 4 | | | | 16,000.00 |
| BB-00000000000018 | A | 010107 | WPLAR OWES ATM | BB 1/1/2007 | 4 | | | 16,000.00 | |
| BB-00000000000019 | A | 010107 | WPLAR OWES ATM | BB 1/1/2007 | 4 | . | | 16,000.00 | |
| | | | | Account Total: | NET | | -16,000.00 | | 16,000.00 |
| 00-2701 - Hahn-Capital Bal Sheet | | | | | | | | | |
| Open Balance: | A | | | 3/31/2006 | NET | | 0.00 | 32,000.00 | 32,000.00 |
| | | | | Account Total: | NET | | 0.00 | 32,000.00 | 32,000.00 |
| Posted | | | | | | | | | |
| BB-00000000000022 | A | 0930 | SOLD LAND TO BP/AT | BB 9/30/2007 | 4 | | -71,696.78 | 149,003.22 | 220,700.00 |
| | | | | Account Total: | NET | | -71,696.78 | 149,003.22 | 220,700.00 |
| Open Balance: | A | | | Posted Starting Balance: | NET | | -220,700.00 | 0.00 | 220,700.00 |
| 00-3300 - Retained Earnings | | | | | | | | | |
| Open Balance: | A | | | 1/1/2007 | NET | | 58,813.51 | 58,813.51 | |
| | | | | Posted Starting Balance: | NET | | 58,813.51 | 58,813.51 | 0.00 |

Created : 3/21/2008  4:37:02PM

## General Ledger Report
Period End Range: 1/31/2007 Through 12/31/2007

**Account**

| Jnl Batch No. | Type | Document No. | Description | Jnl Apl Date | Sys IntCo | Subsid | Debit Amount | Credit Amount |
|---|---|---|---|---|---|---|---|---|

**00-3350 - Income Summary**

Open Balance:      Posted Starting Balance:    NET     <<No Activity>>     0.00     0.00

    Account Total:    NET     58,813.51     0.00

...ed

| Jnl Batch No. | Type | Document No. | Description | Jnl Apl Date | Sys IntCo |
|---|---|---|---|---|---|
| GJ-00000000000043 | A | NL CE/IS | Current Earn / Income Summz GJ | 1/31/2007 | E |
| GJ-00000000000044 | A | NL CE/IS | Current Earn / Income Summz GJ | 1/31/2007 | E |
| GJ-00000000000047 | A | NL CE/IS | Current Earn / Income Summz GJ | 1/31/2007 | E |
| GJ-00000000000045 | A | NL CE/IS | Current Earn / Income Summz GJ | 2/28/2007 | E |
| GJ-00000000000048 | A | NL CE/IS | Current Earn / Income Summz GJ | 2/28/2007 | E |
| GJ-00000000000046 | A | NL CE/IS | Current Earn / Income Summz GJ | 3/31/2007 | E |
| GJ-00000000000049 | A | NL CE/IS | Current Earn / Income Summz GJ | 3/31/2007 | E |
| GJ-00000000000060 | A | NL CE/IS | Current Earn / Income Summz GJ | 3/31/2007 | E |
| GJ-00000000000061 | A | NL CE/IS | Current Earn / Income Summz GJ | 3/31/2007 | E |
| GJ-00000000000062 | A | NL CE/IS | Current Earn / Income Summz GJ | 3/31/2007 | E |
| GJ-00000000000050 | A | NL CE/IS | Current Earn / Income Summz GJ | 4/30/2007 | E |
| GJ-00000000000051 | A | NL CE/IS | Current Earn / Income Summz GJ | 5/31/2007 | E |
| GJ-00000000000052 | A | NL CE/IS | Current Earn / Income Summz GJ | 6/30/2007 | E |
| GJ-00000000000053 | A | NL CE/IS | Current Earn / Income Summz GJ | 7/31/2007 | E |
| GJ-00000000000054 | A | NL CE/IS | Current Earn / Income Summz GJ | 8/31/2007 | E |
| GJ-00000000000055 | A | NL CE/IS | Current Earn / Income Summz GJ | 9/30/2007 | E |
| GJ-00000000000056 | A | NL CE/IS | Current Earn / Income Summz GJ | 10/31/200 | E |

| Debit Amount | Credit Amount |
|---|---|
|  | 2,880.46 |
|  | 150.00 |
|  | 9.92 |
|  | 2,781.16 |
|  | 12.96 |
|  | 241.98 |
|  | 300.86 |
|  | 400.00 |
|  | 260.86 |
| 280.86 |  |
|  | 326.62 |
|  | 13.81 |
|  | 1,512.03 |
|  | 12.05 |
|  | 12.07 |
|  | 12.12 |
|  | 12.20 |

    Account Total:    NET     -8,678.24     280.86     8,959.10

**00-3400 - Current Earnings**

Open Balance:      Posted Starting Balance:    NET     0.00     0.00     0.00

**Posted**

| Jnl Batch No. | Type | Document No. | Description | Jnl Apl Date | Sys IntCo | Debit Amount |
|---|---|---|---|---|---|---|
| GJ-00000000000043 | A | NL CE/IS | Current Earn / Income Summz GJ | 1/31/2007 | E | 2,880.46 |
| GJ-00000000000044 | A | NL CE/IS | Current Earn / Income Summz GJ | 1/31/2007 | E | 150.00 |
| GJ-00000000000047 | A | NL CE/IS | Current Earn / Income Summz GJ | 1/31/2007 | E | 9.92 |

Created : 3/21/2008  4:37:02PM

## General Ledger Report
### Period End Range: 1/31/2007 Through 12/31/2007

| Account / Jrnl Batch No. | Type | Document No. | Description | Jrnl | Appl Date | Sys | IntCo | Subsid | Debit Amount | Credit Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| GJ-000000000045 | A | NL CE/IS | Current Earn / Income Summe | GJ | 2/28/2007 | E | | | 2,781.16 | |
| GJ-000000000048 | A | NL CE/IS | Current Earn / Income Summe | GJ | 2/28/2007 | E | | | 12.96 | |
| GJ-000000000046 | A | NL CE/IS | Current Earn / Income Summe | GJ | 3/31/2007 | E | | | 241.98 | |
| GJ-000000000049 | A | NL CE/IS | Current Earn / Income Summe | GJ | 3/31/2007 | E | | | 300.86 | |
| GJ-000000000060 | A | NL CE/IS | Current Earn / Income Summe | GJ | 3/31/2007 | E | | | 400.00 | |
| GJ-000000000061 | A | NL CE/IS | Current Earn / Income Summe | GJ | 3/31/2007 | E | | | 280.86 | |
| GJ-000000000062 | A | NL CE/IS | Current Earn / Income Summe | GJ | 3/31/2007 | E | | | | 280.86 |
| GJ-000000000050 | A | NL CE/IS | Current Earn / Income Summe | GJ | 4/30/2007 | E | | | 326.62 | |
| GJ-000000000051 | A | NL CE/IS | Current Earn / Income Summe | GJ | 5/31/2007 | E | | | 13.81 | |
| G#-000000000052 | A | NL CE/IS | Current Earn / Income Summe | GJ | 6/30/2007 | E | | | 1,512.03 | |
| -000000000053 | A | NL CE/IS | Current Earn / Income Summe | GJ | 7/31/2007 | E | | | 12.05 | |
| uJ-000000000054 | A | NL CE/IS | Current Earn / Income Summe | GJ | 8/31/2007 | E | | | 12.07 | |
| uJ-000000000055 | A | NL CE/IS | Current Earn / Income Summe | GJ | 9/30/2007 | E | | | 12.12 | |
| GJ-000000000056 | A | NL CE/IS | Current Earn / Income Summe | GJ | 10/31/200 | E | | | 12.20 | |

**Account Total:** NET   8,678.24

8,959.10   280.86

**60-6080 - Office Supplies Admin**
Open Balance:

Posted Starting Balance: NET   0.00   0.00

| Jrnl Batch No. | Type | Document No. | Description | | Jrnl | Appl Date | Sys | Debit Amount | Credit Amount |
|---|---|---|---|---|---|---|---|---|---|
| AP-000000000023 | A | 000061 | Vend-PION | Inv No-1290 | AP | 1/1/2007 | 2 | 78.93 | |
| B9-000000000022 | A | 0306 | WPLLLP PD ART ENG-BLUE | | BB | 3/6/2007 | 4 | 280.86 | |
| R9-000000000023 | A | 0306 | DUP ON AP | | BB | 3/6/2007 | 4 | | 280.86 |
| -000000000025 | A | 000088 | Vend-WPLLLP | Inv No-AR | AP | 3/21/2007 | 2 | 106.62 | |
| AP-000000000025 | A | 000069 | Vend-SAFE | Inv No- | AP | 4/19/2007 | 2 | 280.86 | |

**Account Total:** NET   747.27   280.86

**60-6090 - Misc Supplies Admin**
Open Balance:

Posted

| Jrnl Batch No. | Type | Document No. | Description | | Jrnl | Appl Date | Sys | Debit Amount | Credit Amount |
|---|---|---|---|---|---|---|---|---|---|
| AP-000000000027 | A | 000075 | Vend-BPARS | Inv No-SMI | AP | 3/15/2007 | 2 | 400.00 | |

Posted Starting Balance: NET   0.00   0.00

0.00   0.00

Created : 3/21/2008   4:37:02PM

# General Ledger Report

Period End Range: 1/31/2007 Through 12/31/2007

| Account / Jrnl Batch No. | Type | Document No. | Description | Jnl | Apl Date | Sys | IntCo | Subsid | Debit Amount | Credit Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| **60-6530 - Bank Fees Admin** | | | | | | | | | | |
| Open Balance: | | | | | | | | | | |
| | | | | | | Account Total: | NET | | 400.00 | 0.00 |
| | | | | | | | | | 400.00 | 0.00 |
| | | | | Posted Starting Balance: | | | NET | | 0.00 | 0.00 |
| BB-0000000000017 | A | 0111 | WIRE TRANSFER FEE | BB | 1/11/2007 | 4 | | | 6.00 | |
| BB-0000000000020 | A | 0131 | ANALYSIS CHARGE | BB | 1/31/2007 | 4 | | | 9.92 | |
| BB-0000000000020 | A | 0227 | WIRE TRANSFER FEE | BB | 2/27/2007 | 4 | | | 6.00 | |
| BB-0000000000020 | A | 0227 | BANK FEES | BB | 2/27/2007 | 4 | | | 0.96 | |
| BB-0000000000020 | A | 0227 | WIRE TRANSFER | BB | 2/27/2007 | 4 | | | 6.00 | |
| BB-0000000000020 | A | 0316 | WIRE TRANSFER FEE | BB | 3/16/2007 | 4 | | | 20.00 | |
| BB-0000000000020 | A | 0424 | WIRE TRANSFER FEE | BB | 4/24/2007 | 4 | | | 20.00 | |
| BB-0000000000020 | A | 0515 | WIRE FEE | BB | 5/15/2007 | 4 | | | 6.00 | |
| BB-0000000000020 | A | 0531 | BANK FEES | BB | 5/31/2007 | 4 | | | 7.81 | |
| BB-0000000000020 | A | 0630 | BANK FEES | BB | 6/30/2007 | 4 | | | 12.03 | |
| BB-0000000000020 | A | 731 | BANK FEES | BB | 7/31/2007 | 4 | | | 12.05 | |
| BB-0000000000020 | A | 0831 | BANK FEES | BB | 8/31/2007 | 4 | | | 12.07 | |
| BB-0000000000020 | A | 0930 | BANK FEES | BB | 9/30/2007 | 4 | | | 12.12 | |
| BB-0000000000020 | A | 1031 | BANK FEES | BB | 10/31/200 | 4 | | | 12.20 | |
| | | | | | | Account Total: | NET | | 143.16 | 0.00 |
| | | | | | | | | | 143.16 | 0.00 |
| **60-6551 - Legal Fees Admin** | | | | | | | | | | |
| Open Balance: | | | | | | | | | | |
| | | | | Posted Starting Balance: | | | NET | | 0.00 | 0.00 |
| Posted | | | | | | | | | | |
| AP-000000000000024 | A | 000063 | Vend-BURKE | Inv No-03/ | AP | 1/1/2007 | 2 | | 150.00 | |
| AP-000000000000025 | A | 000072 | Vend-HMT | Inv No-JUN | AP | 6/7/2007 | 2 | | 1,500.00 | |

Created 3/21/2008   4:37:02PM

## General Ledger Report
Period End Range: 1/31/2007 Through 12/31/2007

| Account Jrnl Batch No. | Type | Document No. | Description | Jrnl Apl Date | Sys | IntCo | Subsid | Debit Amount | Credit Amount |
|---|---|---|---|---|---|---|---|---|---|
| 60-6590 - Travel Admin | | | | | | | | | |
| Open Balance: | | | Posted Starting Balance: | NET | | | | 0.00 | 0.00 |
| Posted | | | | | | | | | |
| AP-00000000000023 | A | 000055 | Inv No-INV   AP | 1/16/2007 | 2 | | | 182.92 | 0.00 |
| AP-00000000000024 | A | 000067 | Inv No-LUT   AP | 3/21/2007 | 2 | | | 241.98 | |
| | | | Account Total: | NET | | | | 424.90 | 0.00 |
| | | | | | | | | 424.90 | 0.00 |
| 61-6250 - Licenses, LLC, Fast Kit | | | | | | | | | |
| Open Balance: | | | Posted Starting Balance: | NET | | | | 0.00 | 0.00 |
| Posted | | | | | | | | | |
| AP-00000000000025 | A | 000070 | Inv No-LARI AP | 4/19/2007 | 2 | | | 50.00 | 0.00 |
| | | | Account Total: | NET | | | | 50.00 | 0.00 |
| | | | | | | | | 50.00 | 0.00 |
| 61-6552 - Outside Accounting Acc. | | | | | | | | | |
| Open Balance: | | | Posted Starting Balance: | NET | | | | 0.00 | 0.00 |
| Posted | | | | | | | | | |
| AP-00000000000025 | A | 000071 | Inv No-LAR AP | 4/19/2007 | 2 | | | 150.00 | 0.00 |
| | | | Account Total: | NET | | | | 150.00 | 0.00 |
| | | | | | | | | 150.00 | 0.00 |

Account Total:   NET   1,550.00   0.00

Created : 3/21/2008   4:37:02PM

# General Ledger Report
Period End Range: 1/31/2007 Through 12/31/2007

**Account**
Jrnl Batch No.   Type  Document No.   Description   Jrnl Apl Date  Sys  IntCo  Subsid   Debit Amount   Credit Amount

95-7420 - Notes Payable - Interest

Open Balance:

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Posted Starting Balance: | | | NET | | | | 0.00 | 0.00 |

Posted

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| AP-0000000000023 | A | 000053 | Vend-IBC | Inv No-JAN07 AP | 1/20/2007 | 2 | | 2,612.61 |
| AP-0000000000024 | A | 000064 | Vend-IBC | Inv No-FEB0 AP | 2/27/2007 | 2 | | 2,865.43 |
| AP-0000000000024 | A | 000064 | Vend-IBC | Inv No-FEB0 AP | 2/27/2007 | 2 | | 84.27 |

Account Total:  NET    5,393.77    84.27

Defined Account Total:  NET    0.00

Report Grand Total:  NET    0.00    0.00

1,319,673.90    1,319,673.90

1,319,673.90    1,319,673.90

5,478.04    84.27

**Total Transactions Processed:**
Defined/Posted: 138
Defined/Unposted: 0
Undefined/Unpost 0

**Selections**
CURRENT

‑mitted By: TRACIE

Created : 3/21/2008   4:37:02PM

Page : 12

General Ledger Report
Period End Range: 1/31/2007 Through 12/31/2007

| Account' | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Jrnl Batch No. | Type | Document No. | Description | Jnl Apl Date | Sys | IntCo | Subsid | Debit Amount | Credit Amount |

Account Range: [First] [Last]
Tran Type Range: [First] [Last]
Currency Range: [First] [Last]
Journal Range: [First] [Last]
Period End Range: 1/31/2007 12/31/2007
Source Company: [All]
Inter-Co. ID: [All]
Account Type: [All]
System ID: [All]
P ˜nt Mode: Posted
L ay Natural Crncy: No
Page Break on Acct: No
Subtotal on Period: No
Activity Mode: Suppress Zero Balance Accounts with No Activity
Include Ending Adj Per: No
Include Undefined Acct: No

**EXHIBIT D**

## Section 8
## Termination and Dissolution of the LLC

8.1.   *Events of Dissolution.* The LLC shall be dissolved upon the occurrence of any of the following events:

(a)   The unanimous written consent of the Members;

(b)   The sale, transfer, or assignment of substantially all of the assets of the LLC;

(c)   (i)   The adjudication of the LLC as insolvent within the meaning of insolvency in either bankruptcy or equity proceedings; (ii) the filing of an involuntary petition in bankruptcy against the LLC (which is not dismissed within 90 days); (iii) the filing against the LLC of a petition for reorganization under the Federal Bankruptcy Code or any state statute (which is not dismissed within 90 days); (iv) a general assignment by the LLC for the benefit of creditors; (v) the voluntary claim (by the LLC) that it is insolvent under any provisions of the Bankruptcy Code (or any state insolvency statutes); or (vi) the appointment for the LLC of a temporary or permanent receiver, trustee, custodian, or sequestrator and such receiver, trustee, custodian, or sequestrator is not dismissed within 90 days; and

(d)   As otherwise required by law.

8.2.   *Conclusion of Affairs.* In the event of the dissolution of the LLC for any reason, the Members shall deliver articles of dissolution to the Department of State for filing, and shall proceed promptly to wind up the affairs of and liquidate the assets of the LLC. Except as otherwise provided in these Regulations, the Members shall continue to share distributions and tax allocations during the period of liquidation in the same manner as before the dissolution.

8.3.   *Liquidating Distributions.* After paying or providing for the payment of all claims, debts or liabilities and obligations of the LLC and all expenses of liquidation, the proceeds of the liquidation and any other assets of the LLC shall be distributed to or for the benefit of the Members in accordance with Section 6.1 of these Regulations.

8.4.   *Termination.* Upon completion of the liquidation of the LLC and the distribution of all LLC assets, the LLC shall terminate and the Members shall have the authority to execute and record Articles of Dissolution of the LLC, as well as any and all other documents required to effectuate the dissolution and termination of the LLC.

## Section 9
## Transfers of Membership Units

9.1.   *Restrictions on Transfers.* Membership Units may be Transferred, as defined below, in whole or in part only in accordance with other specific provisions of these Regulations and the following provisions:

(a)    For purposes of these Regulations, the term "Transfer" or "Transferred" shall mean the sale, assignment, transfer, pledge, encumbrance, or other disposition, by operation of law or otherwise, of Membership Units.

(b)    Membership Units shall not be Transferred without the following:

(1)    The full compliance with the terms of this Section 9;

(2)    The consent of the Member(s) owning the remaining Membership Units; and

(3)    An opinion of counsel, satisfactory to the Member(s) owning the remaining Membership Units, that the Transfer of the Membership Units does not violate the Securities Act of 200433 or any applicable state securities laws.

(c)    Any Transfer of Membership Units shall be effective only to give the person to whom Transferred (the "Transferee") the right to receive the share of tax allocations and distributions to which the person transferring (the "Transferor") would otherwise be entitled. Except as otherwise provided herein, no Transferee of a Membership Units shall have the right to become a substituted Member unless the Member(s) owning the remaining Membership Units, in the exercise of its or their sole and absolute discretion, expressly consents thereto in writing and the Transferee agrees to be bound by all the terms and conditions of these Regulations as then in effect. Unless and until a Transferee is admitted as a substituted Member, the Transferee shall have no right to exercise any of the powers, rights, and privileges of a Member hereunder.

(d)    No Member shall cause or permit to be created a lien or security interest in its Membership Units, except in favor of a lender to the LLC and upon Approval of the Members.

(e)    Each Member agrees not to Transfer all or any part of its Membership Units (or take or omit any action, filing election, or other action which could result in a deemed transfer) if such Transfer (either considered alone or in the aggregate with prior transfers by other Members) would result in the termination of the LLC for federal income tax purposes. In order to enable the Members to identify Transfers which could result in such a termination, each Member covenants and agrees to immediately inform the other Members of any Transfers (or deemed Transfers for purposes of the Code).

(f)    Any Transfer not in accord with this Section 9 shall be void *ab initio*.

(g)    The LLC, each Member, and any other person or persons having business with the LLC need deal only with Members who are admitted as Members or as substituted Members of the LLC, and they shall not be required to deal with any other person by reason of Transfer or assignment of a Membership Unit by a Member or by reason of the death of a Member, except as otherwise provided in these Regulations. In the absence of the substitution (as provided herein) of a Member for an assigning or transferring Member, any payment to a Member or any trustee in bankruptcy in accordance with the terms of these Regulations shall

acquit the LLC and any other Member of all liability to any other persons or entities who may be interested in such payment by reason of assignment or transfer of such Member.

       (h)    Notwithstanding anything to the contrary, a Member may, t any time, transfer

his or her Membership Units to a revocable living trust wherein the transferor retains the power, acting alone, to re-vest title back into the Member's individual name.

    9.2.    *Right of First Refusal.* In the event that a Member (the "Selling Member") desires to transfer to any third person all or a portion of its Membership Units, the Selling Member may do so only in full and complete compliance with the procedures set forth in Section 9.1 and the procedures set forth below for each instance of transfer:

       (a)    The Selling Member shall give written notice (the "Notice") to each other Member ("Offeree(s)") setting forth, in substance, the following:

          (1)    That the Selling Member has given to, or received from, a third party (the "Offeror") a good faith written offer (the "Offer") to transfer all or a part of its Membership Units (the "Offered Interest"); and

          (2)    That the Selling Member thereby offers to transfer all Offered Interest to the Offeree(s), *pro rata* according to its or their respective Ownership Interests, at a price and upon such terms and conditions as are set forth in the Offer, a true copy of which shall be attached to the Notice.

       (b)    Within thirty (30) days after receipt of the Notice (the "Transfer Offering Period"), the Offeree(s) may, at its or their option, elect to purchase all (but not less than all) of the Offered Interests by giving written notice of the intention to do so to the Selling Member. Any Offeree may assign its purchase rights hereunder to any Member owning Membership Units. Closing of the purchase of the Offered Interests shall occur as set forth in Section 9.3.

       (c)    In the event that no Offeree(s) agree to purchase all of the Offered Interests in accordance with subparagraph (2) of this Section 9.2, the Selling Member shall provide Notice of such event to the President of the LLC. The LLC shall then have the amount of time set forth in the Transfer Offering Period to determine, based on the Approval of the Members other than the Selling Member, whether it shall elect to purchase all (but not less than all) of the Offered Interests, by giving written notice of its intention to do so to the Selling Member. The LLC may assign its purchase rights hereunder to any Member or other Person. Closing of the purchase of the Offered Interests shall occur as set forth in Section 9.3. Failure of the LLC or its assignee to notify the Selling Member of its acceptance within the relevant Transfer Offering Period shall be deemed to be its refusal to acquire the Offered Interests.

       (d)    In the event that an offer to Transfer made pursuant to Section 9.2(a), (b), or (c) is rejected, whether by expiration of the Transfer Offering Period or otherwise, and the Selling Member has complied with the requirements of Section 9.1 and Section 9.2, the Selling Member shall be permitted to Transfer the Offered Interests to the Offeror upon the terms and

conditions as stated in the Offer; provided, however, that such Transfer may not be effected until the Offeror has executed and adopted these Regulations or a counterpart thereof. Closing of the purchase of the Offered Interest shall occur as set forth in Section 9.3. Transfer pursuant to the Offer must made within sixty (60) days following the expiration of the relevant Transfer Offering Period and, if the Transfer is not made within such time period, the Offered Interests shall again become subject to the restrictions of these Regulations.

9.3.    *Closing of a Transfer*. Closing for the Transfer of Membership Units pursuant to Section 9.2 shall occur within sixty (60) days following expiration of any relevant Transfer Offering Period and shall take place at the office of the LLC at 10:00 a.m. on the date so specified in the written notice, or at such other time and place as shall be mutually agreeable. At such closing, the seller must transfer and deliver the Membership Units to the buyer and the buyer shall pay the agreed consideration to the seller. The seller shall also deliver to the buyer an instrument executed by the seller, warranting that the Membership Units are free and clear of all liens, claims, and encumbrances of every kind. The seller shall also agree therein to indemnify the buyer against and to hold it harmless from any loss, cost, or damage which it may incur by reason of the breach of such warranty. Further, in the event that the seller shall fail to appear at the closing or shall fail to deliver the certificate or certificates representing the Membership Units when required to do so, or shall otherwise fail to comply with its obligations under these Regulations, the buyer may thereupon place cash or immediately and available funds equal to the purchase price in escrow for the seller, whereupon the LLC shall be privileged to cancel the seller's Membership Units and to treat the Membership Units as having been purchased by the buyer. Such purchase price shall be released from escrow only upon surrender by the seller of such certificate or certificates, properly endorsed for transfer, or proof of destruction or loss thereof satisfactory to the LLC.

9.4.    *Repayment of Outstanding Loans of Members*. Notwithstanding any other provision of this Section 9, no Member may Transfer its Membership Units to a third party, and neither the LLC nor any Member may elect to purchase the Membership Units of another Member, unless such Member or the LLC agrees to pay, in cash at the time of closing of such transaction, any and all outstanding loans, debts, and obligations owed by the LLC to every other Member.

**Section 10**
**Administrative Provisions**

10.1.    *Principal Office*.

(a)    The initial principal place of business and principal office of the LLC shall be in Brevard County, Florida. The LLC may relocate the principal office and principal place of business and have such additional offices as the Members may deem advisable.

(b)    The President shall have the power, on behalf of the LLC, to designate, where required, a registered agent (or other agent for receipt of service of process) in each state or other jurisdiction in which the LLC transacts business and to designate, to the extent required, an office, place of business, or mailing address within or without that state of other jurisdiction.

G:\MATT MONAGHAN\Clients\Parsons\WinPar Hospitality Laredo, LLC\Docs\Member Managed Regs and Op Agrmnt.10.27.05.doc

**EXHIBIT E**

10/21/13       https://mail-attachment.googleusercontent.com/attachment/u/0/?ui=2&ik=6b7184e650&view=att&th=141dc7bf71a7a6a1&attid=0.1&disp=inline&realattid=39...
Document   Page 46 of 69

## Property Detail Report

**For Property Located At :**
**6428 SINATRA PKWY, LAREDO, TX 78041**



**U.S. TITLE RECORDS**
PROPERTY & TITLE INFORMATION

### Owner Information
| | |
|---|---|
| Owner Name: | NORTHPOINT PARK LTD |
| Mailing Address: | 517 SHILOH DR #1, LAREDO TX 78045-6722 C076 |
| Vesting Codes: | / / CO |

### Location Information
| | | | |
|---|---|---|---|
| Legal Description: | JACAMAN RANCH, BLOCK 2, LOT 13, UNIT 8 | | |
| County: | WEBB, TX | APN: | 947-46002-130 |
| Census Tract / Block: | 16.02 / 2 | Alternate APN: | 319085 |
| Township-Range-Sect: | | Subdivision: | JACAMAN RANCH |
| Legal Book/Page: | | Map Reference: | / |
| Legal Lot: | 13 | Tract #: | |
| Legal Block: | 2 | School District: | S7 |
| Market Area: | | School District Name: | UNITED ISD |
| Neighbor Code: | CD94 | Munic/Township: | LAREDO |

### Owner Transfer Information
| | | | |
|---|---|---|---|
| Recording/Sale Date: | / | Deed Type: | |
| Sale Price: | | 1st Mtg Document #: | |
| Document #: | | | |

### Last Market Sale Information
| | | | |
|---|---|---|---|
| Recording/Sale Date: | 03/14/2011 / 03/10/2011 | 1st Mtg Amount/Type: | $479,750 / CONV |
| Sale Price: | $599,687 | 1st Mtg Int. Rate/Type: | / |
| Sale Type: | ESTIMATED | 1st Mtg Document #: | 3061-681 |
| Document #: | 3061-676 | 2nd Mtg Amount/Type: | / |
| Deed Type: | SPECIAL WARRANTY DEED | 2nd Mtg Int. Rate/Type: | / |
| Transfer Document #: | | Price Per SqFt: | |
| New Construction: | | Multi/Split Sale: | MULTIPLE |
| Title Company: | NEEL TITLE CORP | | |
| Lender: | FALCON INT'L BK | | |
| Seller Name: | COMPASS BK | | |

### Prior Sale Information
| | | | |
|---|---|---|---|
| Prior Rec/Sale Date: | 06/04/2007 / 05/31/2007 | Prior Lender: | LAREDO NAT'L BK |
| Prior Sale Price: | $988,190 | Prior 1st Mtg Amt/Type: | $743,000 / |
| Prior Doc Number: | 2370-118 | Prior 1st Mtg Rate/Type: | / |
| Prior Deed Type: | WARRANTY DEED | | |

### Property Characteristics
| | | | |
|---|---|---|---|
| Year Built / Eff: | / | Total Rooms/Offices | Garage Area: |
| Gross Area: | | Total Restrooms: | Garage Capacity: |
| Building Area: | | Roof Type: | Parking Spaces: |
| Tot Adj Area: | | Roof Material: | Heat Type: |
| Above Grade: | | Construction: | Air Cond: |
| # of Stories: | | Foundation: | Pool: |
| Other Improvements: | | Exterior wall: | Quality: |
| | | Basement Area: | Condition: |

### Site Information

https://mail-attachment.googleusercontent.com/attachment/u/0/?ui=2&ik=6b7184e650&view=att&th=141dc7bf71a7a6a1&attid=0.1&disp=inline&realattid=39d0382...      1/3

| Zoning: | B-4 | Acres: | 0.79 | County Use: | |
| Lot Area: | 34,412 | Lot Width/Depth: | x | State Use: | VACNT-PLATTED-LOT-COMM (C2) |
| Land Use: | COMMERCIAL LOT | Commercial Units: | | Water Type: | |
| Site Influence: | | Sewer Type: | | Building Class: | |

Tax Information

| Total Value: | $184,110 | Assessed Year: | 2013 | Property Tax: | $4,594.37 |
| Land Value: | $184,110 | Improved %: | | Tax Area: | G3 |
| Improvement Value: | | Tax Year: | 2013 | Tax Exemption: | |
| Total Taxable Value: | | | | | |



**Street Map Plus Report**
For Property Located At

**U.S. TITLE RECORDS**
PROPERTY & TITLE INFORMATION

**6428 SINATRA PKWY, LAREDO, TX 78041**

View Interactive Map

**Transaction History Report**
For Property Located At

**U.S. TITLE RECORDS**
PROPERTY & TITLE INFORMATION

**6428 SINATRA PKWY, LAREDO, TX 78041**

**TRANSACTION HISTORY**



History Record #:  **1**
*Sale:*

| Sale Recording Date: | **03/14/2011** | Sale Price: | **$599,688** |
| Sale Date: | **03/10/2011** | Sale Price Type: | **ESTIMATED** |
| Rec. Document #: | **3061-676** | Multi/Split Sale: | **MULTIPLE** |
| Document Type: | **SPECIAL WARRANTY DEED** | Other Document #: | |

| Title Company: | **NEEL TITLE CORP** |
| Buyer: | **NORTHPOINT PARK LTD** |
| Seller: | **COMPASS BK** |

*Finance:*

| Mtg Recording Date: | **03/14/2011** | Mtg Loan Type: | **CONV** |
| Mtg Document #: | **3061-681** | Mtg Rate Type: | |
| Document Type: | **DEED OF TRUST** | Mtg Term: | **15 YEARS** |
| Lender: | **FALCON INT'L BK** | Mtg Rate: | |
| Loan Amount: | **$479,750** | Borrower Vesting: | **/ / CO** |
| Borrower 1: | **NORTHPOINT PARK LTD** | | |
| Borrower 2: | | | |
| Borrower 3: | | | |
| Borrower 4: | | | |

History Record #:  **2**

10/21/13   https://mail-attachment.googleusercontent.com/attachment/u/0?ui=2&ik=Document Page 48 of 69&th=141dc7bf71a7a6a1&attid=0.1&disp=inline&realattid=39…

*Sale:*

| | | | |
|---|---|---|---|
| Sale Recording Date: | **03/09/2009** | Sale Price: | **$802,156** |
| Sale Date: | **02/03/2009** | Sale Price Type: | |
| Rec. Document #: | **2723-659** | Multi/Split Sale: < /TD> | **MULTIPLE** |
| Document Type: | **TRUSTEE'S DEED** | Other Document #: | |
| Title Company: | **ATTORNEY ONLY** | | |
| Buyer: | **COMPASS BK** | | |
| Seller: | **GARCIA CLAUDIA L** | | |

History Record #:  **3**

*Finance:*

| | | | |
|---|---|---|---|
| Mtg Recording Date: | **08/01/2008** | Mtg Loan Type: | |
| Mtg Document #: | **2626-32** | Mtg Rate Type: | |
| Document Type: | **MORTGAGE MODIFICATION AGREEMNT** | Mtg Term: | **1 YEARS** |
| Lender: | ***** OTHER INSTITUTIONAL LENDERS** | Mtg Rate: | |
| Loan Amount: | **$743,000** | Borrower Vesting: | **/ /** |
| Borrower 1: | **MINOR THOMAS A** | Orig. Recording Date: | |
| Borrower 2: | **PARSONS WILLIAM R** | Orig. Document #: | |
| Borrower 3: | | | |
| Borrower 4: | | | |

History Record #:  **4**

*Sale:*

| | | | |
|---|---|---|---|
| Sale Recording Date: | **06/04/2007** | Sale Price: | **$988,190** |
| Sale Date: | **05/31/2007** | Sale Price Type: | **ESTIMATED** |
| Rec. Document #: | **2370-118** | Multi/Split Sale: | |
| Document Type: | **WARRANTY DEED** | Other Document #: | |
| Title Company: | | | |
| Buyer: | **MINOR TOMAS A** | | |
| Seller: | **PRUNEDA FRANCISCO JR & LAURA** | | |

*Finance:*

| | | | |
|---|---|---|---|
| Mtg Recording Date: | **06/04/2007** | Mtg Loan Type: | |
| Mtg Document #: | **2370-122** | Mtg Rate Type: | |
| Document Type: | **DEED OF TRUST** | Mtg Term: | **1 YEARS** |
| Lender: | **LAREDO NAT'L BK** | Mtg Rate: | |
| Loan Amount: | **$743,000** | Borrower Vesting: | **/ /** |
| Borrower 1: | **MINOR TOMAS A** | | |
| Borrower 2: | **PARSONS WILLIAM R** | | |
| Borrower 3: | | | |
| Borrower 4: | | | |

**EXHIBIT F**



Dcmmtg@cs.com                    To
03/08/2006 01:45 PM              Subject  Fwd: Revised - Exhibit A page

T. Alan Minor
President
Commercial Services
Diversified Commercial Mortgage
(P) 804-423-6412
(P) 866-562-2147
(F) 866-331-3568
----- Message from Bill Parsons <bparsons@schms.com> on Wed, 8 Mar 2006 11:42:12 -0800 (PST) -----
        **To:** "T. Alan Minor" <dcmmtg@cs.com>
        **Subject:** Revised - Exhibit A page

Alan,

Please replace this corrected percentage's page with the one that is incorrect.

Thanks,
Bill


Bill Parsons
President
Space Coast Hospitality Management Services
P.O. Box 321534
Cocoa Beach, FL 32931
Phone: 321-868-4304

Fax: 321-868-3938   EXHIBIT A - Subscription Agreement %'s.doc

## EXHIBIT "A"

## WINPAR HOSPITALITY LAREDO, LLC

### List of Members and Percentages

| Member | Percentage |
|---|---|
| WinPar Hospitality, LLLP | 40.9% |
| T. Alan Minor | 40.9% |
| Eloise Hahn | 18.2% |

CERTIFICATE No.

Issued to BURKE FINANCIAL, LLC

Dated APRIL 10

01

For 18.2 Units

For _____ on _____

, 2006.

Received Certificate No. _____

For _____ Units

Dated _____

, _____

From whom transferred

| NO. ORIGINAL CERTIFICATE | NO. OF ORIGINAL UNITS | NO. OF UNITS TRANSFERRED |
|---|---|---|

ORGANIZED UNDER THE LAWS OF
THE STATE OF FLORIDA

**WinPar Hospitality Laredo, LLC**

A LIMITED LIABILITY COMPANY

BURKE FINANCIAL, LLC

UNITS 18.2

Membership Certificate

This Certifies That

of 18.2 of 100 Authorized

Units of the above Limited Liability Company is the owner

transferable only on the books of the Limited Liability Company by the holder hereof in person or by duly authorized attorney upon surrender of this Certificate properly endorsed, and is entitled to the full benefits and privileges of such membership subject to the duties and obligations as more fully set forth in the Company's Articles of Organization/Operating Agreement/Regulations for this Limited Liability Company. Transfer of these Units is subject to restrictions on the books of the Limited Liability Company.

In Witness Whereof, The said Limited Liability Company has caused this Certificate to be executed by its duly authorized Member(s)/Manager(s) and its Limited Liability Company Seal to be hereunto affixed this 10TH day of APRIL A.D. 2006

WILLIAM R. PARSONS, MANAGER
MEMBER

MEMBER

This Document Contains Security Features See Back For Details

Confirmation Report — Memory Send

Page       : 001
Date & Time: Mar-30-06  12:02pm
Line 1     : +13128864235
Machine ID : US EPA

| | | |
|---|---|---|
| Job number | : | 896 |
| Date | : | Mar-30 12:01pm |
| To | : | ☎913124543856 |
| Number of pages | : | 001 |
| Start time | : | Mar-30 12:01pm |
| End time | : | Mar-30 12:02pm |
| Pages sent | : | 001 |
| Status | : | OK |

Job number   : 896          *** SEND SUCCESSFUL ***

March 30, 2006

## MEMORANDUM

TO:        James Abraham via facsimile (312) 454-3856
           Vice President of Investments
           Stifel Nicolaus

FROM:      Eloise Hahn

RE:        Acent No. 31348898

Please wire $220,700 of monetary funds to:

International Bank of Commerce
1200 San Bernado Ave
Laredo, TX 78042
Ph. 956-722-7611

The money should be credited to Winpar Hospitality Laredo LLC

Routing #1140902528
Account # 6001323623

Please email me receipt that this was done today. My email address is: hahn.eloise@epa.gov

I would also appreciate if you email my business partner Alan Minor a copy of receipt as well.

His email address is: Dcmmtg@cs.com. Thank you very kindly.

EXHIBIT "A"

## WINPAR HOSPITALITY LAREDO, LLC

### List of Members and Percentages

| Member | Units | Percentage |
|---|---|---|
| WinPar Hospitality, LLLP | 45.05 | 45.05% |
| T. Alan Minor | 45.05 | 45.05% |
| Burke Financial, LLC | 9.9 | 9.9% |

30

Member Managed Regs and Op Agrmnt.3.6.06

**EXHIBIT G**

*Eloise K. Hahn*
*313 East 1300 North*
*Chesterton, IN   46304*
*(708) 408-8266*
*eloisehahn349@gmail.com*

*January 18, 2011*

*Alan Minor*
*11603 Hardwood Drive*
*Midlothian, VA   23114*

*Re:     Promissary note date September 17, 2009*

*Dear Alan:*

*I am writing to you to demand the $250,000 in its entirety effective today,*

*January 18, 2011.  In accordance with the Promissary Note you agreed to*

*pay back the $250,000 on a best efforts basis.  Further, you agreed to*

*assist me with any and all business statements requested.  To date,*

*I have not received any receipts, checks, etc., which document the*

*disbursement of my $250,000.  The Internal Revenue Service has*

*also gotton involved and is demanding proof of the disposition of my*

*$250,000.  The listing agreement with Lula Morales terminated in year*

*2008.  The listing agent further indicated to me that the property was*

*foreclosed upon.  Please get back with me ASAP.  Thank you very kindly.*

*Sincerely yours,*

*Eloise K. Hahn*

**Eloise K. Hahn**
**313 East 1300 North**
**Chesterton, IN   46304**
**(708) 408-8266**
**eloisehahn349@gmail.com**

January 18, 2011

William (Bill) Parsons
152 Martesia Way
Indian Harbor Beach, Florida   32937

Re:      Promissary note date September 17, 2009

Dear Bill:

I am writing to you to demand the $250,000 in its entirety effective today,

January 18, 2011.  In accordance with the Promissary Note you agreed to

pay back the $250,000 on a best efforts basis.  Further, you agreed to

assist me with any and all business statements requested.  To date,

I have not received any receipts, checks, etc., which document the

disbursement of my $250,000.  The Internal Revenue Service has

also gotton involved and is demanding proof of the disposition of my

$250,000.  The listing agreement with Lula Morales terminated in year

2008.  The listing agent further indicated to me that the property was

foreclosed upon.  Please get back with me ASAP.  Thank you very kindly.

Sincerely yours,


Eloise K. Hahn

**EXHIBIT H**

all make such offsetting special allocations of LLC income, gain, loss, or deduction
er manner they determine appropriate so that, after such offsetting allocations are
ach Member's Capital Account balance is, to the extent possible, equal to the Capital
nt balance such Member would have had if the Regulatory Allocations were not part of
e Regulations and all items were allocated pursuant to Section 7.2(c).

7.3.    *Tax Year and Accounting Matters*. The Fiscal Year of the LLC shall be the
calendar year. The LLC shall adopt such methods of accounting and file its tax returns on the
methods of accounting determined by the Members. The Members shall be responsible for all
accounting matters of the LLC.

7.4.    *Tax Elections*. The Members agree that the LLC shall be taxed as a Partnership
for tax purposes, and the Members shall take any and all action necessary to effectuate
Partnership tax treatment. The Members, in their reasonable discretion, may cause the LLC to
make or revoke all tax elections provided for under the Internal Revenue Code.

7.5.    *Tax Matters Member*.    **WILLIAM R. PARSONS** shall be the "Tax Matters
Member" of the LLC, as that term is used in Subchapter C of Chapter 63 of the Code, and the
Members will take such actions as may be necessary, appropriate, or convenient to effect the
designation of **WILLIAM R. PARSONS** as such Tax Matters Member. The Tax Matters
Member shall have full and unlimited discretion to perform or to fail to perform any actions or to
make any decisions which under the Code may be made by a Tax Matters Member. All costs of
**WILLIAM R. PARSONS** in connection with its duties as "Tax Matters Member," including
reasonable attorneys' fees, shall be the obligation of and shall be paid or reimbursed by the LLC.

### Section 8
### Termination and Dissolution of the LLC

8.1.    *Events of Dissolution*. The LLC shall be dissolved upon the occurrence of any of
the following events:

(a)    The unanimous written consent of the Members;

(b)    The sale, transfer, or assignment of substantially all of the assets of the
LLC;

(c)    (i)    The adjudication of the LLC as insolvent within the meaning of
insolvency in either bankruptcy or equity proceedings; (ii) the filing of an involuntary petition in
bankruptcy against the LLC (which is not dismissed within 90 days); (iii) the filing against the
LLC of a petition for reorganization under the Federal Bankruptcy Code or any state statute
(which is not dismissed within 90 days); (iv) a general assignment by the LLC for the benefit of

15

regs51707

creditors; (v) the voluntary claim (by the LLC) that it is insolvent under any provisions of the Bankruptcy Code (or any state insolvency statutes); or (vi) the appointment for the LLC of a temporary or permanent receiver, trustee, custodian, or sequestrator and such receiver, trustee, custodian, or sequestrator is not dismissed within 90 days; and

      (d)    As otherwise required by law.

    8.2.   *Conclusion of Affairs.* In the event of the dissolution of the LLC for any reason, the Members shall deliver articles of dissolution to the Department of State for filing, and shall proceed promptly to wind up the affairs of and liquidate the assets of the LLC. Except as otherwise provided in these Regulations, the Members shall continue to share distributions and tax allocations during the period of liquidation in the same manner as before the dissolution.

    8.3.   *Liquidating Distributions.* After paying or providing for the payment of all claims, debts or liabilities and obligations of the LLC and all expenses of liquidation, the proceeds of the liquidation and any other assets of the LLC shall be distributed to or for the benefit of the Members in accordance with Section 6.1 of these Regulations.

    8.4.   *Termination.* Upon completion of the liquidation of the LLC and the distribution of all LLC assets, the LLC shall terminate and the Members shall have the authority to execute and record Articles of Dissolution of the LLC, as well as any and all other documents required to effectuate the dissolution and termination of the LLC.

**Section 9**
**Transfers of Membership Units**

    9.1.   *Restrictions on Transfers.* Membership Units may be Transferred, as defined below, in whole or in part only in accordance with other specific provisions of these Regulations and the following provisions:

      (a)    For purposes of these Regulations, the term "Transfer" or "Transferred" shall mean the sale, assignment, transfer, pledge, encumbrance, or other disposition, by operation of law or otherwise, of Membership Units.

      (b)    Membership Units shall not be Transferred without the following:

          (1)    The full compliance with the terms of this Section 9;

          (2)    The consent of the Member(s) owning the remaining Membership Units; and

16

**ADDENDUM**

# Kevin L. Willis
## Attorney at Law
### 2137 S. Euclid Ave., Ste. #3
### Berwyn, Illinois  60402
### (708)484-1000/484-1140 fax

February 6, 2006

Fax: 866-331-3568

Mr. T. Alan Minor

Re: Eloise Hahn – Laredo, TX Quality Inn

Dear Mr. Minor:

As you are aware, I am the attorney for Ms. Hahn. I have discussed the above investment with Ms. Hahn at great length. Ms. Hahn has instructed me to inform you that she is no longer interested in the Laredo, TX property.

Thank you for you consideration.

Yours truly,

Kevin L. Willis
KLW/dkd

Eloise Hahn/R5/USEPA/US          To  Dcmmtg@cs.com
07/25/2007 05:06 PM              cc
                                bcc
                            Subject  Re: Laredo Project

Yes, proceed and advise me when I will get the $250,000. I will send you wiring instructions for UBS not
Stifel.
Dcmmtg@cs.com



          Dcmmtg@cs.com              To
          07/19/2007 07:31 AM

                            Subject  Re: Laredo Project

Traveling for work, not vacation. Call me on my cell phone -- 804-677-5923. We have been offered
$1,100,000.00 for the 3 lots in Laredo. That would pay you $250,000.00 after the land loan is paid. Do
you think we should pursue this option?

Thanks

T. Alan Minor
President
Commercial Services
Diversified Commercial Mortgage
(P) 804-423-6412
(P) 866-562-2147
(F) 866-331-3568

United States Bankruptcy Court
Eastern District of Virginia
Richmond Division
701 East Broad Street
Richmond, VA  23219

Case Number 10-30161-DOT
Chapter 7
Adversary Proceeding Number 13-03152-DOT
Judge  Douglas O. Tice Jr.

In re:  Thomas Alan Minor and Renee Scott Minor

Thomas Alan Minor

Plantiff(s)

v.

Eloise K. Hahn et. al.

Defendant(s)

Second Memorandum In Support of Motion to Dismiss Adversary Complaint filed by Thomas Alan Minor filed by Eloise K. Hahn (Baumgartner,  Cindy) and/or in the Alternative Judgment on the Pleadings

An examination of Plantiff's exhibit revealed that Defendant inquired whether Plantiff had listed Defendant as a creditor.  The reason for this inquiry was that failure to notify (Hahn) would not discharge the debt if the claim was for fraud.  11 U.S.C. 523(A)(3) In re Geris, 240 B.R. 228 (W.D. VA 1999).   Defendant Hahn objects to the discharge of debt in the amount of $250,000 from Minor based on fraud and affirmatively states as follows:

1.      Minor purchased two lots, namely Lots 11 and 12, in Block

Number 2, Jacaman Ranch Subdivision, Unit 8, City of Laredo,

Texas, Webb County, commonly known as 6427 Polaris Drive

and 2311 Saturn Drive on  May 29, 2007, from Win Par Hospitality

Laredo LLC (LLC).  A title search for these two lots is hereto attached

in Exhibits A and B.

2.      That the sales price was not shown on the title search records

since the sales price was not disclosed to the county at the time of

purchase.

3.      That the accounting records of Win Par Hospitality Laredo LLC

document both Parson and Minor purchasing the two lots from the LLC on

September 30, 2007 for $328,000, a copy of which is hereto attached

in Exhibit C.

4.      That the accounting records of Win Par Hospitality Laredo LLC

(LLC) further document Parson using $149,003.22 of Hahn's capital to

pay off the mortgage note for Lots 11 and 12 with Laredo National Bank

on September 30, 2007.

5.      That Lots 11 and 12 were purchased by the LLC on

December 14, 2005, a copy of the settlement transaction is hereto

attached in Exhibit D.

6.      That a lien note from Laredo National Bank was issued to the

LLC at the time of purchase for Lots 11 and 12 in the amount of

$328,000.  A copy of the lien note is hereto attached in Exhibit E.

7.      That the warranty deeds conveyed to Minor on May 29, 2007,

for Lots 11 and 12 were free and clear of any liens and encumbrances once Hahn's capital was used to pay off the remaining balance of the mortgage note with Laredo National Bank for $328,000. Essentially, the LLC's bank account with Laredo National Bank was closed after *Minor and Parson purchased the LLC's business property, being Lots 11 and 12.*

8.      That Minor purchased a third lot adjacent to Lots 11 and 12 namely Lot 13 commonly known as 6428 Sinatra Parkway, Laredo, Texas, Webb County on May 31, 2007 from the selling parties Francisco Jr & Laura Pruneda in the amount of $988,190. At the time *of purchase Minor financed the property with a one year mortgage note* from Laredo National Bank in the amount of $743,000. A copy of the title search for lot 13 is hereto attached in Exhibit F.

9.      That Minor may have used as collaterol, Lots 11 and 12s' equity for the purchase of Lot 13 in the amount of $248,000.

10.     That Hahn entered into a settlement agreement with Minor and Parson in April of 2008, specifically they would list the three lots for sale at $1,300,000. A copy of the settlement and listing agreement are hereto attached in Exhibit G.

11.     That the listing agent was instructed to remove the three lots from her listing prior to its expiration date of August 28, 2008.

12.     That Minor and Parson negotiated with other institutional lenders three mortgage modification agreements, each in the amount of $743,000. A title search for Lots 11, 12, and 13 have recorded these notes on

August 1, 2008. Further, title searches for Lots 11 and 12 do not record a mortgage agreement prior to August 1, 2008.

13.     That the three lots, namely Lots 11, 12, and 13 were sold to Compass Bank on February 3, 2009, each in the amount of $802,156 or a total sales transaction amount of $2,406,468.

14.     That the sale transaction date of February 3, 2009, occurred about 6 months from the time the mortgage modification agreements were recorded, being August 1, 2008.

15.     That  title searches for all three lots document NO foreclosure activity .

16.     That Minor's email to Hahn on March 5, 2008, states an interest rate of 8.5% for the debt service prior to August 1, 2008.  Additionally, Minor advised Hahn that the bank would extend financing for the lots since he knew Minor was trying to sell or develop the lots.  Further, Minor advised Hahn that the bank had the deed and that he did not want to ask for it and start a bunch of questions.  Apparently, the bank was satisfied with Minor's focus on projects closer to home and that he wanted to leave it that way.  A copy of the email is hereto attached in Exhibit H.

17.     That apparently Minor and Parson sold the three lots to Compass Bank for $2,406,468 on February 3, 2009, through the bank's intermediary, namely Claudia L. Garcia.

18.     That Minor and Parson have failed to pay Hahn to date, her $250,000 capital contribution, as outlined in the attached promissary

note, a copy of which is hereto attached in Exhibit I.

19.     That Parson has not filed a bankruptcy proceeding to date in Brevard county.

20.     That Minor's chapter 7 bankruptcy proceeding in Richmond, VA has not disclosed the debt to Hahn in the amount of $250,000, nor has Minor disclosed his prior partnership interest with Win Par Hospitality LLC, pursuant to section 524 of the bankruptcy code.

21.     That Hahn's additional capital contribution in excess of $71,000 was used by Parson to pay off the LLC's payable notes, including his his own note, as evidenced in the LLC's accounting records for 2008, a copy of which is hereto attached in Exhibit J.

22.     That Parson dissolved the LLC after his execution of the promissary note with Minor on September 17, 2009.

23.     That Hahn alleges Minor and Parson both receiving over a million dollars from the sale of the three lots on February 3, 2009, specifically Lots 11 and 12 were free from any liens or emcumbrances prior to the refinancing of the lots on August 1, 2008, and essentially the two lots had an equity line of credit of $743,000 each or a total equity line of credit of $1,486,000.

Wherefore Hahn objects to the discharge of debt to Hahn in the amount of $250,000 due to fraud.  Wherefore Defendant Hahn demands judgment of the pleadings and collection for damages and attorney fees and/or dismissal.

Respectfully submitted,

Eloise K. Hahn
313 East 1300 North
Chesterton, IN   46304
eloisehahn349@gmail.com

I HEREBY CERTIFY that a true and correct copy of the foregoing has

been sent via priority U.S. Mail to Howard Sverbilow, Esquire, 190 Fortenberry

Road, Suite 107, Merritt Island, Florida 32952-3401,  Jason M. Krumbein,

Esquire, 5310 Market Road, Suite 102, Richmond, VA, 23230,  Cindy

Baumgartner, Deputy Clerk of the Court, U.S. Bankruptcy Court,

701 E. Broad St., Suite 4000, Richmond, VA   23219,  Alan T. Minor,

11603 Hardwood Drive, Midlothian, Virginia   23114,  and Roy Terry,

Esquire, Sands Anderson, P.O. Box 1998, Richmond, VA   23218-1998,

on November 16, 2013

November 16, 2013            Eloise K. Hahn
                            Manager, Burke Financial LLC
                            Member of Win Par Hospitality LLC
                            313 East 1300 North
                            Chesterton, IN   46304