UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

In re:

Thomas Alan Minor and                    Case No. 10-30161-KLP
Renee Scott Minor,                       Chapter 7
          Debtors.


Thomas Alan Minor
          Plaintiff,


v.                                        Adv. Pro. No. 13-03152-KLP


Eloise K. Hahn and
Howard M. Swerdbilow, Esq.
          Defendants.


Member of Win Par Hospitality Laredo LLC
and Eloise K. Hahn, dba Burke Financial LLC,
          Counter-Claimants,
v.


Thomas Alan Minor
          Counter-Defendant.

### <u>MEMORANDUM OPINION</u>

Before the Court are the complaint filed by Plaintiff Debtor Thomas

Alan Minor ("Minor) against Defendants Eloise K. Hahn ("Hahn") and

Howard M. Swerbilow, Esq. ("Swerbilow")[1] and the counterclaim filed by

Hahn, acting pro se, against Minor.[2]  For the reasons outlined below, the

relief requested in the complaint and in the counterclaim will be denied.

---

[1] Although Minor lists Swerbilow as "Howard M. Swerdbilow" in the complaint, Swerbilow has filed all pleadings in this matter as "Howard M. Swerbilow." The Court adopts Swerbilow's spelling of his name.
[2] The counterclaim was previously dismissed as to Counter-Defendant Jason M. Krumbein ("Krumbein").

On January 11, 2010, Minor and his wife, Renee Scott Minor, filed a joint petition in this Court under chapter 7 of the Bankruptcy Code.  There were no assets available for distribution to unsecured creditors, and the Minors were granted a discharge on June 10, 2010.  The case was closed on July 8, 2010.  In the course of the bankruptcy, Minor never listed Hahn as a creditor and never gave her notice of the case.  In fact, Hahn was not listed as a creditor in the bankruptcy case until June 2, 2014, when Minor filed amended schedules in the case.

Minor filed this adversary proceeding on August 1, 2013, seeking damages from Hahn and Swerbilow for their alleged violation of the discharge injunction of § 524 of the Bankruptcy Code, 11 U.S.C. § 524.[3] Minor alleges that Hahn, acting pro se, filed a lawsuit in a Florida state court to collect an allegedly discharged debt from Minor and subsequently hired Swerbilow to represent her in the prosecution of the lawsuit.  Minor further alleges that Swerbilow and Hahn violated the discharge injunction by continuing to pursue the lawsuit after being made aware of Minor's bankruptcy.  On August 9, 2013, Minor also filed a motion for a preliminary injunction to stop the prosecution of the lawsuit, but the motion was

---

[3] Concurrently with the filing of this adversary proceeding, Minor filed a motion to reopen his bankruptcy case "for the purpose of enforcing the discharge injunction."  The motion was granted on September 13, 2013.

subsequently withdrawn when Hahn voluntarily dismissed the state court lawsuit against Minor.[4]

On November 20, 2013, Hahn filed a counterclaim against Krumbein and Minor.[5]  The Court perceives the essence of Hahn's counterclaim to be that Minor's debt to her is nondischargeable because Minor allegedly obtained money from her by fraud and then concealed his bankruptcy from her, thus preventing her from timely seeking the Court's determination as to the dischargeability of that debt, based upon § 523(a)(2), (3), (4), and (6) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2), (3), (4), (6).

---

[4] Swerbilow filed a motion to dismiss the adversary proceeding against him, which the Court denied in an order entered March 27, 2014.  In that order, the Court found that § 105 of the Bankruptcy Code, 11 U.S.C. § 105, gives this Court contempt power to enforce and implement the discharge injunction of § 524.  That order has not been appealed.

[5] The counterclaim was originally filed on November 7, 2013, and was filed again on November 20, 2013.  Minor filed an answer to the counterclaim on December 23, 2013.  Hahn thereafter filed lengthy amended counterclaims on June 9, 2014, August 15, 2014, and August 21, 2014.  Rule 7015 of the Federal Rules of Bankruptcy Procedures, incorporating Rule 15 of the Federal Rules of Civil Procedure, provides that:

(a)(1) A party "may amend its pleading once as a matter of course within:
    (A) 21 days after serving it, or
    (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
  (2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Bankr. P. 7015(a)(1). Hahn did not seek the approval of this Court for the 2014 amendments, nor has she provided the Court with the written consent of Minor or Swerbilow.  Minor moved to strike the 2014 amended counterclaims.  At trial, Hahn testified that there was additional evidence obtained after the filing of the 2013 counterclaims that required an amendment of the counterclaim.  As Rule 7015 requires a court to give leave freely when justice requires, the Court granted Hahn's request that the Court consider the amended counterclaims and denied Minor's motion to strike.  In so ruling, the Court noted that it did not see any prejudice to Minor from the granting of Hahn's request.

Hahn also filed an amended counterclaim on September 29, 2014, after trial was held.  She neither requested leave of the Court to do so nor gained the consent of Minor, as required by Bankruptcy Rule 7015.  The September 29, 2014, amended counterclaim will not be considered in this Court's analysis.

Trial on the complaint and the counterclaim was held on September

15, 2014.  The Court's findings of fact and conclusions of law are set forth in

the discussion below.

## DISCUSSION

**Preliminary matters.**  There have been multiple pleadings filed in

this case, mostly by Hahn.  The majority are lengthy, confusing, and

repetitive, and many appear to have multiple requests embedded in them.  In

the interest of judicial economy, at trial, the Court asked the parties to

identify those motions for which they desired rulings.  Minor, through

counsel, stated at trial that he wanted to pursue only a motion to strike the

amended counterclaims.  Ruling from the bench, the Court denied the

motion.[6]  Swerbilow requested that a motion to compel discovery filed by

Minor be denied, and Minor did not contest such relief.  Hahn requested that

the trial be continued, which the Court denied.  She also requested a ruling

on Minor's motion to quash discovery that Hahn propounded upon him after

the discovery deadline had run; the Court granted Minor's motion.

After addressing the above motions, the Court stated that it had

"addressed the motions that have been articulated this morning . . . .  If there

are any other outstanding motions now is the time to tell me.  Otherwise I'll

assume that the parties do not wish to proceed on those motions."  The

parties did not request rulings on any other pending motions or objections.

The Court therefore deems any such motions or objections waived, and they

---

[6] *See supra* note 5.

will be denied, except as to those motions and objections relative to evidence sought to be admitted at the trial.[7]

**Facts.** On March 24, 2006, Hahn entered into a subscription agreement (the "Subscription Agreement") by which Burke Financial, LLC (Burke Financial), purchased an 18.2% interest in WinPar Hospitality Laredo, LLC, a Florida limited liability company. The Subscription Agreement was executed by Hahn as manager of Burke Financial. Minor and William R. Parsons (Parsons) were two other members of WinPar Hospitality Laredo, LLC, and it appears that there were no other members of the LLC. The Subscription Agreement recited that the investment was speculative and that there was a high degree of risk of loss. In exchange for the interest in WinPar Hospitality Laredo, LLC, Burke Financial promised to pay the sum of $600,000. Burke Financial was to pay $220,700 upon the execution of the Subscription Agreement and $379,300 upon commencement of construction of a project whose nature was undisclosed in the Subscription Agreement. On March 30, 2006, Hahn instructed a representative of Stifel

---

[7] The Court notes that at several points, Hahn has attempted to add parties to this adversary proceeding by adding them as signatories to pleadings or listing them as counterclaimants. However, a counterclaim is by definition brought by a party against an opponent, see Bankruptcy Rule 7013, Fed. R. Bankr. P. 7013, incorporating Rule 13 of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 13. The entities Hahn seeks to add are not parties. Hahn and Swerbilow are the only parties opposed to Minor in this adversary proceeding. Therefore, only Hahn and Swerbilow may bring counterclaims in this adversary proceeding, absent some actions under Bankruptcy Rule 7014, incorporating Rule 14 of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 14, none of which have been taken. In addition, the parties sought to be added are corporate entities, which must be represented in this Court by counsel. *See* Rule 5005-1 of the Rules of Bankruptcy Procedure for the Eastern District of Virginia. Accordingly, to the extent that relief is requested as to any parties other than Minor, Swerbilow or Hahn, it is denied, as those parties were never proper parties in this adversary proceeding.

Nicolaus to wire the sum of $220,700 from a certain numbered account to an account of WinPar Hospitality Laredo, LLC.  While the wiring instructions do not disclose the owner of the transferring account, at trial, Hahn testified that the funds were sent from her living trust.  On April 24, 2006, Hahn transferred 100% of her interest in Burke Financial into the Eloise K. Hahn Living Trust.  Stock certificates introduced into evidence by Hahn at trial reflect that on April 24, 2006, the Eloise K. Hahn Living Trust was a 100% owner of Burke Financial. [8]

The project referred to in the Subscription Agreement was the construction of a hotel in Laredo, Texas.  Although WinPar Hospitality Laredo, LLC, purchased real property upon which the proposed hotel was to be built (the "Texas Property"), construction was never undertaken, and the Texas Property was eventually foreclosed upon on February 3, 2009.  At foreclosure, Compass Bank, successor to the bank that financed the purchase of the Texas Property, purchased the Texas Property for the sum of $802,156.46.[9]  Minor testified that at the foreclosure, Compass Bank made a credit bid for the amount of the debt, which resulted in no funds being distributed to WinPar Hospitality Laredo, LLC, Minor or Parsons, and Hahn produced no evidence to the contrary.  Since construction was never

---

[8] Certificates issued on November 1, 2006, show that Gustave Von Hahn-Powell and Louise Kathleen Hahn each purportedly owned a 5.4% interest in Burke Financial.

[9] It appears from the substitute trustee's deed that the deed of trust on the property was executed by Minor and Parsons, who also executed the underlying note in the original principal amount of $743,000.00.

commenced on the proposed hotel, Burke Financial never paid further funds pursuant to the Subscription Agreement.

Prior to the foreclosure, Hahn initiated a lawsuit against Parsons in the Circuit Civil Court of the 18th Judicial Circuit in and for Brevard County, Florida.  (Case No. 05-2007-CA-69527-XXXX-XX)  The lawsuit was settled on April 8, 2008, when Parsons, Minor, and Hahn, acting individually and as managing member of Burke Financial, executed a Stipulation of Settlement ("Settlement Stipulation") in which Parsons, acting individually and as managing member of WinPar Hospitality Laredo, LLC, and Minor, acting individually and as a member of WinPar Hospitality Laredo, LLC, agreed to market certain real property in Laredo, Texas, for a total sale amount of $1,300,000.[10]  From the net funds from the sale, Burke Financial was to receive the sum of $250,000 and 18.2% of any amounts in excess thereof received from the sale. In exchange, the Settlement Stipulation provided that:

> Plaintiff Eloise K. Hahn has no cause of action again, and no liability attaches to, Defendant William R. Parsons, or any other members of WinPar Hospitality Laredo, LLC, a Florida liability company and this Stipulation of Settlement shall be deemed a General Release in favor of the signatories hereto and entities which they represent, other than her, individually and Burke Financial, LLC.

Despite the Settlement Stipulation, it appears that neither Hahn nor Burke Financial, LLC, received any payment from Minor, Parsons or WinPar

---

[10] The Settlement Stipulation states that the real property to be sold was contained in an exhibit. That exhibit was not admitted into evidence at trial.  Based upon the testimony at trial, it appears that the property to be sold pursuant to the Settlement Stipulation was the Texas Property.

Hospitality Laredo, LLC, as a result of a sale of the Texas Property or otherwise. Instead, on September 17, 2009, Minor and Parsons each individually signed a promissory note (the "Promissory Note") in which they promised to pay Hahn individually the principal sum of $250,000 on a "best efforts basis." The note does not contain a release by any party or reference any pre-existing debt. Rather, it recites that it was given "for value received," and Minor and Parsons "hereby acknowledges [sic] themselves indebted to Eloise Hahn (the 'Lender')." Hahn also signed the Promissory Note. The Promissory Note memorializes the debt Hahn now seeks to have declared nondischargeable.

Minor and his wife filed their chapter 7 bankruptcy petition on January 11, 2010, less than four months after he signed the $250,000 note to Hahn. Minor did not list the Promissory Note as a debt in his bankruptcy petition, did not list Hahn as a creditor, and did not notify Hahn of the pendency of the bankruptcy case. Further, Minor did not disclose his interest in WinPar Hospitality Laredo, LLC, in either his bankruptcy schedules or statement of financial affairs until June 2, 2014, nearly four years after Minor received his discharge and the case was closed.

While Minor had previously stated to Hahn on the telephone that he had filed a bankruptcy case, he refused to provide her with specific information about his case, such as the jurisdiction where he had filed his case, when he had filed his case, or even his case number. On June 11, 2012,

8

Hahn, filed a complaint, Case No. 05-2012-CA-045135-XXXX-XX, against

Minor and Parsons in the Circuit Court for Brevard County, Florida (the

"Florida Lawsuit").  On January 25, 2013, the Florida court granted

Swerbilow permission to file an amended complaint on Hahn's behalf in the

Florida Lawsuit.  The amended complaint requested recovery on the

Promissory Note and recited that Minor and Parsons had "prepared the note

and gave same to Plaintiff to terminate litigation in case #07-CA-69527."

By July 1, 2013, Swerbilow was aware that Minor had a previous

bankruptcy case, which was confirmed by his July 17, 2013, search of the

electronic records maintained by this Court.  At that time, Swerbilow learned

that Hahn had not been listed as a creditor in the case and that Minor had

received a discharge.  Swerbilow, believing that the debt to Hahn had not

been discharged because of the failure of Minor to list it in his bankruptcy

petition, did not immediately dismiss the Florida Lawsuit.  After further

legal research, and after the filing of this adversary proceeding and the

motion for preliminary injunction, Swerbilow caused the Florida Lawsuit to

be dismissed as to Minor on August 21, 2013.

**Law.**  Section 524 of the Bankruptcy Code provides in part that:

**(a)** A discharge in a case under this title
    **(1)** voids any judgment at any time obtained, to the extent
that such judgment is a determination of the personal liability of
the debtor with respect to any debt discharged under section
727, 944, 1141, 1228, or 1328 of this title, whether or not
discharge of such debt is waived;
    **(2)** operates as an injunction against the commencement
or continuation of an action, the employment of process, or an

9

act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and

    **(3)** operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, except a community claim that is excepted from discharge under section 523, 1228(a)(1), or 1328(a)(1), or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived.

11 U.S.C. § 524(a).

As recently noted by the Fourth Circuit when addressing the violation of the discharge injunction of § 524, "Most courts to have considered the issue of contempt sanctions in this context have settled on a two-part test, (1) whether the creditor violated the injunction, and (2) whether he or she did so willfully. *See, e.g., In re Bennett,* 298 F.3d 1059, 1069 (9th Cir. 2002); *In re Hardy,* 97 F.3d 1384, 1390 (11th Cir.1996); *In re Cherry,* 247 B.R. 176, 187–88 (Bankr.E.D.Va.2000)." *Bradley v. Fina (In re Fina)*, 550 Fed. App'x 150, 154 (4th Cir. 2014) (unpublished opinion). The Fourth Circuit adopted the above test in *Bradley v. Fina,* and although the unpublished opinion is not binding precedent, this Court finds the analysis applied by the court to be persuasive and will adopt the same test.

To establish the willfulness necessary to establish a cause of action for violation of the automatic stay, the debtor need not demonstrate "specific

intent but must only commit an intentional act with knowledge of the automatic stay." *In re Fina*, 550 Fed. App'x at 154 (quoting *Citizens Bank of Maryland v. Strumpf (In re Strumpf)*, 37 F.3d 155, 159 (4th Cir. 1994) (reversed on other grounds 516 U.S. 16 (1995)).  *See also Cherry v. Arendall (In re Cherry)*, 247 B.R. 176 (Bankr. E.D. Va. 2000).  Therefore, if a debt has been discharged and a creditor with knowledge of the discharge seeks thereafter to collect the debt, the creditor has violated the discharge injunction of § 524.[11]

This leaves the Court with three primary inquiries.  First, it must determine whether the debt to Hahn was actually discharged, which would invoke the protection of the discharge injunction.  Second, it must determine whether Swerbilow or Hahn acted willfully in attempting to collect the debt if it in fact was discharged in Minor's bankruptcy.  Third, if necessary, it must evaluate what damages Minor incurred as a result of any violation of the discharge injunction.

## A. Counterclaim and Dischargeability.

Hahn's counterclaim requesting that the Court find the debt to her nondischargeable also serves as her defense to the discharge injunction complaint, since if the debt had not been discharged in Minor's bankruptcy, Minor would not have been protected by the discharge injunction during the

---

[11] A party seeking an award of damages for civil contempt, such as Minor seeks here for the alleged violation of the discharge injunction, must prove each element of the case, including existence of damages, by clear and convincing evidence. *JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc.*, 359 F.3d 699, 705 (4th Cir. 2004).  *See also Rountree v. Nunnery (In re Rountree)*, 448 B.R. 389, 416 (Bankr. E.D. Va. 2011).

prosecution of the Florida Lawsuit.  Dischargeability is governed by §§ 727

and 523 of the Bankruptcy Code.  Section 727(b) provides that:

> (b) Except as provided in section 523 of this title, a discharge
> under subsection (a) of this section discharges the debtor from
> all debts that arose before the date of the order for relief under
> this chapter, and any liability on a claim that is determined
> under section 502 of this title as if such claim had arisen before
> the commencement of the case, whether or not a proof of claim
> based on any such debt or liability is filed under section 501 of
> this title, and whether or not a claim based on any such debt or
> liability is allowed under section 502 of this title.

11 U.S.C § 727(b).  Section 523 lists exceptions to the § 727 discharge and

specifically addresses the situation in which a debtor fails to list a creditor in

the debtor's bankruptcy case:

> (a) A discharge under section 727 . . . of this title does not
> discharge an individual debtor from any debt - -
>> (3) neither listed nor scheduled under section 521(a)(1) of
>> this title, with the name, if known to the debtor, of the
>> creditor to whom such debt is owed, in time to permit--
>>> (A) if such debt is not of a kind specified in
>>> paragraph (2), (4), or (6) of this subsection, timely filing of
>>> a proof of claim, unless such creditor had notice or actual
>>> knowledge of the case in time for such timely filing; or
>>> (B) if such debt is of a kind specified in paragraph
>>> (2), (4), or (6) of this subsection, timely filing of a proof of
>>> claim and timely request for a determination of
>>> dischargeability of such debt under one of such
>>> paragraphs, unless such creditor had notice or actual
>>> knowledge of the case in time for such timely filing and
>>> request; . . .

11 U.S.C. § 523(a)(3).  In other words, under § 523(a)(3)(B), if the debt is one

that would have been excepted from discharge under § 523(a)(2), (4) or (6),

and the debtor fails to notify the creditor of the case in time for the creditor to

file a timely objection to dischargeability, then the debt is not discharged.  If

§ 523(a)(2), (4) or (6) are not implicated, § 523(a)(3)(A) provides that the debt is not discharged if the creditor's lack of notice of the bankruptcy prevents the creditor from filing a timely proof of claim.

Section 523(a)(2), (4) and (6).  Hahn argues that her claim against Minor is nondischargeable based upon fraud.  Section 523(a)(2)(A)[12] provides that debts obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition" are nondischargeable.  The creditor must prove nondischargeability by the preponderance of the evidence.  *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

In order to succeed in an objection based upon § 523(a)(2)(A), Hahn must establish "(1) a false representation, (2) knowledge that the representations was false, (3) intent to deceive, (4) justifiable reliance on the representation, and (5) proximate cause of damages." *Clearone Communications, Inc. v. Flood (In re Flood)*, Adv. Pro. No. 13-1149, 2014 WL 2463016, at *15 (Bankr. E.D. Va. June 2, 2014) (citing *Nunnery v. Rountree (In re Rountree)*, 478 F.3d 215, 218 (4th Circuit 2007)).

Hahn has made multiple allegations of fraud in multiple lengthy pleadings.  However, at trial, she did not produce evidence to support her allegations and suspicions, and she has not pointed to any fraudulent statements or representations made by Minor to induce her to purchase an

---

[12] Section 523(a)(2)(B) is inapplicable, as it addresses the dischargeability of debts incurred as a result of a false statement in writing concerning the debtor's financial condition, upon which the creditor reasonably relied.  There is no such writing at issue in this case.

interest in WinPar Hospitality Laredo, LLC.  Rather, her discontent seems to arise from a belief that funds intended for use in the WinPar Hospitality Laredo, LLC, project were misapplied or diverted.  She has provided the Court with no evidence of such misapplication or diversion but rather has stated only generalized suspicions.[13]

Hahn's evidence consisted of her testimony and a paucity of documentary evidence.  Exhibits presented by Hahn to support her allegations were limited to the following:

a.  Various of Hahn's federal and state individual income tax returns for 2010-2012.

b.  A stock certificate showing Burke Financial, LLC, as the owner of 18.2% of WinPar Hospitality Laredo, LLC, as of April 10, 2006.

c.  A document dated April 24, 2006, assigning the 100% ownership interest of Hahn in Burke Financial LLC to the Eloise K. Hahn Living Trust.

d.  A 2001 amendment to the Articles of Organization of Hahn Financial LLC, changing the name to Burke Financial, LLC.

e.  A stock certificate showing that on April 24, 2006, the Eloise K. Hahn Living Trust owned 100% of the interest in Burke Financial, LLC, along with stock certificates dated November 1, 2006, showing that Gustave Von Hahn-Powell and Louise Kathleen Hahn each owned a 5.4% interest in Burke Financial, LLC.

f.  An email and attachment from Minor to an unspecified individual, proposing to reduce a percentage to 9.9%.

g.  The same document that was attached to #f above, titled "Quality Suites" and setting out income and expenses.

h.  The Subscription Agreement.

---

[13] Hahn contends that she never received any proceeds from the sale of the Texas Property and that such funds were improperly utilized by Minor for a project unrelated to WinPar Hospitality Laredo, LLC.  However, this contention is unsupported by the evidence, which reveals that the Texas Property was foreclosed upon. There is no evidence that WinPar Hospitality Laredo, LLC, Minor, or Parsons received any funds from the foreclosure.  *See supra* note 9 and accompanying text.

i.  Instructions from Minor to Hahn relative to payment for her investment in WinPar Hospitality Laredo, LLC, and Hahn's wiring instructions.

j.  An inquiry letter from Hahn, dated April 1, 2014, to Gerardo Hinojosa in Laredo, Texas.

None of the above documents support a finding of fraud by Minor, and Hahn's testimony failed to establish the relevancy of these documents in proving fraud on the part of Minor.  The Court cannot find, based upon the evidence presented by Hahn and the testimony in the case, that Hahn has established by a preponderance of the evidence that the debt was incurred as a result of fraud.  Rather, it appears that Hahn entered into a business venture with Minor and Parsons and that, unfortunately, the venture failed.  At least partly as a result, Minor was forced to file bankruptcy.  Despite suggesting improper behavior on the part of Minor and Parsons, Hahn has failed to carry her burden of proving fraud by a preponderance of the evidence.  Therefore, the Court finds that Minor's debt to Hahn was not nondischargeable under § 523(a)(2).

The Court also finds that Hahn has not established the elements of § 523(a)(4), "fraud or defalcation while acting in a fiduciary capacity."  While the facts suggest that Minor may have been acting in a fiduciary capacity, Hahn has not proven fraud or defalcation.  Because the Court finds insufficient proof of fraud, the Court declines to address whether Minor was acting in a fiduciary capacity.

The Court further finds that Hahn has not established the elements of § 523(a)(6), "willful and malicious injury by the debtor to another entity or to the property of another entity." In *Duncan v. Duncan (In re Duncan)*, 448 F.3d 725 (4th Cir. 2006), the Fourth Circuit held that a party may satisfy the "willful and malicious" requirement of § 523(a)(6) only if the acts causing the damage complained of were "acts done with the actual intent to cause injury." *Id*. at 729. Hahn has offered no evidence to establish that any actions of Minor were done with the actual intent to cause her injury.

Section 523(a)(3). Having found that Minor's debt to Hahn was not "of a kind specified in paragraph (2), (4), or (6)" of § 523(a), the Court concludes that § 523(a)(3)(B) does not apply to bar discharge of Minor's debt to Hahn. There having been no assets available for distribution to creditors and, consequently, no notice to file a proof of claim in Minor's bankruptcy case, the Court further finds that § 523(a)(3)(A) does not apply to bar the discharge of Minor's debt to Hahn. In *Horizon Aviation of Virginia, Inc. v. Alexander*, 296 B.R. 380 (E.D. Va. 2003), the court found that

> [i]n order to except one's debt from discharge under section 523(a)(3)(A), the omitted creditor must have been deprived of the opportunity to file a proof of claim. To be excepted under section 523(a)(3)(B), the debt must be a type described by section 523(a)(2), (4), or (6), and the omitted creditor must have been deprived of the opportunity to file a proof of claim or a complaint to determine the dischargeability of his debt. *In re Harmon,* 213 B.R. 805, 807–08 (Bankr.D.Md.1997). Therefore, in no-asset Chapter 7 cases, pre-petition debts that are not fraudulently *incurred* are discharged pursuant to section 727.

16

*Id.* at 382.  *See also In re Woolard*, 190 B.R. 70, 74 (Bankr. E.D. Va. 1995)

(finding that  "§ 523(a)(3) of the Bankruptcy Code excepts an unlisted debt

from discharge only when the failure to schedule the debt in a timely manner

has prevented the creditor from filing a timely proof of claim or—if the debt is

of the type specified in § 523(a)(2), (a)(4), or (a)(6) of the Bankruptcy Code—

from filing a timely request to determine dischargeability.  In a 'no-asset'

case, typically no bar date is set for filing claims, and § 523(a)(3)(A) is simply

not implicated because there can never be a time when it is too late to permit

timely filing of a proof of claim."  *Id.*, citation and footnote omitted).

     In light of the above analysis, the Court finds that the debt of Minor to

Hahn was discharged in his bankruptcy case.  The Court now turns to the

issue of whether the continuation of the Florida Lawsuit violated the

discharge injunction.

### B. Violation of the Discharge Injunction

     Minor has alleged that Hahn and Swerbilow violated the discharge

injunction of § 524 of the Bankruptcy Code.  He claims that Swerbilow and

Hahn, despite having knowledge of the prior bankruptcy discharge protecting

Minor, willfully filed and prosecuted the state court lawsuit nonetheless, and

thereby caused damage to Minor.

     At trial, Swerbilow testified that he was retained by Hahn in January

of 2013 to represent her in the Florida Lawsuit that she had initiated pro se.

A July 1 email to Swerbilow from Minor's counsel in the Florida Lawsuit

confirmed that Minor had filed a bankruptcy petition.  Minor's counsel also

provided Swerbilow with the jurisdiction and case number on July 1.  Upon

further investigation, on July 17, 2013, Swerbilow discovered that the case

had been a no-asset case in which Hahn had not been listed as a creditor and

in which Minor had received a discharge.

The Court finds that neither Swerbilow nor Hahn was aware of the

discharge until after the complaint and the amended complaint in the Florida

lawsuit were filed.  Despite Minor's contention that he had verbally notified

Hahn of his bankruptcy filing prior to her filing the Florida Lawsuit, his

refusal to disclose specific information about the bankruptcy to Hahn, such as

the date and place of filing and the case number, renders his verbal notice

insufficient under the facts of this case.  Minor provided no valid explanation

for his failure to list Hahn as a creditor, for his omission in his schedules of

any reference to WinPar Hospitality Laredo, LLC, or for his refusal to provide

Hahn with the specific information she needed to confirm his bankruptcy

filing.  Minor's general reference to having filed bankruptcy as opposed to

providing the requested case filing information, which was within his

knowledge, along with his failure to amend his bankruptcy filings to include

Hahn as a creditor or to disclose his interest in WinPar Hospitality Laredo,

LLC, until well after commencing this adversary proceeding suggests that his

intention was to complete his bankruptcy case without Hahn's involvement.[14]

---

[14] It is worth noting that while Hahn has not established that Minor committed fraud, the evidence
is that Hahn received nothing in return for her investment.

It was only after Hahn filed the Florida Lawsuit that Minor provided details

of his bankruptcy filing.

The Court finds that in light of Minor's refusal to disclose information

about the bankruptcy to Hahn and the lack of evidence to show that Hahn

was otherwise aware of the discharge, Minor was not entitled to the

protections of the discharge injunction when Hahn filed and prosecuted the

Florida Lawsuit pro se.  Further, as set forth above, when Swerbilow filed the

amended complaint in the Florida Lawsuit, he was unaware that there had

been a prior bankruptcy and did not become aware of it until July 1, 2013.

Neither Swerbilow nor Hahn could have willfully violated the discharge

injunction prior to that date because they had no knowledge of the

bankruptcy or the subsequent discharge.

The only remaining issue is whether the failure to dismiss the Florida

Lawsuit as to Minor prior to August 21, 2013, was a violation of the discharge

injunction and is punishable by an award of damages for contempt.

Regardless of whether the delay in dismissing the case was a technical

violation of the discharge injunction, the Court finds that Minor has proven

no damages from the failure of Hahn and Swerbilow, once they became aware

of the bankruptcy case on July 1, 2013, to dismiss the Florida Lawsuit prior

to August 21, 2013.[15]  Minor claimed that he incurred damages as a result of

the filing of the Florida Lawsuit, including attorney's fees, mental and

---

[15] Based upon the evidence, the time it took Swerbilow to cause the Florida Lawsuit to be
dismissed does not seem to have been unreasonable.  There was no showing by Minor that Swerbilow and
Hahn took any further action to prosecute the Florida Lawsuit after July 1.

emotional distress, and damage to his credit and credit reputation.  However, at trial, Minor did not produce evidence of any attorney's fees incurred after July 1, 2013, in defending the Florida Lawsuit, nor did he prove any damage to his credit standing.

Although Minor and his spouse testified that the Florida Lawsuit caused Minor mental and emotional distress, the Court notes that during that same period for which Minor claimed damages, he was suffering unrelated business losses and had endured three separate hip replacement surgeries.  Minor offered no evidence of medical expenses or related treatment.  In addition, the only period for which Minor is entitled to seek damages is that narrow period from July 1, 2013, to the dismissal of the Florida Lawsuit on August 21, 2013.  Based upon the evidence before it, the Court does not find that the actions of Hahn or Swerbilow were the proximate cause of any mental or emotional distress to Minor, resulted in damage to his credit rating, or caused him to incur attorney's fees.

In the Fourth Circuit, the actual amount of damages for civil contempt must be proven by the preponderance of the evidence.  *In re General Motors Corp.*, 110 F.3d 1003, 1018 (4th Cir. 1997).  Minor has failed to meet his burden of proof, as he has proven none of the damages claimed in the complaint.  Therefore, the Court has no basis for an award of damages.[16]

---

[16] The Court also declines to award punitive damages to Minor because there is no evidence of vindictiveness on the part of Hahn or Swerbilow.  Furthermore, Minor is not entitled to an award of attorney's fees in connection with this adversary proceeding.  Minor would not be entitled to attorney's fees

For the reasons set forth above and for those additional reasons stated in open court, the Court finds that the debt of Minor to Hahn was discharged in Minor's bankruptcy case No. 10-30161-KLP and finds that Minor is not entitled an award of damages for a violation of the discharge injunction by Hahn and Swerbilow.[17]   A separate order will issue.

Signed:  March 30, 2015

                                               _/s/ Keith L. Phillips_
                                         United States Bankruptcy Judge

Entered on Docket: March 31, 2015

Copies:

Thomas Alan Minor
11603 Hardwood Road
Midlothian, VA 23113

Jason Meyer Krumbein
Krumbein Consumer Legal Services, Inc.
5310 Markel Rd Suite 102
Richmond, VA 23230

---

under § 523(d) because Hahn's claim is not in the nature of a consumer debt.  In addition, there is no evidence of any attorney's fees incurred by Minor that are directly attributable to his claim under § 524.

[17] The Court notes that it is not totally clear that Hahn and Swerbilow were required to dismiss the Florida Lawsuit when they learned of Minor's discharge, because the Florida court may have had concurrent jurisdiction to determine whether the debt to Hahn had been discharged.  In *In re Ahmadpour*, No. 08-13766-SSM, 2010 WL 153009 (Bankr. E.D. Va. Jan. 8, 2010), Judge Mitchell found that the debtor, by intentionally failing to list a creditor in her bankruptcy case, had "effectively waive[d] the exclusive jurisdiction of the bankruptcy court to determine the dischargeability of the debt, and that issue may be determined in a non-bankruptcy court having jurisdiction to adjudicate or enforce the debt." *Id.*, at *2.  (citing *In re Toussaint*, 259 B.R. 96, 100 (Bankr. E.D.N.C. 2000)).  Under Judge Mitchell's rationale, Hahn and Swerbilow would have been entitled to litigate the issue of dischargeability in the Florida Lawsuit.  Here, because Minor has failed to carry his burden of proof regarding damages, the Court need not resolve the issue of concurrent jurisdiction.

Recently, in an unpublished opinion, the Fourth Circuit suggested that a creditor may not "bypass the bankruptcy court's discharge injunction without first requesting that court's permission." *Bradley v. Fina (In re Fina)*, 550 Fed. App'x 150, 156 (4th Cir. 2014) (unpublished opinion).  However, that case is substantially different from this case, as it does not involve the issues of dischargeability addressed under § 523(a)(2)(, (3), (4), or (6).  Further, in that case, the creditor had been aware of the filing of the bankruptcy case and of the discharge received by the debtor.

Eloise K Hahn
313 East 1300 North
Chesterton, IN 46304

Howard M. Swerbilow
Law Office of Caruso Swerbilow & Wald PA
190 Fortenberry Road, Suite 107
Merritt Island, FL 32952-3401

Bruce H. Matson, trustee
LeClair Ryan, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street
P.O. Box 2499
Richmond, VA 23218-2499

Office of the U.S. Trustee - Region 4 -R
701 E. Broad St., Suite 4304
Richmond, VA 23219